1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   JESSE A. SALEN, Cal Bar No. 292043
3  jsalen@sheppardmullin.com
   12275 El Camino Real, Suite 100
4  San Diego, California 92130-4092
   Telephone: 858.720.8900
5  Facsimile:  858.509.3691

6  Attorneys for *Plaintiff ADAM FORTIER d/b/a PORTMANTEAU PUBLISHING*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| ADAM FORTIER d/b/a PORTMANTEAU PUBLISHING,<br><br>Plaintiff,<br><br>v.<br><br>MACROVERSE MEDIA, INC.,<br><br>Defendant. | Case No. 2:25-cv-7573<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br>1. **Breach of Confidentiality**<br>2. **Declaratory Judgment of Unenforceability of a Contract**<br>3. **Intentional Interference with Economic Relations;**<br>4. **Negligent Interference with Economic Relations;**<br>5. **Intentional Interference with Contractual Relations;**<br>6. **Trademark Infringement Under Federal Law;**<br>7. **Trademark Infringement Under California Common Law;**<br>8. **Unfair Competition and False Designation of Original Under Federal Law; and**<br>9. **Unfair Competition Under California Business & Professions Code.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Adam Fortier d/b/a Portmanteau Publishing ("Fortier"), by and through his counsel, for his Complaint against Defendant Macroverse Media, Inc. ("Macroverse"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action to protect Adam Fortier's ownership of the Authentic Editions brand, technology, and related intellectual property from ongoing misappropriation and false claims by Macroverse.

2. Fortier is the sole creator and owner of Authentic Editions, a proprietary product line and platform for the restoration and high-quality reproduction of collectible comic books. He developed Authentic Editions—including its specialized workflows, exclusive vendor relationships, and common law trademark rights—years before engaging in limited discussions with Macroverse.

3. Those discussions resulted only in a short, non-binding Memorandum of Understanding ("MOU") expressly contingent on the negotiation and execution of a future long-form agreement. No such agreement was ever executed, no transfer of intellectual property occurred, and Macroverse never provided any consideration, equity, or contractual rights in Authentic Editions.

4. Despite having no rights in the brand, Macroverse has engaged in a campaign of false representations to licensors, vendors, and industry partners, claiming ownership or exclusivity over Authentic Editions and its technology. These misstatements have caused marketplace confusion, interfered with Fortier's contractual and prospective relationships, and threatened irreparable harm to his business.

5. Through this action, Fortier seeks declaratory and injunctive relief to confirm his exclusive ownership of Authentic Editions, to bar Macroverse from further false representations or unauthorized use of the brand, and to recover damages caused by Macroverse's misconduct.

6. This action seeks remedy for breach of confidentiality (First Cause of Action); declaratory judgment of unenforceability of the non-binding MOU (Second Cause of

Action); intentional interference with economic relations (Third Cause of Action); negligent interference with economic relations (Fourth Cause of Action); intentional interference with contractual relations (Fifth Cause of Action);.trademark infringement under the federal Lanham Act, 15 U.S.C. Section 1114(1)(a) (Sixth Cause of Action); trademark infringement under the common law of California (Seventh Cause of Action); unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. Sections 1125(a) and (b) (Eighth Cause of Action); and unfair competition under the California Business and Profession Code, Section 17200 (Ninth Cause of Action).

## THE PARTIES

7. Plaintiff Adam Fortier is a natural person and a citizen of Canada, residing in Pickering, Ontario, Canada

8. Upon information and belief, defendant Macroverse is a benefit corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 8033 W. Sunset Blvd, #148, Los Angeles, CA 90046. Macroverse regularly conducts business within the State of California, including within this judicial district.

## JURISDICTION AND VENUE

9. This is an action under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a)-(d), and related California statutory and common law.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332(a)(2) (diversity of citizenship/alienage jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).  Diversity jurisdiction exists because Plaintiff is a citizen of Canada, Defendant is a citizen of California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. In addition to diversity jurisdiction, the Court also has supplemental jurisdiction over state and common law claims pursuant to 28 U.S.C. § 1367 because those claims are so closely related to the federal claims asserted herein as to form part of the same case and controversy.

/ / /

12. This Court has personal jurisdiction over Macroverse because of its purposeful, systematic, and continuous contacts with California, including maintaining offices and conducting substantial business within the Central District of California.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that Defendants have principal places of business in this district, regularly conduct business in this district, and a substantial part of the acts or omissions giving rise to the claims asserted herein occurred or had effects in this district.

## BACKGROUND

### A. Authentic Editions and Mixprint Brand and Technology

14. Mr. Fortier is an experienced comic book industry professional with decades of experience in publishing, licensing, and high-quality reproduction of collectible comic books. Prior to any dealings with Macroverse, Mr. Fortier independently developed the *Authentic Editions* product line and platform, as well as the *Mixprint* technology and methodology.

15. The *Authentic Editions* system encompasses proprietary technology, workflows, and sourcing methodology for scanning, restoring, and printing collectible comic books to exacting specifications. The *Mixprint* technology is a related proprietary system developed by Fortier for enhanced production workflows and output customization. Fortier also secured and maintains exclusive manufacturing arrangements with a specialty printer, as well as established relationships with licensors and rights holders. Fortier owns all intellectual property, common law trademark rights, and vendor relationships associated with *Authentic Editions*, including the proprietary *Mixprint* technology.

### B. Discussions with Macroverse and the MOU

16. In July 2024, Fortier and Macroverse executed a short MOU outlining general business concepts for a potential collaboration. The MOU expressly contemplated that the parties would negotiate and execute a subsequent long-form agreement to govern the relationship in detail. It was intended as a framework for discussion, not as a binding

///

contract, except for certain discrete provisions—such as confidentiality—that were expressly agreed to be binding.

17. Both parties understood and agreed that the MOU would serve only as a preliminary outline of proposed terms. The MOU was expressly conditioned on the negotiation and execution of a definitive long-form agreement, which never occurred. Had the parties intended for the MOU to create binding contractual obligations beyond the limited provisions identified, they would have said so expressly.

18. The MOU stated that it would serve only as the basis for drafting a long-form consulting and IP transfer agreement to be prepared by Macroverse's attorney. It did not transfer any intellectual property, assign any trademark rights, or obligate Mr. Fortier to provide services beyond those to be negotiated in a formal written agreement.

19. Macroverse never issued Mr. Fortier any equity, paid any compensation, or identified the specific intellectual property it sought to acquire. Material terms—including scope of services, IP scope, consideration, exclusivity, and termination—were never finalized.

20. At all times, Mr. Fortier retained ownership of *Authentic Editions*, *Mixprint*, and their associated technology, branding, and vendor relationships.

**C.   Acquisition and Scanning of Source Material**

21. As part of the parties' collaboration, Mr. Fortier acquired a collection of comic books, including Archie, Pre-Code Horror, and Teenage Mutant Ninja Turtles titles, using funds provided by Macroverse. These books were purchased for the express purpose of scanning and reprinting under the "Authentic Editions" branding, using Fortier's proprietary *Authentic Editions* and *Mixprint* processes.

22. All of the books acquired during the collaboration have since been scanned in full. The physical copies remain in Mr. Fortier's possession in Canada, except for certain inventory that Macroverse later instructed him to deliver to reseller Harley Yee for sale, including the "Frightening 15" titles. Mr. Fortier complied with those instructions. Some

/ / /

units may have been sold by Mr. Yee in accordance with that directive, but no other physical copies have been sold or transferred since the breakdown of the parties' relationship.

### D. Breakdown of Relationship and Inventory Handling

23. During the parties' discussions, Macroverse instructed Fortier to deliver certain comic book inventory, including the "Frightening 15" titles, to reseller Harley Yee for sale. Mr. Fortier complied. Some units may have been sold by Yee consistent with those instructions.

24. Following the breakdown of the relationship, Mr. Fortier directed Yee to halt further sales and retained possession of remaining inventory, including Archie, Pre-Code Horror, and Ninja Turtles titles, stored securely in Canada. No further sales occurred after the relationship ended.

### E. Macroverse's False Representation

25. After communications ceased, Macroverse began falsely representing to third parties—including licensors such as Marvel and DC—that Macroverse owned the *Authentic Editions* brand, technology, and exclusive printing rights, and the *Mixprint* technology and methodology. Macroverse also falsely claimed exclusivity over Fortier's vendor relationships and portrayed Fortier as lacking rights to continue *Authentic Editions*-branded projects or *Mixprint*-based projects.

26. These statements were false, caused marketplace confusion, and interfered with Mr. Fortier's relationships with licensors, printers, and other industry partners.

### F. Fortier's Efforts to Resolve

27. Mr. Fortier has consistently denied Macroverse's claims of ownership or exclusivity and demanded that Macroverse cease all unauthorized use of the *Authentic Editions* name, branding, and the *Mixprint* technology and methodology. He expressed willingness to resolve the dispute through a global settlement that could include returning inventory, providing an accounting, mutual releases, and—if fairly compensated—transfer of common law rights in the *Authentic Editions* name and domain.

/ / /

28. Macroverse rejected these overtures and indicated an intent to proceed with litigation.

## FIRST CLAIM FOR RELIEF

### Breach of Confidentiality

29. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

30. Under the MOU executed by the parties, Defendant expressly agreed to maintain as confidential any non-public information disclosed by Plaintiff in connection with their business relationship.

31. The Parties expressly agreed and expected the confidentiality provision of the MOU to be binding, even though the other terms were all future looking and conditioned on entering a formal long-form agreement. Thus, although the other terms were not yet binding on the parties, the confidentiality provision was binding.

32. The confidentiality provision of the MOU (hereafter, the "Confidentiality Agreement") restricted Defendant from using such confidential information for any purpose other than evaluating and negotiating the potential long-form agreement contemplated therein.

33. Mr. Fortier provided Defendant with access to proprietary, non-public information regarding Plaintiff's relationships with licensors, vendors, and printers; business strategies; project timelines; and intellectual property plans, in reliance on Defendant's confidentiality obligations under the MOU.

34. Defendant subsequently used and disclosed Mr. Fortier's confidential information, including the existence of the MOU, to third parties without Mr. Fortier's authorization. For example, Defendant represented to one or more third parties that it owned or controlled Plaintiff's intellectual property and exclusive vendor relationships because of the MOU (even though such terms of the MOU were not binding). Defendant exploited such information to compete directly with Mr. Fortier. By doing so, Defendant breached the Confidentiality Agreement.

35. As a direct and proximate result of Defendant's breach of the Confidentiality Agreement, Mr. Fortier has suffered and continues to suffer substantial damages, including loss of business opportunities, loss of competitive advantage, loss of goodwill, and diminished value of its confidential and proprietary information, and vendor relationships, in an amount to be proven at trial. Such economic damages exceed $75,000.

36. Plaintiff is also entitled to injunctive relief to prevent further misuse or disclosure of its confidential information, as well as compensatory damages, restitution, and punitive damages to deter such misconduct.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment of Unenforceability of the MOU

37. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

38. Apart from its confidentiality provision, the MOU was executed by the parties to outline preliminary, non-binding terms for a potential business relationship.

39. With the exception of the Confidentiality Agreement, the MOU was limited to a contemplated future negotiation and execution of a definitive long-form agreement and was not intended by the parties to create binding contractual obligations.

40. Had the parties intended the other terms of the MOU to be binding, they would have expressly stated so.

41. The language of the MOU is conditional in nature. Furthermore, the conduct of the parties demonstrates and reinforces that the MOU was merely an agreement to negotiate in good faith terms of a future agreement, and such terms were contingent on finalizing a long-form contract that the parties would agree to and sign. However, such agreement was never executed. Nor did either party fully perform its obligations under such contemplated long form agreement.

42. Defendant has nevertheless asserted that the MOU is a binding contract and has threatened to enforce alleged obligations under it. For example, Defendant has sent Mr. Fortier a letter and multiple subsequent communications threatening litigation based on

allegations that Mr. Fortier breached one or more terms of the MOU. Defendant has affirmatively stated that it will file a lawsuit against Mr. Fortier for breach of contract, among other purported causes of action.

43. Defendant has also asserted that it is entitled to damages on account of Mr. Fortier's alleged breach of the MOU in the sum of $1,449,175.00 for "product and deliverables not provided" and an accounting of unreturned comics.

44. Notably, Mr. Fortier has offered to provide Defendant with either the "unreturned comics" or compensation therefore. However, the value of the "unreturned comics" is far less than $1,449,175.00 for which Macroverse has demanded.

45. An actual, present controversy therefore exists between Plaintiff and Defendant as to the legal enforceability of the MOU.

46. Plaintiff seeks a judicial declaration that the terms of the MOU, apart from the MOU's confidentiality term that Defendant has breached, are non-binding and unenforceable, and that Defendant has no enforceable rights against Plaintiff under the MOU.

## THIRD CLAIM FOR RELIEF

### Intentional Interference with Economic Relations

47. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

48. Plaintiff has existing and prospective economic relationships with various licensors, publishers, vendors, and resellers in the comic book industry, that carry a probability of future economic benefit to Plaintiff.

49. Upon information and belief, Defendant had knowledge of these relationships, as Defendant and Plaintiff previously collaborated in efforts to secure and maintain such relationships for the **AUTHENTIC EDITIONS** reprint program and for the **Mixprint** technology.

50. Defendant intentionally engaged in wrongful conduct designed to disrupt these relationships, including but not limited to:

a. Falsely claiming to licensors, including Marvel and DC, that Defendant owns or controls the **AUTHENTIC EDITIONS** brand, intellectual property (including the **Mixprint** technology), and comic book inventory;

b. Misrepresenting Defendant's capabilities and rights in order to induce licensors and vendors to work directly with Defendant and not Plaintiff; and

c. Making statements that erode licensors' and vendors' confidence in Plaintiff's ability to perform under existing and prospective arrangements.

51. As a direct and proximate result of Defendant's wrongful acts, Plaintiff's relationships with licensors, vendors, and resellers have been harmed, Plaintiff has suffered a loss of business opportunities, and Plaintiff's goodwill and reputation in the industry have been damaged.

52. Defendant acted with malice, oppression, and/or fraud by their conduct. Such conduct justifies an award of punitive damages.

53. Plaintiff is entitled to recover damages for the economic harm caused by Defendant's interference, including compensatory damages, consequential damages, and punitive damages, as permitted by law.

## FOURTH CLAIM FOR RELIEF

### Negligent Interference with Economic Relations

54. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

55. Plaintiff has existing and prospective economic relationships with various licensors, publishers, vendors, and resellers in the comic book industry, including but not limited to Marvel, DC, and Harley Yee, that carry a probability of future economic benefit to Plaintiff.

56. Upon information and belief, Defendant knew or should have known of these relationships because Defendant and Plaintiff previously collaborated in efforts to secure and maintain such relationships for the **AUTHENTIC EDITIONS** reprint program and

/ / /

Mixprint technology. Defendant nonetheless carelessly engaged in acts that foreseeably harmed Plaintiff's economic relationships.

57. Plaintiff is informed and believes and thereon alleges that Defendant, through its own acts and omissions, attempted to impair and damage Plaintiff by:

    a. Carelessly making statements to licensors, including Marvel and DC, that conveyed or implied that Defendant owned or controlled the **AUTHENTIC EDITIONS** brand, intellectual property, technology (including the Mixprint technology), and comic book inventory;

    b. Failing to exercise reasonable care in communications with licensors and vendors so as to avoid creating confusion over rights, control, and ownership; and

    c. Making statements or taking actions that reasonably should have been known to undermine Plaintiff's credibility and relationships in the industry.

58. As a direct and proximate result of Defendant's negligent acts, Plaintiff's relationships with licensors, vendors, and resellers have been harmed, Plaintiff has suffered a loss of business opportunities, and Plaintiff's goodwill and reputation in the industry have been damaged.

59. Plaintiff is entitled to recover damages for the economic harm caused by Defendant's negligence, including compensatory and consequential damages.

## FIFTH CLAIM FOR RELIEF

### Intentional Interference with Contractual Relations

60. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

61. At all relevant times, Plaintiff had valid and existing contracts with various licensors, publishers, vendors, and resellers, including but not limited to Marvel, DC, and Harley Yee, relating to the **AUTHENTIC EDITIONS** reprint program, the Mixprint technology, printing arrangements, and resale of certain comic book inventory.

/ / /

/ / /

62. Upon information and belief, Defendant knew of these contracts because Defendant and Plaintiff had previously collaborated to secure, perform under, and maintain such agreements.

63. Plaintiff is informed and believes and thereon alleges that Defendant intentionally engaged in acts designed to disrupt Plaintiff's contractual relationships, including but not limited to:

    a. Making false or misleading statements to licensors such as Marvel and DC that Defendant, rather than Plaintiff, owned or controlled the **AUTHENTIC EDITIONS** brand, intellectual property, technology, including the Mixprint technology and comic book inventory;

    b. Interfering with Plaintiff's performance of contractual obligations by creating confusion in the marketplace as to ownership, control, and authority to license or sell works under the **AUTHENTIC EDITIONS** brand and/or the Mixprint technology; and

    c. Communicating with vendors and licensors in a manner calculated to cause them to question or terminate their agreements with Plaintiff.

64. Defendant's acts were willful, wrongful, and committed with the intent to induce licensors, vendors, and resellers to breach, terminate, or otherwise fail to perform their contracts with Plaintiff.

65. As a direct and proximate result of Defendant's intentional interference, one or more of Plaintiff's contractual relationships have been damaged, Plaintiff has lost the benefits of such contracts, and Plaintiff's reputation and goodwill in the industry have suffered.

66. Plaintiff is entitled to recover damages for the harm caused by Defendant's intentional interference, including compensatory damages, consequential damages, and punitive damages to deter such misconduct in the future.

/ / /

/ / /

# SIXTH CLAIM FOR RELIEF

## Federal Trademark Infringement
## Under Section 32 Of the Lanham Act (15 U.S.C. § 1114)

67. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

68. Plaintiff owns valid and protectable common law rights in the trademark **AUTHENTIC EDITIONS** (the "Mark") in connection with the publishing, marketing, and sale of collectible comic books and related goods and services.

69. Plaintiff has used the Mark continuously in commerce since at least 2022 in connection with the sale, distribution, and marketing of comic books and related products, including rare and specialty titles such as *Archie*, *Pre-Code Horror*, and *Teenage Mutant Ninja Turtles*.

70. The Mark has come to signify to consumers, licensors, and vendors that goods and services bearing it originate from Plaintiff and are associated with Plaintiff's distinctive publishing quality, exclusive vendor relationships, and industry reputation.

71. Plaintiff acquired and scanned into digital format a substantial collection of comic book inventory using funds provided by Defendant Macroverse for the purpose of producing AUTHENTIC EDITIONS reprints. Physical copies of this inventory remain in Plaintiff's possession in Canada and have not been sold or transferred since the breakdown of the parties' relationship, except that Plaintiff, at Defendant's instruction, delivered certain titles, including the "Frightening 15" series, to reseller Harley Yee for sale. Upon information and belief, some units were sold by Yee consistent with those instructions.

72. Without Plaintiff's consent, Defendant has used in commerce a reproduction, counterfeit, copy, or colorable imitation of the Mark in connection with the sale, offering for sale, distribution, and advertising of goods and services, including but not limited to:

   a. Marketing materials and public announcements falsely suggesting that Macroverse owns the AUTHENTIC EDITIONS brand, technology, or inventory; and

///

COMPLAINT

    b. Licensing solicitations to third parties—including major licensors such as Marvel and DC—misrepresenting that Defendant, rather than Plaintiff, is the owner of the AUTHENTIC EDITIONS brand and its associated rights.

73. Defendant's unauthorized use of the Mark is likely to cause confusion, mistake, or deception among consumers, licensors, and industry participants as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods and services by Plaintiff.

74. Defendant's conduct was and is willful, knowing, and intentional, undertaken with full knowledge of Plaintiff's rights in the Mark and with the intent to trade upon Plaintiff's goodwill, reputation, including proprietary vendor and licensor relationships.

75. Plaintiff has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill unless Defendant's infringing activities are enjoined.

76. Plaintiff is entitled to injunctive relief, an accounting for Defendant's profits, actual damages, statutory damages, treble damages, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 1116, 1117, and 1118.

## SEVENTH CLAIM FOR RELIEF

### Common Law Trademark Infringement
### Under California Common Law

77. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

78. Plaintiff is the senior user of the **AUTHENTIC EDITIONS** mark in connection with the restoration, reprinting, and distribution of high-quality comic books. Through continuous and exclusive use, the mark has come to symbolize Plaintiff's reputation for quality, authenticity, and strong licensor relationships.

79. Defendant, without authorization or consent, has engaged in conduct constituting both trademark infringement and unfair competition under the common law of the State of California, including:

/ / /

a. Using Plaintiff's **AUTHENTIC EDITIONS** mark in commerce in a manner likely to cause confusion, mistake, or deception among consumers, licensors, vendors, and others in the industry;

b. Passing off Defendant's own goods, services, and business activities as those of Plaintiff;

c. Misrepresenting to licensors and other industry participants—including Marvel and DC—that Defendant is the owner of, or has exclusive rights in, the AUTHENTIC EDITIONS brand, publishing technology, and associated goodwill; and

d. Falsely suggesting that Defendant controls the substantial comic book inventory acquired for AUTHENTIC EDITIONS reprints—inventory purchased by Plaintiff using Defendant's funds—which remains in Plaintiff's possession in Canada, except for certain titles, including the "Frightening 15" series, delivered to reseller Harley Yee at Defendant's instruction.

80. Defendant's acts were and are willful, malicious, and undertaken with the intent to misappropriate the goodwill, reputation, and competitive advantages Plaintiff developed under the AUTHENTIC EDITIONS brand.

81. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered, and will continue to suffer, loss of income, damage to reputation and goodwill, and dilution of the distinctive quality of its mark.

82. Plaintiff is entitled to recover damages in an amount to be proven at trial, including punitive damages under California law to punish and deter Defendant's willful and malicious conduct, as well as injunctive relief to prevent further infringement and unfair competition.

### EIGHTH CLAIM FOR RELIEF

**Unfair Competition and False Designation of Origin Under Section 43(a) Of the Lanham Act (15 U.S.C. § 1125)**

83. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

84. Defendant, without Plaintiff's authorization, has used in commerce words, terms, names, symbols, devices, and/or combinations thereof—including Plaintiff's **AUTHENTIC EDITIONS** mark, the Mixprint name, and related proprietary identifiers—that are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff, and/or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff.

85. Defendant has further made false or misleading descriptions of fact, and false or misleading representations of fact, which in commercial advertising or promotion misrepresent the nature, characteristics, qualities, or origin of Defendant's goods and services.

86. These misrepresentations include, but are not limited to:

    a. Publicly and privately asserting to licensors, vendors, and other industry participants—including major licensors such as Marvel and DC—that Defendant, rather than Plaintiff, owns the AUTHENTIC EDITIONS brand, the Mixprint technology, their associated intellectual property, and the underlying publishing workflows;

    b. Using Plaintiff's mark and goodwill in connection with solicitations and marketing materials to create the false impression that Defendant is the source of, or is otherwise affiliated with, AUTHENTIC EDITIONS and/or Mixprint-based publications and reprints; and

    c. Falsely implying that Defendant controls the substantial comic book inventory purchased by Plaintiff with Defendant's funds for the purpose of AUTHENTIC EDITIONS reprints using Mixprint processes, even though the physical inventory remains in Plaintiff's possession in Canada, except for certain titles, including the "Frightening 15" series, that Plaintiff delivered to reseller Harley Yee at Defendant's instruction.

87. Upon information and belief, Defendant's conduct is part of a calculated scheme to appropriate the goodwill, licensor relationships, and vendor exclusivities that Plaintiff developed under the AUTHENTIC EDITIONS brand and the Mixprint system,

///

and to mislead licensors and customers into believing that Defendant is the lawful owner or exclusive source of AUTHENTIC EDITIONS works.

88. Defendant's actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a), and, to the extent applicable, false advertising in violation of 15 U.S.C. § 1125(b).

89. Defendant's acts were and are willful, knowing, and intentional, committed with the deliberate intent to misappropriate Plaintiff's reputation, goodwill, and commercial advantages for Defendant's own gain.

90. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, goodwill, and relationships with licensors and vendors, and is entitled to injunctive relief, damages, disgorgement of Defendant's profits, treble damages, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 1116 and 1117.

## NINTH CLAIM FOR RELIEF

**Unfair Competition
Under California Business & Professions Code §§ 17200 & 17500**

91. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

92. Upon information and belief, Defendant's unlawful conduct described herein has had a substantial effect on commerce, and constitutes unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising in violation of Sections 17200 and 17500, *et seq.*, of the California Business and Professions Code.

93. Upon information and belief, Defendants willfully intended to trade on the strength, reputation, and goodwill of the AUTHENTIC EDITIONS brand, the Mixprint technology, and associated intellectual property and to cause injury to Plaintiff.

94. Plaintiff has suffered injury in fact and has lost money or property as a direct and proximate result of Defendant's violations, including but not limited to the diversion of

/ / /

business opportunities, erosion of goodwill, and damage to Plaintiff's standing with licensors and vendors.

95. Plaintiff has no adequate remedy at law. Unless Defendant is preliminarily and permanently enjoined from committing the unlawful acts described herein, Plaintiff will continue to suffer irreparable harm. Plaintiff is entitled, pursuant to California Business and Professions Code §§ 17203 and 17535, to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of unfair competition and false designation of origin in violation of California Business and Professions Code.

## **PRAYER FOR RELIEF**

96. WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

    a.    That Defendants be held liable for infringement and dilution of the AUTHENTIC EDITIONS Mark, unfair competition, and false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*., California common law, and California Business & Professions Code §§ 17200 & 17500;

    b.    That Defendant, and its officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or participation with them, be preliminarily and thereafter permanently enjoined and restrained, pursuant to the Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116 from:

    (i) promoting, distributing, or selling any products under the AUTHENTIC EDITIONS Mark, or any other phrase, term, or logo that is likely to cause confusion with Plaintiff or its AUTHENTIC EDITIONS Mark;

    (ii) using in commerce the "Authentic Editions" name, brand, or any confusingly similar mark, in a manner that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiff, including falsely

representing that goods manufactured, distributed, advertised, sold, or offered for sale by Defendants originate from, are sponsored or approved by, or are otherwise affiliated with Plaintiff;

    (iii) representing, directly or indirectly, that Defendant owns or is affiliated with Authentic Editions or its underlying technology;

    (iv) engaging in any other acts that are likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of goods or services; and

    (v) participating or assisting in any of the above activities.

  c. That a judgment be entered decreeing that the July 2024 Memorandum of Understanding is unenforceable, except for any expressly binding provisions (e.g., confidentiality) stated therein.

  d. That an accounting be ordered of all of the profits realized by Defendants, or others acting in concert or participation with them, from Defendants' unauthorized use, infringement, and dilution of the AUTHENTIC EDITIONS Mark;

  e. That Defendants be required to account for and pay to Plaintiff all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein;

  f. That a judgment be entered against Defendants for Plaintiff actual damages as a result of Defendants' acts of infringement and other unlawful conduct alleged herein, and for any additional profits attributable to Defendants' wrongful conduct, according to proof;

  g. That Defendants' unlawful conduct as alleged herein be deemed a willful violation of Plaintiff intellectual property rights;

  h. Monetary damages to be awarded to Plaintiff as a result of Defendant's infringing activities, including an accounting for infringing conduct not presented at trial and an award of additional damages for any such infringing activities in an amount to be proven at trial;

///

i. That the Court declare that this case is exceptional under 15 U.S.C. § 1117 and award Plaintiff their attorneys' fees, costs, and expenses incurred in this action; and

j. That the Court award Plaintiff any further and additional relief as the Court may deem just, equitable, and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues and claims so triable.

Dated: August 13, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      */s/ Jesse A. Salen*
       JESSE A. SALEN

*Attorneys for Plaintiff ADAM FORTIER d/b/a PORTMANTEAU PUBLISHING*