BUCHALTER
A Professional Corporation
AARON M. LEVINE (SBN: 299260)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Email: alevine@buchalter.com

BUCHALTER
A Professional Corporation
MATTHEW L. SEROR (SBN: 235043)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Email: mseror@buchalter.com

Attorneys for Defendant and Counterclaimant,
MACROVERSE MEDIA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM FORTIER<br><br>d/b/a PORTMANTEAU PUBLISHING,<br><br>Plaintiff,<br><br>v.<br><br>MACROVERSE MEDIA, INC.,<br><br>Defendant, | Case No. 2:25-cv-07573-CV-SK<br><br>**MACROVERSE MEDIA, INC.'S OPPOSITION TO MOTION TO DISMISS FILED BY COUNTER-DEFENDANTS ADAM FORTIER, ROSS RICHIE, AND ARCHIVAL COMICS LLC F/K/A AUTHENTIC EDITIONS, LLC**<br><br>Date: December 12, 2025<br>Time: 1:30 p.m.<br>Ctrm: 10B, 10th Floor<br>Judge: Hon. Cynthia Valenzuela |
| MACROVERSE MEDIA, INC.,<br><br>Counterclaimants,<br><br>v.<br><br>ADAM FORTIER d/b/a PORTMANTEAU PUBLISHING, ARCHIVAL COMICS LLC f/k/a AUTHENTIC EDITIONS, LLC HARLEY YEE, ROSS RICHIE, DANIEL SAEVA and DOES 1-10, inclusive,<br><br>Counter-defendants. | |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................... 1

II.    RELEVANT FACTUAL ALLEGATIONS ............................................... 2

    A.     Macroverse Engages Fortier. ........................................................... 2

    B.     The Parties Commence the Process of Bringing Authentic Editions
           to Life. ............................................................................................... 3

    C.     Fortier's Representations Turn Out to Be Untrue; Further He Fails
           to Perform and Usurps Macroverse Opportunities. ............................ 5

III.   COUNTER-DEFENDANTS FAILED TO COMPLY WITH LOCAL
      RULE 7-3 ................................................................................................. 6

IV.    COUNTER-DEFENDANTS' MOTION SHOULD BE DENIED ................ 6

    A.     The Applicable Legal Standard ....................................................... 6

    B.     Macroverse Adequately Pleads Breach of Fiduciary Duty .................. 7

          1.     Existence of fiduciary relationship ..................................... 7

          2.     Fortier and Richie each breached ................................. 9

          3.     Macroverse pleads that it suffered harm/damages. .................. 11

    C.     Macroverse Sufficiently Alleges Its Aiding and Abetting Claim ....... 11

    D.     Macroverse Adequately Pleads Its Interference Claim. ..................... 12

          1.     Macroverse alleges specific economic relationships ............... 12

          2.     Macroverse adequately pleads knowledge .............................. 13

          3.     Intentional interference is sufficiently pleaded ...................... 13

          4.     Disruption and proximate cause are sufficiently pleaded ........ 14

          5.     Independently wrongful conduct is alleged ............................. 14

    E.     The Negligent Interference with Prospective Economic Advantage
           Claim Is Sufficiently Pled .................................................................. 14

    F.     The Trademark Infringement Claim Is Sufficiently Pleaded ............. 16

    G.     The Common Law Trademark Infringement Claim Is Sufficiently
           Pled ................................................................................................... 16

    H.     The Fraud Claims Are Pleaded with Sufficient Particularity. ............ 17

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BUCHALTER 106623641v6

i

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

1         1.    The misrepresentations are sufficiently pled ............................ 18

2         2.    Scienter is sufficiently pled ...................................................... 19

3         3.    Intent to induce reliance is sufficiently pled ............................ 20

4         4.    Justifiable reliance is sufficiently pled .................................... 20

5         5.    Resulting damages are sufficiently pled ................................... 21

6         6.    Concealment is sufficiently pled ............................................... 21

V.    IN THE EVENT ANY CLAIMS ARE FOUND INSUFFICIENT,
MACROVERSE REQUESTS LEAVE TO AMEND ................................. 22

VI.  CONCLUSION ......................................................................................... 23

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adray v. Adry-Mart, Inc.*,
  76 F.3d 984 (9th Cir. 1995) ................................................................................ 17

*Balistreri v. Pacifica Police Dept.*,
  901 F. 2d 696 (9th Cir. 1988) ........................................................................... 22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 7

*Chemical Bank v. Security Pacific Nat. Bank*,
  20 F.3d 375 (9th Cir. 1994) ................................................................................. 9

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ............................................................................. 6

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
  911 F.2d 242 (9th Cir. 1990) ....................................................................... 17, 18

*Credit One Corp. v. Credit One Financial, Inc.*,
  661 F.Supp.2d 1134 (C.D. Cal. 2009) ............................................................... 17

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ........................................................................... 22

*Enea v. Jones*,
  No. 14-cv001526-JD, 2014 WL 3956559 (N.D. Cal. Aug. 12, 2014) ............. 7, 8

*Focal Point Films, LLC v. Sandhu*,
  2019 WL 7020209 (N.D. Cal. Dec. 20, 2019) ..................................................... 7

*Genfit S.A. v. CymaBay Therapeutics Inc.*,
  No. 21-cv-00395-MMC, 2022 WL 195650 (N.D. Cal. Jan. 21, 2022) .................................................................................................... 8

*Hanginout, Inc. v. Google, Inc.*,
  54 F.Supp.3d 1109 (S.D. Cal. 2014) ................................................................. 16

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.,*
    12 F. Supp. 2d 1035 (C.D. Cal. 1998) ............................................................... 6

*Moroccanoil, Inc. v. Zotos International, Inc.,*
    230 F.Supp.3d 1161 (C.D. Cal. 2017) ............................................................. 16

*O'Brien v. Nat'l Prop. Analysts Partners,*
    936 F.2d 674 (2d Cir. 1991) ........................................................................... 19

*Optimal Pets, Inc. v. HealthyPets, Inc.,*
    877 F.Supp.2d 953 (C.D. Cal. 2012) ............................................................... 17

*Prof'l Programs Grp. v. Dep't of Commerce,*
    29 F.3d 1349 (9th Cir. 1994) ............................................................................ 6

*Rickards v. Canine Eye Registration Foundation, Inc.,*
    702 F.2d 1449 (1983) ..................................................................................... 13

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
    983 F.Supp. 1303 (N.D. Cal. 1997) ................................................................. 12

*Stone Creek, Inc. v. Omnia Italian Design, Inc.,*
    875 F.3d 426 (9th Cir. 2017) ........................................................................... 17

*Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.,*
    922 F. Supp. 299 (C.D. Cal. 1996) ................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007) ........................................................................................ 19

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ......................................................................... 17

*Wood v. Apodaca,*
    375 F.supp.2d 942 (N.D. Cal. 2005) ............................................................... 16

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.,*
    135 F.3d 658 (9th Cir. 1998) ............................................................................ 7

**State Cases**

*Biakanja v. Irving*
    49 Cal.2d 647 (1958) ...................................................................................... 15

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BUCHALTER 106623641v6                                    iv

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

*Brockrath v. Aldrich Chemical Co., Inc.*,
    21 Cal.4th 71 (1999)...................................................................................... 10

*Casey v. U.S. Bank Nat. Assn.*,
    127 Cal.App.4th 1138 (2005)................................................................... 11, 12

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal.4th 951 (1997).................................................................................... 20

*Graham v. Bank of America, N.A.*,
    226 Cal.App.4th 594 (2014).......................................................................... 21

*J'Aire Corp. v. Gregory*,
    24 Cal.3d 799 (1979).................................................................................... 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003)........................................................................... 12, 13

*Lazar v. Superior Ct.*,
    12 Cal. 4th 631 (1996).................................................................................. 17

*Limandri v. Judkins*,
    52 Cal.App.4th 326 (1997)...................................................................... 15, 21

*Marzec v. Cal. Public Employees Retirement Syst.*,
    236 Cal.App.4th 889 (2015)....................................................................... 9, 10

*North Am. Chemical Co. v. Superior Court*,
    59 Cal.App.4th 764 (1997)........................................................................... 14

*Quality Wash Grp. V, Ltd. v. Hallak*,
    50 Cal. App. 4th 1687 (1996)....................................................................... 17

*Russ Lumber & Mill Co. v. Muscupiabe Land & Water Co.*
    (1898) 120 Cal. 521 (*Russ*)......................................................................... 18

*San Jose Construction, Inc. v. S.B.C.C., Inc.*,
    155 Cal.App.4th 1528 (2007)....................................................................... 14

*SI 59 LLC v. Variel Warner Ventures, LLC*,
    29 Cal.App.5th 146 (2018)........................................................................... 17

*Wolf v. Superior Court*,
    107 Cal.App.4th 25 (2003).............................................................................. 7

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

**Federal Statutes**

15 U.S.C. § 1125.................................................................................................16

**Rules**

Fed. R. Civ. P. 8(a)(2).........................................................................................6

Fed. R. Civ. P. 9(b)............................................................................................17

Fed. R. Civ. P. 12(b)(6) ......................................................................................6

Local Rule 7-3 .....................................................................................................6

Local Rule 11-6 ...................................................................................................6

Local Rule 11-6.1 ................................................................................................6

Local Rule 11-6.2 ................................................................................................6

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

To characterize this dispute as a simple "business disappointment" is to ignore the reality of what occurred between the parties. As alleged in the Counterclaim, in 2023 Adam Fortier approached Macroverse with a business opportunity called "Authentic Editions" which he presented as replicas of class comic books created to be virtually indistinguishable from the original versions. Even though he had never commercialized this product, Fortier represented that he had the expertise, technology, equipment, and business relationships necessary to launch the project. The only missing component was financing, and, Fortier agreed to assign all rights and intellectual property for Authentic Editions to Macroverse if they funded it. Based on that agreement, and as more fully detailed in a written memorandum of understanding, Macroverse and Fortier worked to launch Authentic Editions.

As promised, Macroverse invested heavily in Authentic Editions. It paid no less than $1,800,000 (at Fortier's request) for production costs, obtaining a pool of classic comic books for source material, hiring individuals to assist Fortier, and paying Fortier's expenses. Its investment initially proved successful. Fortier, acting as Macroverse's Head of Publishing, helped develop fundraising opportunities and obtain licensing agreements. He also, with the assistance of counter-defendants Richie and Saeva (both retained at Fortier's request), spearheaded licensing negotiations for Authentic Editions projects with industry titans Marvel and DC Comics.

Unfortunately, things were not as they seemed. Macroverse eventually learned that Fortier had grossly misrepresented his capabilities and commitment to the project. For example, Fortier missed production deadlines and failed to deliver high-end production equipment despite receiving significant funds to do so. Further, the production team he claimed to have (and for which Macroverse paid) consisted of only a single individual with no relevant experience. Worst of all, Fortier, with

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

Richie and Saeva's participation, stole the licensing opportunities that he was hired to develop for Macroverse. Specifically, Fortier, Richie and Saeva falsely told Macroverse that these discussions were stalled, all the while they were secretly negotiating with Marvel and DC (using undisclosed email addresses instead of @Macroverse.com email addresses) to develop Authentic Editions licensing opportunities for a secretly-formed limited liability company that they controlled. When confronted with this deception, Fortier admitted that he had no intention of sharing the opportunity with Macroverse and claimed all rights associated with Authentic Editions, notwithstanding the fact that Macroverse funded and developed the project. Fortier then rushed to bless his bad behavior by filing suit against Macroverse. Macroverse's counterclaim followed.

Despite well-pleaded allegations, counter-defendants Fortier, Richie, and Archival have moved to dismiss Macroverse's fiduciary duty claims (counts 4 and 5), interference claims (counts 7 and 8), trademark infringement claims (counts 10 and 11), and its fraud claims (counts 12-13). However, as discussed in detail below, each of these claims satisfies the required pleading standard. Moreover, the counter-defendants do not offer any controlling authority sufficient to defeat certain claims (such as the fiduciary duty claims) as a matter of law.

For these reasons, and as set forth below, Macroverse respectfully requests that the Court deny the counter-defendants' motion in its entirety or, alternatively, grant Macroverse leave to amend its Counterclaim to allege additional facts demonstrating its entitlement to relief.

## II.    RELEVANT FACTUAL ALLEGATIONS

### A.    Macroverse Engages Fortier.

Macroverse Media, Inc. is a multi-format entertainment company founded by Adam Martin, Eben Matthew and Ricci Rukavina. (Dkt. 15 (hereafter, XC) at ¶¶13, 24.)

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

Fortier contacted Macroverse in 2023, representing himself as a seasoned publishing consultant who had relationships with major comic book publishers and a history of securing licensing deals. (XC, ¶25)  Based on those representations Macroverse hired Fortier to, among other things, facilitate meetings with large comic publishers, facilitate publication of Macroverse properties, and introduce additional projects and comics for Macroverse. (*Id*., ¶26.)

Once engaged, Fortier presented Authentic Editions – a project centered on high-fidelity replicas of classic comic books faithful to period finishes and specifications – to Macroverse. (*Id*., ¶27; see also ¶3.)  Fortier had not previously commercially released products or secured licenses under the Authentic Editions name.  However, he presented Macroverse with limited pre-production print samples and represented that he had or could assemble the necessary technology and equipment to produce Authentic Editions. (*Id*.)  He presented a business plan focused on targeting top-tier intellectual property.  He represented that he could deliver the production and licensing needed to execute that plan, and stated he would give Macroverse ownership of Authentic Editions and the related production methods if it funded the project.  In reliance on the foregoing, Macroverse and Fortier shifted the focus of their business relationship to Authentic Editions. (XC ¶28.)

### B.    The Parties Commence the Process of Bringing Authentic Editions to Life.

Initially, the parties' working relationship on Authentic Editions proved productive. (XC, ¶29.)  Acting as a member of Macroverse, Fortier assisted in raising capital to fund Authentic Editions and helped negotiate and secure a licensing deal with Archie Comics for Authentic Editions reprints. (*Id*.)  Based on this initial success, the parties executed a memorandum of understanding (the "MOU"), which governed their relationship with respect to Authentic Editions. (*Id*., ¶30 and Ex. 1.)

Under the MOU, Fortier agreed, among other things, to serve ████████████
████████████████████████████████████████████████████████████████████████

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BUCHALTER 106623641v6                    3

MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC



Both parties treated the executed MOU as binding and enforceable. (*Id*., ¶¶34-35.) As even Fortier's own complaint admits, the parties commenced performance under the MOU and collaborated on the Authentic Editions project. (See, e.g., Dkt. 1, ¶¶21, 22, and 62.)

As a consequence, Macroverse invested at least $1.8 million towards the Authentic Editions concept (XC ¶8), including a $215,000 payment to Fortier for professional-grade custom equipment and other production costs, certain personal expenses for Fortier, and more than $900,000 for the acquisition of "source books" (the Comics Pool) through counter-defendant Yee. (*Id*. ¶35(a)-(c), ¶36.) At Fortier's request, Macroverse also retained counter-defendants Richie and Saeva to assist with crowdfunding campaigns and licensing negotiations with major publishers like Archie Comics, Marvel, and DC. (*Id*. ¶35(b).)

Acting as Macroverse's head of publishing, Fortier helped raise outside capital and negotiated a licensing deal with Archie Comics. (*Id*., ¶¶9, 29, 39.) Fortier and Richie also oversaw two successful Kickstarter campaigns – the "Pre-Code Campaign" and "Archie Comics Campaign" – which raised more than $575,000 and created concrete delivery obligations (i.e., economic relationships) to thousands of investors. (*Id*. ¶¶37-39.) Fortier, Richie, and Saeva also pursued licensing deals for Authentic Editions with Marvel and DC. (*Id*. ¶39.) Fortier (at least initially) kept Macroverse involved in strategy decisions and updates as its Head of Publishing. (*Id*., ¶39.) /

### C.    **Fortier's Representations Turn Out to Be Untrue; Further He Fails to Perform and Usurps Macroverse Opportunities.**

Beginning in late 2024, Fortier's inability and unwillingness to perform became apparent. (XC, ¶40.) He admitted to devoting substantial time to non-Macroverse projects, contrary to prior assurances, repeatedly missed production deadlines, and failed to provide deliverables for the Kickstarter campaigns. (*Id.*, ¶¶40-43.) When Macroverse stepped in to salvage the projects, it discovered that Fortier had not assembled the production team he claimed existed, and had instead delegated all production responsibilities to an individual with no relevant experience (a former nanny). (*Id.*, ¶42.) Macroverse also discovered that the "custom" equipment for which it had paid over $100,000 was rudimentary and inadequate for its intended purpose, contrary to prior representations. (*Id.*, ¶44.) Macroverse was forced to redesign the production and restoration methodology and to hire and train an internal production team. (*Id.*, ¶¶45-46.)

At the same time, Fortier was secretly working to divert Authentic Editions' business opportunities away from Macroverse. (XC, ¶¶47-49.) By April 2025, Fortier excluded Macroverse from ongoing licensing discussions with Marvel and DC and (together with Richie and Saeva) held undisclosed meetings with those publishers. (*Id.*, ¶47.) He falsely told Macroverse that negotiations with these publishers were "in limbo," despite the fact that discussions were progressing and draft deal terms were exchanged without Macroverse's knowledge. (*Id.*, ¶¶47, 49.) Fortier, Richie, and Saeva secretly corresponded with Marvel and DC via undisclosed email addresses instead of Fortier's "@macroverse.com" address, and Marvel transmitted a licensing agreement to a new entity, Archival, secretly formed by Fortier and Richie in May 2025. (*Id.*, ¶¶50-52.)

In June 2025, Fortier admitted he was directly negotiating with Marvel and DC without Macroverse's involvement, and confirmed that he would not include Macroverse in those opportunities. (XC, ¶52.) He also asserted sole ownership of

BUCHALTER
A Professional Corporation
Los Angeles

BUCHALTER 106623641v6                     5
**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

Authentic Editions. (*Id.*) Shortly thereafter, Richie terminated his relationship with Macroverse and joined Fortier's efforts to divert business opportunities to Archival. (*Id.*, ¶54.)

Despite Fortier's having received more than $1.8 million from Macroverse (directly and through others at its direction), Fortier never delivered anything he promised, failed to return or account for the Comics Pool or related funds, and left Macroverse with significant unfulfilled obligations to Kickstarter backers and licensors. (*Id.*, ¶53.) Licensors also paused all Authentic Editions opportunities. (*Id.*, ¶55.)

## III. COUNTER-DEFENDANTS FAILED TO COMPLY WITH LOCAL RULE 7-3

Local Rule 7-3 requires the parties to meet and confer at least seven days prior to the filing of a motion. Defendants failed to satisfy this requirement. (See Dkt. 32-1 at ¶¶ 4-5 (meet and confer requested the day before filing).) The Motion may be denied on these grounds. *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (Local rules have "the force of law"); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) (district court have considerable latitude in managing the parties' motion practice and enforcing local rules.).[1]

## IV. COUNTER-DEFENDANTS' MOTION SHOULD BE DENIED

### A. The Applicable Legal Standard

A 12(b)(6) motion tests the legal sufficiency of the claims. *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.,* 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. In the motion, a court must accept as true the facts alleged in the complaint and must construe them in the light most favorable to the nonmoving party.

---

[1] The motion also violates Local Rule 11-6. 7,000 words are allowed (Local Rules 11-6.1 and 11-6.2.) Defendants' brief is at least 8,300 before footnotes. All portions of the brief in excess of 7,000 words should be stricken and disregarded.

BUCHALTER
A Professional Corporation
Los Angeles

BUCHALTER 106623641v6                    6
**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). A court may not grant the motion unless it finds "either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696, 699 (9th Cir. 1988)). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) instructs that labels and conclusions are not enough, but factual allegations need not be detailed. They need only be enough "to raise a right to relief above the speculative level." *Id.* However, "a plaintiff's burden at the pleading stage is relatively light." *Focal Point Films, LLC v. Sandhu*, 2019 WL 7020209 *3 (N.D. Cal. Dec. 20, 2019).

### B.   Macroverse Adequately Pleads Breach of Fiduciary Duty

The parties agree on the elements of this claim. (Motion p. 5:12-14.) Macroverse sufficiently pleads these elements.

#### 1.    Existence of fiduciary relationship

A fiduciary relationship is present in "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." *Wolf v. Superior Court*, 107 Cal.App.4th 25, 29 (2003) (cleaned up).  The relationship arises where one reposes confidence and trust in another, the latter accepts or assumes to accept the confidence.  In that case, the party entrusted [here Fortier and Richie] can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent...." *Id.*   "The existence of a fiduciary duty is generally a question of fact that cannot be resolved at the motion to dismiss stage." *Enea v. Jones,* No. 14-cv001526-JD, 2014 WL 3956559, at *3 (N.D. Cal. Aug. 12, 2014).

Counter-Defendants argue for dismissal of this claim because the Counterclaim identifies Fortier and Richie as "contractors," and independent contractors do not owe fiduciary duties as a matter of law. (Motion at pp. 6:1-13.)

However, this argument ignores the affirmative allegations showing how the nature of the parties changed, including the allegations concerning everything that Fortier did while acting as (and representing himself to be, thus acknowledging that station and role) as Macroverse's Head of Publishing.  (See, e.g. Dkt. 15 at ¶¶ 9, 11, 31(b), 37, 39, 40, and 79-81.)

The Counterclaim alleges how and why Macroverse placed its trust and confidence in Fortier (and Richie as discussed below) such that a fiduciary relationship – one Fortier accepted – existed.  (Dkt. 15 at ¶79; *see also* ¶¶80-81.)

Even if Fortier was only an independent contractor, Counter-Defendants do not cite to a single case, which holds that he could not owe fiduciary duties as a matter of law.

In *Enea v. Jones*, the Court dismissed a breach of fiduciary duty claim because the contract ***which was alleged to provide the only basis for the fiduciary duty claim*** did not include any language that would give the defendant control over the plaintiff.  *Enea*, 2014 WL 3956559 at *3.

In *Genfit S.A. v. CymaBay Therapeutics Inc*., No. 21-cv-00395-MMC, 2022 WL 195650 (N.D. Cal. Jan. 21, 2022), the court dismissed a breach of fiduciary duty claim based entirely on the alleged violation of a confidentiality agreement because a confidentiality agreement on its own was deemed insufficient to create a fiduciary relationship, and the agreement itself did not give the defendant any authority to act on behalf of or bind the defendant.  *Id*. at *7.  Thus, the issue was decided by the scope of the parties' duties, not the parties' titles.

The allegations in the Counterclaim do not mirror those in the cases cited by Counter-Defendants.  The parties' contractual relationship is not the sole basis for the fiduciary duties at issue.  Rather, Counter-Defendants' conduct forms the basis for this allegation.

BUCHALTER
A Professional Corporation
Los Angeles

BUCHALTER 106623641v6                8
MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC

For Fortier, Macroverse alleges that, acting as Macroverse's Head of Publishing (i.e., acting as Macroverse's agent)[2], Fortier directed and oversaw fundraising campaigns for Macroverse, and pursued licensing opportunities with major licensors (Marvel and DC) on Macroverse's behalf.  (XC, ¶¶ 9, 29, 37, 39, 47, and 79-81.)  Fortier engaged in these licensing discussions without Macroverse's participation – though, for a time, he provided updates regarding said discussions.  (*Id*., ¶39.)  The Counterclaim alleges that Macroverse trusted Fortier to perform these tasks.  (*Id*., ¶¶80-81.)

With respect to Richie, Macroverse alleges that it hired Richie to direct and oversee fundraising campaigns and to pursue licensing deals on Macroverse's behalf with Marvel and DC. Macroverse alleges that it trusted Richie to perform these tasks. (XC, ¶¶35(b), 37, 39, 47, 86-89.)

The Counterclaim adequately pleads a fiduciary relationship.

### 2.    Fortier and Richie each breached

Whether a breach of fiduciary duty occurred is generally a question of fact. *Marzec v. Cal. Public Employees Retirement Syst*., 236 Cal.App.4th 889, 915 (2015).

Macroverse alleges that Fortier breached a fiduciary duty when he took affirmative acts to compete with Macroverse and act against Macroverse's best interest, by, among other things, (i) usurping business opportunities Fortier promised to pursue on Macroverse's behalf and (ii) intentionally diverting and embezzling funds that Macroverse provided for the purpose of pursuing those business opportunities.  (*Id*. at ¶¶81-82 (identifying wrongful conduct); *see also* ¶¶44-46 and 48 (Fortier's misuse of Macroverse's funds) and ¶¶47 and 49-52 (Fortier's efforts to usurp opportunities he was hired to pursue on Macroverse's behalf).)

---

[2] Agents owe their principals fiduciary duties.  *Chemical Bank v. Security Pacific Nat. Bank*, 20 F.3d 375, 376 (9th Cir. 1994).

More specifically, the Counterclaim alleges the following:

- Fortier intentionally distorted and/or concealed information from Macroverse regarding licensing discussions that he was pursuing on its behalf. (XC, ¶¶47, 49.)

- Fortier misrepresented the status of these discussions by representing that they were on hold, so that Fortier could secretly negotiate with publishers, without Macroverse's knowledge. (*Id*., ¶¶49-50.)

- Fortier established separate email addresses so that these discussions could occur in secret. (*Id*.)

- Fortier formed a secret limited liability company – Authentic Editions, LLC – so that business opportunities with Marvel and DC, including the opportunity set forth in the June 2025 licensing agreement that Marvel transmitted to Authentic Editions, LLC, could be directed to that entity instead of Macroverse. (*Id*., ¶¶50-52.)

- These acts were undertaken to steal the very business opportunities that Fortier was hired to pursue on Macroverse's behalf. (*Id*., ¶ 82(a).)

Fortier breached his fiduciary duties to Macroverse by misusing, diverting, and/or embezzling the significant funds that Macroverse provided to him for the purpose of producing Authentic Editions. This includes funds for the Comics Pool, the professional grade equipment he had allegedly built, and the production team that he claimed to have working for him but which did not actually exist. (*Id*. ¶¶82(b), 35(a), 35(c), 40-44, 48, 53, and 55.)

As for Richie, the Counterclaim alleges that he too participated in the above-referenced scheme to direct the licensing opportunities that he was hired to pursue with Marvel and DC from Macroverse to the secretly formed Authentic Editions, LLC. (XC, ¶¶ 47, 49-52, and 89.)

### 3.    Macroverse pleads that it suffered harm/damages.

"The substantial factor standard [for causation] is a relatively broad one, requiring only that the contribution of the individual cause be more than negligibly or theoretical." *Brockrath v. Aldrich Chemical Co., Inc*., 21 Cal.4th 71, 79 (1999). Here, Counter-Defendants argue that Macroverse fails to satisfy this standard because it does not allege that a breach by Fortier or Richie caused Macroverse harm. This argument ignores the Counterclaim's well-pled allegations.

For example, the Counterclaim alleges that Macroverse lost licensing deals based on the scheme that Counter-Defendants perpetrated with Marvel and DC.  (XC, ¶¶47, 49-53, 55, 82, 84, 89, and 91.)  It also alleges that Macroverse lost at least $1,800,000 based on Fortier's misuse, misdirection, and embezzlement of Macroverse's funds.  (*Id*. ¶¶ 82(b); 35(a); 35(c); 40-44, 48, 53, 55, 82-84.) Macroverse alleges similar allegations with respect to Richie.  (*Id*. at ¶¶ 86-88 (existence of a fiduciary duty); ¶ 89 (breach), and ¶¶ 90-91 (resulting harm).)

Proximate cause is sufficiently pled.

### C.    Macroverse Sufficiently Alleges Its Aiding and Abetting Claim

In addition to the elements set forth in the Motion (see Motion pp. 8:7-10), a defendant may be liable for aiding and abetting breach of fiduciary duty when the aider and abettor "gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat. Assn*., 127 Cal.App.4th 1138, 1144 (2005).

The Counterclaim alleges that Richie knew that Fortier's actions with respect to Marvel and DC constituted a breach of Fortier's fiduciary duty to Macroverse, yet Richie participated in that scheme.  (XC, ¶¶94, 47, 49-55 [Richie participated in discussions with Marvel and DC and helped establish the secretly-formed entity to which business opportunities with these licensors would be (and were) redirected].) Richie's conduct assisted Fortier's misuse of funds insofar as those funds were

BUCHALTER
A Professional Corporation
Los Angeles

BUCHALTER 106623641v6

11

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

provided for Macroverse's Authentic Editions project, and Fortier, with Richie's assistance, sought to claim Authentic Editions for Fortier.

The counterclaim also alleges that Archival assisted with these breaches insofar as it was formd (by Fortier and Richie) for the purpose of diverting licensing opportunities to it. Specifically, the Counterclaim alleges that Marvel sent a licensing agreement to Archival (when it was known as Authentic Editions, LLC) instead of Macroverse. (XC, ¶¶51-52.) Knowledge is alleged because Archival was started by Fortier and Richie, both of whom were in on the scheme. (*Id*.) This same conduct also assisted with Fortier's misuse of funds for the same reasons identified above.

### D.    Macroverse Adequately Pleads Its Interference Claim.

To state a claim for intentional interference with prospective economic advantage, a party must allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.' [Citations.]" *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153 (2003).  The Counterclaim satisfies these requirements. (XC, ¶¶107-109; see also ¶¶11, 47, 49-52, and 55.)

### 1.    Macroverse alleges specific economic relationships

Relying on *Silicon Knights, Inc. v. Crystal Dynamics, Inc*., 983 F.Supp. 1303, 1312 (N.D. Cal. 1997), Counter-Defendants argue that Macroverse must allege facts identifying a decision-maker, timeline, terms or the probability of consummation. Not so. *Silicon Knights* involved only interference with "customers, potential customers, industry and associates and the public." *Id*. at 1312. The complaint sounded in an interference with the world generically.[3]

---

[3] Even so, the court granted leave to amend.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BUCHALTER 106623641v6

12

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

Here, Macroverse alleges interference with prospective licensing agreements with Marvel and DC for Authentic Editions – contracts that Counter-Defendants were negotiating on behalf of and for Macroverse's benefit. Counter-Defendants do not claim ignorance of these. (XC, ¶¶ 39, 47, 49-52 and 104.)[4] Because Plaintiff has identified a specific relationship, it has sufficiently plead this element. See, e.g. *Rickards v. Canine Eye Registration Foundation, Inc.*, 702 F.2d 1449, 1456 (1983)

### 2.    Macroverse adequately pleads knowledge

Counter-Defendants contend that Macroverse only pleads conclusory allegations to establish knowledge of interference. This argument ignores allegations that specifically establish Counter-Defendants' actions with respect to Marvel and DC. (XC, ¶¶11, 47, 49-52, 55, 105.) Macroverse also alleges that these relationships were disrupted because Counter-Defendants redirected licensing opportunities that they were paid to pursue for Macroverse to a competing entity that they had secretly formed for that purpose. (*Id*. at ¶¶47, 49-52, 55, 106.)

### 3.    Intentional interference is sufficiently pleaded

Specific intent is not a required element of this claim. It is sufficient for Macroverse to allege that Counter-Defendants knew their conduct would likely interfere with Macroverse's relationships. See, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1154. As discussed above, Macroverse alleges that Fortier and Richie engaged in a scheme to direct licensing opportunities with Marvel and DC from Macroverse to their own secretly formed entity. (See XC, ¶¶47, 49-50.) As part of this scheme, Macroverse alleges that Counter-Defendants made false representations to Marvel and DC regarding their ownership of, and ability to exploit, the Authentic Editions line. (*Id*. at ¶106(a)-(b).) Consequently, the licensing deals that Counter-Defendants pursued for Macroverse, and for which Macroverse paid them, never bore the intended fruit, and instead were advanced in Counter-

---

[4] As noted in Section II(B), Defendants assisted in Kickstarter campaigns that brought in investors on terms that each would obtain comics, and then Fortier did not provide the comics, interfering with those relationships.

Defendants' favor through deal terms and licensing agreements sent directly to Defendant's entity.  (*Id.*, ¶¶ 52, 55, 106(c), and 107.)   Thus, Macroverse has sufficiently alleged this element.

### 4.    Disruption and proximate cause are sufficiently pleaded

Macroverse alleges that the licensing deals Counter-Defendants were hired to pursue, and were pursuing, for Macroverse were disrupted when Counter-Defendants seized those deals for themselves.  *See* § IV(D)(3) above.   These elements are sufficiently plead.

### 5.    Independently wrongful conduct is alleged

To prevail on this claim, Macroverse must allege that Counter-Defendants engaged in independently wrongful acts designed to interfere with Macroverse's prospective economic relations.  An act is "independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard...an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive." *San Jose Construction, Inc. v. S.B.C.C., Inc.*, 155 Cal.App.4th 1528, 1544-1545 (2007).  Here, Macroverse alleges that Counter-Defendants' conduct with respect to Marvel and DC was wrongful because Counter-Defendants were hired to pursue licensing opportunities with these publishers for Macroverse, and in the course of doing so improperly diverted those opportunities to a secretly formed entity that only they knew about.  Macroverse alleges, among other things, breach of fiduciary duty and unfair competition claims arising from this conduct.  This element is sufficiently plead.

### E.    The Negligent Interference with Prospective Economic Advantage Claim Is Sufficiently Pled

To state a claim for negligent interference with prospective economic advantage, a plaintiff must allege facts to show (1) an economic relationship between the plaintiff and a third party, which contains a reasonably probable future economic

benefit or advantage to the plaintiff; (2) that the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship; (3) the defendant was negligent; and (4) such negligence caused damage to the plaintiff in that the relationship was actually interfered with or disrupted. *North Am. Chemical Co. v. Superior Court,* 59 Cal.App.4th 764, 786 (1997). This claim and the intentional interference claim contain similar elements and rely upon similar facts. The essential difference between the two claims is with respect to element two – that Counter-Defendants knew or should have known that their conduct (i.e., the scheme with respect to Marvel and DC) would interfere with Macroverse's relationship with these publishers. (XC, ¶¶114–115.) Even though the Counterclaim alleges the required elements, Counter-Defendants argue this claim must be dismissed because Macroverse has not pleaded that Counter-Defendants owe Microverse a duty of care.

A claim for negligent interference with economic relationship arises "only when the defendant owes the plaintiff a duty of care." *Limandri v. Judkins*, 52 Cal.App.4th 326, 348 (1997). The duty of care is determined by considering the following factors: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm. *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979); *see also*, *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650. Here, the Counterclaim alleges sufficient facts to establish a duty of care. For example, it alleges that the licensing opportunities that Counter-Defendants interfered with were intended to benefit Macroverse. (XC, ¶¶ 47 and 49-51.) The Counterclaim also alleges that Counter-Defendants knew that these opportunities were intended for Macroverse (because they were hired to pursue them for Macroverse), making it foreseeable and reasonably certain that their conduct would

harm Macroverse. (*Id.*; see also ¶¶ 114-115.) The Counterclaim also alleges that Macroverse lost licensing opportunities with Marvel and DC based on Counter-Defendants' actions. (*Id.*, ¶¶ 55 and 117.) Further, the fact that Counter-Defendants usurped opportunities that they were paid to pursue for Macroverse speaks to the moral blame associated with Counter-Defendants' conduct.

Macroverse alleges sufficient facts to establish a duty of care.

## F.    The Trademark Infringement Claim Is Sufficiently Pleaded

To state a claim for trademark infringement, a plaintiff must allege (1) a valid, protectable interest in its trademark and (2) the defendant's use of the mark is likely to cause confusion. *Moroccanoil, Inc. v. Zotos International, Inc.*, 230 F.Supp.3d 1161, 1171 (C.D. Cal. 2017). Here, Macroverse alleges it has a valid, protectable interest in the Authentic Editions Mark, which is used in connection with publishing, marketing, and selling replicas of original comic books and related goods and services. (XC, ¶126.) Macroverse alleges it acquired that right in July 2024 by both using the mark in commerce and based on Fortier's assignment of the mark. (*Id.*; see also, ¶¶127, 31 and 37.) Macroverse also alleges that Fortier, Richie and Archival are using a confusingly similar mark to promote, market, and sell facsimiles of comic books and related goods and services; and that this use is likely to create confusion. (*Id.*, ¶132.) Macroverse has plausibly stated a claim for trademark infringement.[5]

## G.    The Common Law Trademark Infringement Claim Is Sufficiently Pled

"To state a claim of trademark infringement under California common law, a plaintiff need allege only 1) their prior use of the trademark and 2) the likelihood of the infringing mark being confused with their mark." *Wood v. Apodaca*, 375 F.supp.2d 942, 947-948 (N.D. Cal. 2005), citing *American Petrofina v. Petrofina of California, Inc.,* 596 F.2d 896, 897 (9th Cir. 1979). The Counterclaim satisfies these

---

[5] This claim was brought under 15 U.S.C. § 1125, which does not require a registered mark.

requirements.  (See XC, ¶¶138-145.)  Nevertheless, Counter-Defendants argue this claim should be dismissed because Macroverse has not sufficiently established senior use or sufficient market penetration for common law rights.  However, Counter-Defendants confuse the burden of pleading with the burden of proof.  Specifically, Counter-Defendants' argument is not based on a single case which addresses the pleading standard applied on a 12(b)(6) motion to dismiss. See, e.g. *Hanginout, Inc. v. Google, Inc*., 54 F.Supp.3d 1109, 1121 (S.D. Cal. 2014) (discussing priority of use and market penetration in connection with an injunction); *Stone Creek, Inc. v. Omnia Italian Design, Inc*., 875 F.3d 426, 436 (9th Cir. 2017) (scope of common law rights addressed in connection with motion for summary judgment); *Credit One Corp. v. Credit One Financial, Inc*., 661 F.Supp.2d 1134 (C.D. Cal. 2009) (preliminary injunction); *Adray v. Adry-Mart, Inc*., 76 F.3d 984 (9th Cir. 1995) (appealing judgment and injunction); *Optimal Pets, Inc. v. HealthyPets, Inc*., 877 F.Supp.2d 953 (C.D. Cal. 2012) (motion for judgment as a matter of law following jury trial).

Macroverse has sufficiently pled this claim.

## H.    The Fraud Claims Are Pleaded with Sufficient Particularity.

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. [Citations]." *Lazar v. Superior Ct*., 12 Cal. 4th 631, 638 (1996).  A claim for negligent misrepresentation involves similar elements, though instead of knowledge of falsity, a plaintiff need only establish that a false statement was made without any reasonable basis for believing it to be true. *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal.App.5th 146, 154 (2018); *see also Quality Wash Grp. V, Ltd. v. Hallak*, 50 Cal. App. 4th 1687, 1697 (1996) (holding that whether the misrepresentation was made without reasonable grounds for believing it is a question of fact).  A party must allege fraud with particularity. *See*

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106–08 (9th Cir. 2003); Fed. R. Civ 9(b).

### 1.    The misrepresentations are sufficiently pled

Relying on *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990), Counter-Defendants contend that the fraud claims rely on general, forward-looking statements constituting mere puffery.[6] While generally fraud is limited to misrepresentations of past or existing fact, courts have routinely recognized exceptions to this rule. *See Russ Lumber & Mill Co. v. Muscupiabe Land & Water Co.* (1898) 120 Cal. 521 (*Russ*) ["A mere promise to perform an act in the future is not, in a legal sense, a representation…but if the promise is accompanied with statements of existing facts which show the ability of the promisor to perform his promise, and without which the promise would not be accepted or acted upon, such statements are denominated representations."]

None of the representations upon which Macroverse bases its fraud claims are mere puffery. First, among the enumerated misrepresentations is the actionable false statement that "Fortier represented to Macroverse's CEO, Eben Matthews, that he ***had developed*** [statement of past fact] the proprietary technology and equipment necessary to fully produce and deliver multiple "Authentic Editions" lines at scale." (XC ¶150.) Macroverse alleges that Fortier "present[ed] limited pre-production print samples…and represented that he had (or could configure) the necessary technology and equipment to produce such replicas at scale." (*Id.*, ¶27.) These allegations are that of 'a false statement of past or existing fact'.[78]

Second, Macroverse paid approximately $1,800,000 based on Fortier's "representations that the funds would be used to" (i) secure licenses, (ii) fund

---

[6] Counter-Defendants raise similar arguments in connection with their request to dismiss both the intentional misrepresentation and negligent misrepresentation claims.

[7] See MTD at p. 19, relying on *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990).

[8] Macroverse also specifically alleges that Fortier represented that discussions with Marvel and DC were on hold or "in limbo" when he knew that to be false.

**MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC**

production costs (including a restoration team), (iii) build "professional-quality" equipment, (iv) hire staff, and (v) acquire rare comics for a "Comics Pool." (*Id.*, ¶152.) Moreover, Macroverse entered into third-party agreements and raised funds related to the Authentic Editions line based on Fortier's representations that he could meet deadlines and that his production restoration team had the capability of producing the products associated with these campaigns. (*Id.* at ¶153.) Fortier's statements contained statement of past facts, and statements of capabilities he currently had so that he could perform in the future, when he had no then existing actual capability to perform at the level necessary for the project. These representations are actionable.

### 2.    Scienter is sufficiently pled

Here, Macroverse alleges that, upon information and belief, Fortier's representations were knowingly false when they were made or were made with reckless disregard for their truth. (XC, ¶152.) The allegations as set forth in the Counterclaims, particularly regarding Fortier's statements that he possessed the necessary technology to produce replicas and scales as well as the business plans and projections he proffered to procure Macroverse's reliance and funding, confirm that Fortier possessed the requisite knowledge to make the false statements identified above. Macroverse has sufficiently alleged scienter. Where, the representations, as compared to the follow-on facts, show a stark promise between capability and promise, on the one hand, and a failure to do as represented and promised, that is sufficient to show scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007) (alleging facts that give rise to a "strong inference" of scienter is sufficient); see also, *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)(scienter may be alleged by inference upon a showing of sufficient factual basis).

MACROVERSE'S OPPOSITION TO MOTION TO DISMISS BY ADAM
FORTIER, ROSS RICHIE AND ARCHIVAL COMICS, LLC

### 3. Intent to induce reliance is sufficiently pled

Counter-Defendants make this argument in a single paragraph without any real analysis. It is unclear how this is different than their scienter argument.

Nonetheless, based on the facts fully documented (see e.g., § IV(H)(1)), Macroverse alleges that "Fortier intended for these false representations to induce Macroverse into hiring Fortier, providing him with the above-referenced funds, and taking actions to fund and develop business opportunities for the production of Authentic Editions." (XC, ¶155.) Counter-Defendants advance a theory that intent to induce reliance must be accompanied by a document, meeting, or statement evidencing a purpose to induce reliance, but cites no authority for this proposition. Here, Fortier approached Macroverse with an opportunity. He made statements detailed in the Counterclaim to induce Macroverse to enter into business with him. His statements were false and induced Macroverse to do what he wanted – give him money which he did not use as promised or directed, but as he saw fit for his own benefit. (*Id.* at ¶¶27, 31-33, 35, 36.) Fortier's intent to defraud is expressly and sufficiently alleged.

### 4. Justifiable reliance is sufficiently pled

"Actual reliance occurs when a misrepresentation is 'an immediate cause of [a plaintiff's] conduct, which alters his legal relations'…[i]t is not ... necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct.... It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 975-77 (1997) (internal citations omitted). The Counterclaim satisfies these requirements. Counter-Defendants contend justifiable reliance must be supported by facts showing a specific payment authorization, and the circumstances of its approval. Not so. Macroverse identifies the specific expenditures it incurred to build custom equipment, to acquire rare comics, hire personnel, and enter into contracts as

Fortier requested and in direct reliance of Fortier's representations. (XC, ¶¶35, 152-153.) Macroverse would not have expended such significant resources if not for Fortier's misrepresentations.

### 5.    Resulting damages are sufficiently pled

As stated, Macroverse alleges that it provided Fortier, or persons to whom Fortier directed payments to be made, with no less than $1,800,000, based on Fortier's representations that the funds would be used to develop the Authentic Editions project. (XC, ¶152.) These expenditures are further broken down into varying disbursements, illuminating with particularity Macroverse's damages in the form of money paid for custom equipment, the comics pool, Fortier's expenses, persons Fortier requested be hired, and the non-existent production team. (*Id.*, ¶ 35.)

### 6.    Concealment is sufficiently pled

To establish fraudulent concealment, a plaintiff must show: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known or the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Graham v. Bank of America, N.A.*, 226 Cal.App.4th 594, 606 (2014). The Counterclaim sufficiently pleads each of these elements. Nevertheless, Counter-Defendants reiterate their contention that Macroverse has failed to plead a duty to disclose on behalf of the Counter-Defendants, specifically asserting that neither Fortier nor Richie had a fiduciary relationship with Macroverse which would impose a duty to disclose.

There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from

the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.'" *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997).

As discussed, Macroverse sufficiently pleads a fiduciary duty on behalf of Counter-Defendants. Fortier, acting in his capacity as Macroverse's head of publishing, Fortier directed and oversaw fundraising campaigns for Macroverse, and pursued licensing opportunities with Marvel and DC on Macroverse's behalf and with Macroverse's trust to perform these obligations without Macroverse's involvement. (XC ¶¶9, 29, 37, 39, 47, and 79-81.) With respect to Richie, Macroverse alleges that it hired him to direct and oversee fundraising campaigns. (*Id*., ¶¶35(b) and 37.) It further alleges that Richie also pursued licensing deals on Macroverse's behalf with Marvel and DC, and that Macroverse trusted Richie to perform these tasks. (*Id*. at ¶¶39, 47, 86-89.) Macroverse also alleges that (i) Counter-Defendants had exclusive knowledge of the ongoing discussions with Marvel and DC; (ii) Macroverse was unaware of the status these discussions; and (iii) Counter-Defendants took steps to conceal the status of these discussions by, for example, using secret email addresses. (*Id*., ¶¶ 170-171, 47, 49-50.) Macroverse has pled facts sufficient to establish a duty to disclose by Counter-Defendants.

## V.    IN THE EVENT ANY CLAIMS ARE FOUND INSUFFICIENT, MACROVERSE REQUESTS LEAVE TO AMEND

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave when justice so requires."); *see also Balistreri v. Pacific Polic Dep't*, 901 F.2d 696, 701 (9th Cir 1988). If the Court is inclined to grant the Motion, it should allow Macroverse leave to amend the Counterclaim to set forth additional factual allegations demonstrating Macroverse's entitlement to relief.

1  **VI.    <u>CONCLUSION</u>**

2          For these reasons, Macroverse respectfully requests that the Court deny the

3  Motion.  Alternatively, if the Court is inclined to grant any portion of the Motion,

4  Macroverse requests leave to amend.

5

6  DATED:  November 21, 2025          BUCHALTER
                                      A Professional Corporation
7

8
                                      By:  <u>*/s/ Aaron M. Levine*</u>
9                                          AARON M. LEVINE
                                           MATTHEW L. SEROR
10                                         Attorneys for Defendant and
                                           Counterclaimant
11                                         MACROVERSE MEDIA INC.

12

13

14          The undersigned, counsel of record for Macroverse, certifies that this brief

15  contains 6,964 words, which complies with the word limit of Local Rule 11-6.1.

16

17  DATED:  November 21, 2025          BUCHALTER
                                       A Professional Corporation
18

19
                                       By:  <u>*/s/ Aaron M. Levine*</u>
20                                          AARON M. LEVINE
                                            MATTHEW L. SEROR
21                                          Attorneys for Defendant and
                                            Counterclaimant
22                                          MACROVERSE MEDIA INC.

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES