SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JESSE A. SALEN, Cal Bar No. 292043
jsalen@sheppardmullin.com
Michael K. Heins, Cal Bar No. 331563
mheins@sheppardmullin.com
Ximena Solano Suarez, Cal Bar No. 263574
xsolanosuarez@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:  858.720.8900
Facsimile:  858.509.3691

Attorneys for Plaintiff/Counter-Defendant ADAM
FORTIER d/b/a PORTMANTEAU PUBLISHING;
Counter-Defendants ROSS RICHIE, and ARCHIVAL
COMICS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ADAM FORTIER d/b/a PORTMANTEAU PUBLISHING,<br><br>Plaintiff,<br><br>v.<br><br>MACROVERSE MEDIA, INC.,<br><br>Defendant.<br><br>_____<br><br>MACROVERSE MEDIA, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>ADAM FORTIER d/b/a PORTMANTEAU PUBLISHING, ARCHIVAL COMICS LLC f/k/a AUTHENTIC EDITIONS, LLC HARLEY YEE, ROSS RICHIE, DANIEL SAEVA and DOES 1-10, inclusive,<br><br>Counter-Defendants. | Case No. 2:25-cv-07573-CV-SK<br><br>**REPLY IN SUPPORT OF ADAM FORTIER d/b/a PORTMANTEAU PUBLISHING, ROSS RICHIE, AND ARCHIVAL COMICS LLC'S MOTION TO DISMISS MACROVERSE MEDIA INC.'S COUNTERCLAIMS 4-5, 7-8, AND 10-14**<br><br>Date:     December 12. 2025<br>Time:     1:30 p.m.<br>Ctrm:     10B, 10th Floor<br>Judge:    Hon. Cynthia Valenzuela |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 7

II.   COUNTERCLAIMS 4-5, 7-8, AND 10-14 SHOULD BE DISMISSED ................. 7

    A.    Defendants Complied with the Court's Standing Order and Local Rules ........................................................................................................ 7

    B.    Macroverse Did Not Adequately Plead Breach of Fiduciary Duty ................ 8

        1.    Macroverse fails to allege facts sufficient to show the existence of a fiduciary duty. ................................................................. 8

        2.    Macroverse fails to plausibly plead a breach of purported duties. ................................................................................................. 10

        3.    Macroverse fails to plead causation. .................................................. 11

        4.    Macroverse never disputes that these theories sound in fraud. .......... 12

    C.    Macroverse Did Not Adequately Plead Aiding and Abetting ...................... 12

        1.    Macroverse fails to plead that Richie knew of a breach or gave substantial assistance. ........................................................... 13

        2.    Macroverse fails to plead that Archival contributed to any alleged breach. ................................................................................ 13

    D.    Macroverse Did Not Adequately Plead Intentional Interference ................. 14

        1.    Macroverse fails to allege a concrete specific relationship. ............... 14

        2.    Macroverse fails to allege knowledge of a qualifying relationship. ...................................................................................... 15

        3.    Macroverse fails to allege intentional interference. ........................... 15

        4.    Macroverse fails to allege disruption or proximate cause. ................. 16

        5.    Macroverse fails to allege independently wrongful conduct. .............. 16

    E.    Macroverse Did Not Adequately Plead Negligent Interference .................. 16

    F.    Macroverse Did Not Adequately Plead Its Trademark Claims .................... 17

        1.    Macroverse fails to sufficiently plead its Lanham Act claim. ............. 17

        2.    Macroverse fails to sufficiently plead common law infringement. .................................................................................... 18

    G.    Macroverse's Fraud Claims Do Not Satisfy Rule 9(b) ................................ 19

H.    Amendment is Futile ........................................................................ 21

III.    CONCLUSION.................................................................................... 21

Case No. 2:25-cv-07573-CV-SK
REPLY ISO MOTION TO DISMISS COUNTERCLAIMS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*AmerisourceBergen Corp. v. Dialysist W., Inc.*
  465 F.3d 946 (9th Cir. 2006) ................................................................21

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)..............................................................................11, 19

*Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp.*
  2009 WL 5108579 (N.D. Cal. Dec. 18, 2009)......................................18

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)..............................................................................11, 19

*Biakanja v. Irving*
  49 Cal. 2d 647 (1958) ...........................................................................16

*Bockrath v. Aldrich Chem. Co., Inc.*
  21 Cal. 4th 71 (1999) ............................................................................11

*Casey v. U.S. Bank Nat'l Ass'n*
  127 Cal. App. 4th 1138 (2005) .............................................................13

*Chemical Bank v. Security Pacific Nat. Bank*
  20 F.3d 375 (1994)................................................................................10

*Cleveland v. Johnson*
  209 Cal. App. 4th at 1338 (2012) .........................................................9

*Enea v. Jones*
  2014 WL 3956559 (N.D. Cal.) ..............................................................9

*Genfit S.A. v. CymaBay Therapeutics Inc.*
  2022 WL 195650 (N.D. Cal.) ................................................................9

*Hanginout, Inc. v. Google, Inc.*
  54 F. Supp. 3d 1109 (S.D. Cal. 2014)...................................................19

*J'Aire Corp. v. Gregory*
  24 Cal. 3d 799 (1979) ...........................................................................16, 17

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. 2009) ........................................................20

*Korea Supply v. Lockheed Martin Corp.*
  29 Cal. 4th 1134 (2003) .................................................11, 15, 16

*Kythera Biopharmaceuticals, Inc. v. Lithera*
  998 F. Supp. 2d 890 (C.D. Cal. 2014) .............................................18

*LiMandri v. Judkins*
  52 Cal. App. 4th 326 (1997) ..........................................................21

*Metal Jeans, Inc. v. Affliction Holdings, LLC*
  2015 U.S. Dist. LEXIS 80710 (C.D. Cal. June 19, 2015) ...................18

*Mitchell v. Gonzales*
  54 Cal. 3d 1041 (1991) ..........................................................11, 16

*New Alaska Dev. Corp. v. Guetschow*
  869 F.2d 1298 (9th Cir. 1989) ........................................................13

*Rearden LLC v. Rearden Commerce, Inc.*
  683 F.3d 1190 (9th Cir. 2012) ........................................................17

*Shake 'N Buns Cal. Burger, LLC v. Cal. Burger Express, LLC*
  1:23-cv-01711 (E.D. Cal. June 5, 2024) .........................................18

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*
  983 F. Supp. 1303 (N.D. Cal. 1997) ...............................................15

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*
  875 F.3d 426 (9th Cir. 2017) ........................................................19

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007) ...........................................13, 18, 19, 20

*Vasquez v. L.A. County*
  487 F.3d 1246 (9th Cir. 2007) ........................................................21

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ........................................................20

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*
  42 Cal. App. 4th 507 (1996) ..........................................................11

*Wolf v. Superior Court*
    107 Cal. App. 4th 25 (2003) ............................................................................8, 9

*Wood v. Apodaca*
    375 F. Supp. 2d 942 (N.D. Cal. 2005) ..............................................................18

*Worldvision Enters., Inc. v. Am. Broad. Cos.*
    142 Cal. App. 3d 589 .........................................................................................8

**Statutes**

15 U.S.C. § 1114 ......................................................................................................17

Cal. Civ. Code § 2295 .............................................................................................10

Lanham Act ......................................................................................................17, 18

U.S. Code § 1125 .....................................................................................................17

**Other Authorities**

Rule 9 ......................................................................................................................14

Rule 9(b)......................................................................................7, 12, 19, 20, 21

Rule 12 .....................................................................................................................14

Rule 12(b)(6).................................................................................................7, 12, 17

Case No. 2:25-cv-07573-CV-SK
REPLY ISO MOTION TO DISMISS COUNTERCLAIMS

## I.    <u>INTRODUCTION</u>

Macroverse's Opposition (Dkt. 45) to Counter-Defendants Adam Fortier's, Ross Richie's, and Archival Comics' Motion to Dismiss (Dkt. 30 at Ex. A) ("Motion") confirms that Macroverse has failed to sufficiently plead its fiduciary duty, tortious interference, trademark interference, and fraud counterclaims as a matter of law.  In a futile attempt to bolster its deficient allegations, Macroverse attempts to recast a failed business relationship with the Counter-Defendants as tortious or, worse, fraudulent conduct.  At the end of the day, Macroverse manufactured the challenged Counterclaims and joined Mr. Fortier's colleagues to this lawsuit in a legally deficient attempt to create leverage over Mr. Fortier and distract the Court from deciding the actual issue that matters—whether or not Macroverse and Mr. Fortier actually entered into a binding agreement vis-à-vis the MOU (they did not). Tellingly, beyond merely rehashing a slew of threadbare and conclusory allegations from its Counterclaims, Macroverse's Opposition fails to identify any plausible and well-pled allegations that would come close to salvaging the challenged Counterclaims in accordance with the pleading requirements of Rules 9(b) and 12(b)(6), respectively, and binding Ninth Circuit precedent. Nor does Macroverse's Opposition identify any allegations that Counter-Defendants' Motion over-looks or ignores in arguing that the challenged Counterclaims are legally deficient—because there are no such missing allegations. For at least these reasons, the challenged Counterclaims are legally deficient and should be dismissed.

## II.    <u>COUNTERCLAIMS 4-5, 7-8, AND 10-14 SHOULD BE DISMISSED</u>

### A.    *Defendants Complied with the Court's Standing Order and Local Rules*

As an initial matter, Macroverse alleges that Counter-Defendants' Motion should be stricken or denied for a failure to comply with word counts and a meet and confer requirement. Macroverse is wrong. This Court's Standing Order for Civil Cases states: "[u]nless otherwise stated by the Court, memoranda of points and authorities in support of or in opposition to motions shall not exceed twenty-five (25) pages." Counter-Defendants' Motion was less than twenty-five pages. *See* Motion at 25. No portion of

1   Counter-Defendants' motion to dismiss should be stricken from the record.

2       There is also no dispute that the parties conferred on October 28, 2025, and that the

3   parties had a thorough discussion related to Counter-Defendants' Motion. During that

4   meeting, the parties could not resolve all issues raised in the Motion. *See* Dkt. 32-1,

5   Declaration of Michael K. Heins ("Heins Decl."), at ¶¶ 5-7. Notably, the meet and confer

6   was also fruitful—Counter-Defendants narrowed aspects of its Motion in response to

7   Macroverse's positions. Macroverse does not allege that any portion of the Motion could

8   have been avoided had meet and confer occurred earlier, and Macroverse's Opposition

9   does not concede a single fact or legal issue in the Motion. Counter-Defendants' Motion,

10  in its entirety, could not have been avoided by speaking earlier in the week.

11      **B.    *Macroverse Did Not Adequately Plead Breach of Fiduciary Duty***

12          1.    <u>Macroverse fails to allege facts sufficient to show the existence of a</u>

13              <u>fiduciary duty.</u>

14      Macroverse's Opposition alleges that "the nature of the parties changed" beyond

15  the independent contract relationship described in the MOU. *See* Opposition at 8. Not so.

16  The purported change in relationship beyond the MOU, which is not even pled, is

17  contradicted by the express terms of the MOU. Macroverse alleges a fiduciary

18  relationship developed based on his role at Macroverse after the signing of the MOU, but

19  Fortier's title/role described in Macroverse's Opposition and the Counterclaims is the

20  exact same title and role listed within the express terms of his independent contractor role

21  under the MOU. *See* Dkt.15, Ex. B at B.1.

22      Macroverse also alleges that it "placed its trust and confidence in Fortier (and

23  Richie)." *See id*. That is not enough. As *Wolf v. Superior Court,* explains, while every

24  contract involves some degree of trust and confidence, this alone does not give rise to

25  fiduciary obligations. *See* 107 Cal. App. 4th at 31 (2003); *see also Worldvision Enters.,*

26  *Inc. v. Am. Broad. Cos.*, 142 Cal. App. 3d 589, 595 (holding that mutual trust in a

27  business relationship does not create a fiduciary duty absent a recognition of the same).

28      Macroverse incorrectly alleges that Counter-Defendants "do not cite to a single

case" holding that an independent contractor cannot owe fiduciary duties as a matter of law. *See* Oppo. at 8. That is incorrect. Not only do Counter-Defendants cite such cases, but courts have repeatedly held that where agreements label a party a contractor and describe an arm's-length commercial engagement, no fiduciary duty arises absent an express undertaking to act for the other's benefit. *See, e.g., Enea v. Jones*, 2014 WL 3956559, at *3 (N.D. Cal.) (no fiduciary duty where agreement "specifically refer[red]" to defendant as contractor and did not give him control over plaintiff); *Genfit S.A. v. CymaBay Therapeutics Inc.*, 2022 WL 195650, at *7 (N.D. Cal.) (no fiduciary duty where collaborator was "independent contractor," had no authority to bind the company, and parties disclaimed any agency or joint venture); *Cleveland*, 209 Cal. App. 4th at 1338; *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29-31 (refusing to expand fiduciary status beyond recognized categories and holding that trust and the implied covenant in every contract do not create fiduciary duties). On the other hand, Macroverse itself cites no cases holding that independent contractors performing this kind of consulting and business development work are fiduciaries.

Additionally, Macroverse misstates what *Enea* and *Genfit* actually hold. In *Enea*, the court reviewed the very agreements plaintiffs claimed created a fiduciary duty and found "nothing that would support" the allegation that they gave defendant control over plaintiffs or "otherwise gave rise to a fiduciary relationship," emphasizing the "contractor" label. *See* 2014 WL 3956559, at *3. In *Genfit*, relying on *Enea*, the Court held that a confidentiality and collaboration relationship did not create fiduciary duties where the CDA labeled the scientist an "independent contractor," gave him no authority to bind GENFIT, and disclaimed any agency, and the Collaboration Agreement likewise disclaimed employment, agency, joint venture, or partnership. *See* 2022 WL 195650, at *7. The court then rejected GENFIT's argument that trust, confidence, and the scientist's "unique expertise" created a fiduciary relationship. *Id.* Macroverse is in the same posture. Here, like in *Enea* and *Genfit*, the parties had a standard contractor engagement, not a fiduciary relationship. In fact, Counterclaim 4 itself confirms the contractor relationship.

1  *See* Dkt. 15 at ¶¶ 31(a), 35(b), 37, 54. None of the alleged terms gives Fortier control

2  over Macroverse's affairs or authority to bind Macroverse.

3       As a last-ditch attempt, Macroverse tries to recast Fortier as an "agent," as such

4  agents owe fiduciary duties to principals. *See* Oppo. At 9. But this is nothing more than a

5  naked conclusion, unsupported by law or any allegations. In order to sufficiently plead

6  agency, Macroverse would have had to allege that (1) Macroverse had the right to control

7  Fortier's conduct in dealings with third parties; and (2) that Fortier had authority to (a) act

8  on Macroverse's behalf and (b) bind it. *See* Cal. Civ. Code § 2295. It does not. Indeed,

9  there are no allegations that Macroverse gave Fortier authority to execute licenses, sign

10  contracts, or bind Macroverse in any way. Macroverse's allegations amount to the fact

11  that Fortier (and Richie) "directed and oversaw fundraising campaigns" and "pursued

12  licensing opportunities," and that Fortier sometimes reported back. *See* Dkt. 15 at ¶¶ 9,

13  37, 39, 47, 79–81, 86–89. Such work is consistent with Fortier's and Richie's duties as an

14  independent contractor, and do not show power to bind Macroverse. Macroverse's

15  reliance on *Chemical Bank v. Security Pacific Nat. Bank* is misplaced. That case involved

16  a party that expressly agreed to act as administrative agent. *See* 20 F.3d 375, 377–78. In

17  contrast, here, Macroverse alleges nothing comparable.

18       Likewise, Richie also had a contractor relationship with Macroverse. Even if

19  Macroverse allegedly placed trust in Richie, such reliance does not come close to turning

20  his contractor-role into a fiduciary relationship for the same reasons as explained above.

21       The Court should dismiss Count 4 with prejudice because the alleged facts do not

22  support a fiduciary relationship as a matter of law, and Macroverse does not indicate that

23  additional facts exist that could establish a fiduciary relationship. The Court should also

24  dismiss derivative Count 5, which depends on the existence of an underlying fiduciary

25  duty, for the same reasons.

26            2.   <u>Macroverse fails to plausibly plead a breach of purported duties.</u>

27       Even if Macroverse had pled facts demonstrating a fiduciary relationship (it did

28  not), Macroverse still fails to adequately plead any breach of such relationship. In its

1   Opposition, Macroverse argues that whether a breach occurred is "a question of fact." *See*

2   Oppo at 9. Specifically, Macroverse points to allegations that Fortier (and Richie)

3   usurped opportunities, misused or embezzled funds, formed a "secret" LLC, and diverted

4   licensing deals. *See id*. at 9-10. But, none of these allegations identify a specific business

5   opportunity that belonged to Macroverse, contract or term, or any concrete transaction

6   that Fortier or Richie took from Macroverse. They do not identify any particular amount

7   of money, any transfer, any payee, or any mechanism for the alleged diversion. As such,

8   these are conclusory "scheme" allegations that fail to support Macroverse's breach claim

9   as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts disregard legal

10  conclusions and "naked assertion[s]" that lack supporting factual allegations); s*ee also*

11  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007) (complaint must contain factual

12  enhancement that makes liability plausible, not merely possible).

13          3.    <u>Macroverse fails to plead causation.</u>

14          As explained in the Motion, Macroverse's allegations also do not demonstrate the

15  existence of any purported harm suffered by Macroverse as a result of Fortier's or

16  Richie's conduct. Macroverse merely pleads that it "lost licensing deals" and "lost at least

17  $1,800,000." However, Macroverse fails to tie those losses to any alleged fiduciary duty

18  breach. *See* Oppo. at 11. California law requires a "substantial factor" causal link

19  between challenged conduct and a specific injury. *See Mitchell v. Gonzales*, 54 Cal. 3d

20  1041, 1052 (1991). For tort theories, such as these, a plaintiff must allege disruption of an

21  identifiable economic relationship and resulting economic loss, not generalized "lost

22  deals." *See Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003);

23  *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 523-27 (1996).

24  *Bockrath v. Aldrich Chem. Co., Inc.*—cited by Macroverse—confirms that where

25  causation is not obvious, a plaintiff must plead specific facts connecting each defendant's

26  conduct to the alleged harm. 21 Cal. 4th 71, 80 (1999). Macroverse fails to do so.

27          As to licensing, Macroverse asserts it "lost licensing deals based on the scheme."

28  *See* Oppo. at 11. Macroverse describes conversations with licensors, a "scheme," and a

"secret" LLC, but fails to identify a particular license or contract that was awarded to someone else instead of Macroverse, any deal terms, any date, or any statement from Marvel or DC refusing to contract with Macroverse because of any identified act. *See* Dkt. 15 at ¶¶ 47, 49-53, 55, 82, 84, 89, and 91.

As to the $1,800,000, Macroverse alleges it advanced funds for comics, equipment, and production work, nothing more. *See* Oppo. at 11. But those same allegations confirm that the money was actually used for those same activities. *See* also Dkt. 15 at ¶¶ 82(b), 35(a), 35(c), 40-44, 48, 53, 55, 82-84; *see also* Dkt. 15, Ex. B at A.1. Macroverse does not identify any specific transfer to Fortier personally, any improper payment, or any invoice unrelated to the project. It simply labels the entire spend as "misused" or "embezzled" without transactional detail. At most, Macroverse alleges it invested in a project that later failed and now regrets that investment. Such allegations do not demonstrate proximate causation or recoverable tort damages resulting from a fiduciary duty breach. The same is true for Richie.

The Court should dismiss counts 4 and 5 under Rule 12(b)(6) for these additional reasons, as Macroverse's bare assertions of "lost licensing deals" and an undifferentiated $1,800,000 "loss" do not meet the required pleading standard for those claims.

4.    <u>Macroverse never disputes that these theories sound in fraud.</u>

Macroverse also never disputes that Counts 4 and 5 sound in fraud, triggering Rule 9(b) requirement for specificity. *See* Oppo. at 7-12. Thus, they lack the particularity requirement as Macroverse fails to plead the who, what, when, where, and how of the supposed usurpation and misuse of funds. The Court should dismiss Counts 4 and 5 under Rule 9(b).

C.    ***Macroverse Did Not Adequately Plead Aiding and Abetting***

In addition to failing for presupposing a non-existent fiduciary duty, Count 5 also fails because Macroverse does not plead that Richie (1) had actual knowledge of a specific breach of a fiduciary duty, and (2) gave substantial assistance to that breach. *See*

*Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144-45 (2005). Macroverse's allegations fail to support either element.

      1.    <u>Macroverse fails to plead that Richie knew of a breach or gave substantial assistance.</u>

Macroverse's threadbare assertions that Richie "knew," plus routine business activity, do not satisfy the actual-knowledge requirement. *See Casey*, 127 Cal.App.4th at 1146-1152 ("Knowledge is the crucial element…complaint must allege the defendant's actual knowledge of the specific breach of fiduciary duty for which it seeks to hold the defendant liable."). Macroverse merely pleads that Richie "participated in discussions with Marvel and DC" and helped form an LLC, and therefore he knew of Fortier's breach. *See* Oppo. at 11-12 (citing Dkt. 15 at ¶¶ 94 [only reciting that Richie "knew or should have known" of Fortier's duties and breaches], 47 and 49-55 [describing participation in licensing discussions and entity formation]). These allegations do not plausibly support Macroverse's contention that Richie knew of a "fiduciary duty owed" or of a breach of the same.

Similarly, Macroverse fails to allege facts showing substantial assistance by Richie. Macroverse simultaneously alleges that Richie assisted Fortier's misuse of funds while admitting that the funds were actually used to "acquire rare comics," i.e. as intended. *See* Dkt. 15 at ¶ 35. The alleged facts do not support any allegations of misappropriation, much less that Richie knew of those facts. There are also no allegations that support that Richie took any concrete step that substantially advanced a defined breach. *See* Oppo. at 11-12. Instead, Macroverse lumps four defendants together and labels their conduct a "scheme." *Id.* at 11; *see* also *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (group pleading insufficient). Thus, the Court should dismiss Count 5 as to Richie.

      2.    <u>Macroverse fails to plead that Archival contributed to any alleged breach.</u>

Macroverse's aiding and abetting theory as to Archival is even thinner. A corporation's "knowledge" exists only through its agents acting on its behalf. *See New*

1  *Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1305 (9th Cir. 1989). Macroverse does

2  not identify any act by any agent acting on behalf of Archival that reflects actual

3  knowledge of a fiduciary duty or a specific breach. Macroverse does not distinguish its

4  allegations against Fortier and Richie individually from Archival. Saying "knowledge is

5  alleged because Archival was started by Fortier and Richie," both of whom were in on

6  "the scheme" is not enough, without supporting allegations of an agency with the

7  corporation with respect to the allegations at issue. *See* Oppo. at p. 12.

8      Macroverse also fails to plausibly plead substantial assistance. Instead, Macroverse

9  contends that "Archival assisted with these [fiduciary] breaches insofar as it was formed

10 (by Fortier and Richie) for the purpose of diverting licensing opportunities to it" and that

11 "Marvel sent a licensing agreement to Archival." But the Counterclaim alleges only that

12 Fortier and Richie formed Authentic Editions, LLC, later renamed Archival, and that

13 Marvel addressed a draft license to that entity. *See* Dkt. 15 at ¶¶ 50–52, 95. Nothing else.

14 There are no allegations that Archival negotiated, executed, or enforced any license,

15 received or diverted any payment, or took any affirmative step that substantially

16 advanced a specific breach of fiduciary duty. Simply existing as an LLC and being the

17 addressee of a third party's draft agreement does not show "substantial assistance." The

18 Court should dismiss Count 5 as to Archival as well.

19      **D.    *Macroverse Did Not Adequately Plead Intentional Interference***

20          1.    <u>Macroverse fails to allege a concrete specific relationship.</u>

21      Macroverse contends it alleged "prospective licensing agreements with Marvel and

22 DC for Authentic Editions" and that this vague allegations suffices under Rules 9 and 12.

23 *See* Oppo. at 13. But Macroverse does not identify any actual economic relationship that

24 contained a real probability of future economic benefit. *See* Oppo. at 12-13 (citations

25 omitted) (alleging that Fortier and Richie "pursued licensing opportunities" and that

26 Marvel sent a draft agreement to Authentic Editions, LLC). In fact, there are no

27 allegations that Marvel or DC ever agreed on material terms with Macroverse, identified

28 Macroverse as the counterparty, or reached a point where a license was "reasonably

probable" rather than speculative. *See Korea Supply Co.*, 29 Cal. 4th at 1164 (requiring "an economic relationship between the plaintiff and some third party that contains the probability of future economic benefit," not "the more speculative expectation that a potentially beneficial relationship will arise."). Naming Marvel and DC as hoped-for licensors is not enough, neither is its allegation that the "complaint sounded in an interference with the world generically." *See* Oppo. at 12. Allegations of interference with a broad universe of "customers, potential customers, industry associates and the public" are insufficient as a matter of law. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311–12 (N.D. Cal. 1997) (dismissing intentional interference claim where plaintiff alleged only interference with a general pool of "customers, potential customers, industry associates and the public," rather than a specific economic relationship). Macroverse's intentional interference counterclaims should be dismissed for this reason alone.

2.    Macroverse fails to allege knowledge of a qualifying relationship.

The Counterclaims' allegations also fail to support that the Counter-Defendants either desired to interfere with the Macroverse's prospective economic advantage or knew that interference was certain or substantially certain to occur as a result of their actions. *See Korea Supply*, 29 Cal. 4th at 1154.Macroverse merely alleges that Fortier and Richie were involved in potential licensing discussions. *See* Dkt. 15 at ¶¶ 39, 47, 49–52, 104. But that is not enough. To support its intentional interference counterclaims, Macroverse needed to allege the Counter-Defendants had knowledge of the probability of future economic benefit to Macroverse. *See id*. Macroverse does not and cannot to do so.

3.    Macroverse fails to allege intentional interference.

Macroverse repeats that Counter-Defendants knew their conduct would likely interfere with Macroverse's relationships, by engaging in a scheme to direct licensing opportunities with Marvel and DC from Macroverse to their own secretly formed entity. *See* Oppo. at 13. That Counter-Defendants made false representations to Marvel and DC regarding their ownership of, and ability to exploit, the Authentic Editions line. *See id*.

However, Macroverse's Counterclaims do not identify what representations Counter-Defendants actually made that were purportedly false.

        4.   <u>Macroverse fails to allege disruption or proximate cause.</u>

To support an intentional interference claim in California, the alleged interference must be a substantial factor in causing a defined injury tied to an identifiable relationship, not simply a failed venture or regret over sunk costs. *See Mitchell*, 54 Cal. 3d at 1052; *Korea Supply*, 29 Cal. 4th at 1153. Macroverse does not make any such allegations.

        5.   <u>Macroverse fails to allege independently wrongful conduct.</u>

Macroverse fails to plead any independent wrongful conduct contributing to the alleged intentional interference. This is another reason why the Court should dismiss the intentional interference counterclaims.

## E.   *Macroverse Did Not Adequately Plead Negligent Interference*

Macroverse's negligent interference claim fails at the threshold because Macroverse failed to plead any duty of care owed. Under *J'Aire Corp. v. Gregory*, the duty of care for negligent interference is determined by six factors, including the extent to which the transaction was intended to affect the plaintiff, foreseeability, certainty of injury, closeness of the connection, moral blame, and policy of preventing future harm. 24 Cal. 3d 799, 804 (1979) (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650).

Here, Macroverse contends its Counterclaims establish a duty of care by alleging the licensing opportunities that Counter-Defendants allegedly interfered with were intended to benefit Macroverse, and that Counter-Defendants knew that such opportunities were intended for Macroverse (because they were hired to pursue them for Macroverse), making it foreseeable and reasonably certain that their conduct would harm Macroverse. Macroverse then contends it lost licensing opportunities with Marvel and DC based on Counter-Defendants' actions, and those allegedly usurped opportunities speak to the moral blame associated with Counter-Defendants' conduct. *See* Oppo. at 15-16. But none of these conclusory allegations has any meat on the bones—they are neither plausible nor well-pled. There is no explanation of how any particular licensing

opportunity by Fortier or Richie was "intended to affect" Macroverse. In reality, Macroverse's allegations of "lost licensing deals" are the kind of speculative business-risk loss *J'Aire* excludes. *See* 24 Cal. 3d at 808 (noting that recovery for negligent interference is limited to instances where the risk of harm is foreseeable and is closely connected with the defendant's conduct, where damages are not wholly speculative, and the injury is not part of the plaintiff's ordinary business risk).

For the foregoing reasons, the Court should dismiss Count 8 under Rule 12(b)(6).

### F.    *Macroverse Did Not Adequately Plead Its Trademark Claims*

#### 1.    Macroverse fails to sufficiently plead its Lanham Act claim.

To the extent this count invokes 15 U.S.C. §1114, it fails outright because such claims require a registered mark owned by the plaintiff. *See* 15 U.S. Code § 1114. Macroverse does not allege for the purported AUTHENTIC EDITIONS mark is registered. *See* Dkt. 15 at ¶¶ 126-27.

Under § 1125(a), Macroverse must also allege a protectable interest that depends on priority of use in commerce—not simply labels of "ownership" or "assignment." *See* 15 U.S. Code § 1125; *see* also *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). Macroverse fails to do so.

In its Opposition, Macroverse asserts it owns "protectable common law rights" that it acquired "in July 2024" through use and assignment. *See* Oppo. at 16. Macroverse also asserts continuous use of the mark "since at least July 2024." *See id*. These are conclusions, not factual allegations of first adoption, use or of a valid assignment with goodwill. In other words, Macroverse never alleges seniority of use over Fortier, or any valid pre-existing rights acquired through its own use in commerce in connection with specific goods or services, or assignment of the same through a contract or otherwise. *See* Dkt. 15 at ¶ 31 (describing allocating "ownership" of an "Authentic Edition" product line

and future IP, but not actual trademark use in commerce or transfer of any existing mark and goodwill); ¶ 37 (describing two "Authentic Editions" Kickstarter campaigns).

Post-*Twombly*/*Iqbal* decisions in this District require more than labels. *See*, e.g., *See Kythera*, 998 F. Supp. 2d 890, 897-902 (C.D. Cal. 2014) (applying the plausibility standard to Lanham Act and state trademark claims and rejecting "labels and conclusions" without factual support); *Metal Jeans*, 2015 U.S. Dist. LEXIS 80710, at *3-5 (C.D. Cal. June 18, 2015) (same). Macroverse's allegations fall short.

Macroverse's allegations of infringing "use" are equally conclusory. That is, Macroverse also alleges that Fortier, Richie and Archival are using a confusingly similar mark to promote, market, and sell facsimiles of comic books and related goods and services; and that this use is likely to create confusion. *See* Oppo. at 16. Macroverse does not identify a single product, platform, listing, or time period where Counter-Defendants use AUTHENTIC EDITIONS as a mark (at a time when Macroverse purportedly owned the mark) or specify who did what. Such group allegation is a formulaic recitation of elements, not a plausible "use in commerce" allegation. *See Swartz*, 476 F.3d at 764-65.

2.    Macroverse fails to sufficiently plead common law infringement.

Macroverse argues that its common-law trademark claim survives because it need only allege "prior use" and "likelihood of confusion," citing *Wood v. Apodaca*. *See* Oppo. at p. 16. However, *Wood* is a pre-*Twombly*/*Iqbal* decision, which did not hold that a party can survive dismissal by reciting elements without facts. *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 944-45 (N.D. Cal. 2005).

Courts apply the same plausibility standard to Lanham Act and California common-law claims and analyze them together. *See*, e.g., *Kythera*, 998 F. Supp. 2d at 897-902; *Metal Jeans*, 2015 U.S. Dist. LEXIS 80710, at *3-5. California law makes it clear that "prior use" requires factual allegations that the plaintiff, or its predecessor, first adopted and used the mark. *See Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp.*, 2009 WL 5108579, at *2 (N.D. Cal. Dec. 18, 2009); *Shake 'N Buns Cal. Burger, LLC v. Cal. Burger Express, LLC*, 1:23-cv-01711, at *10–11 (E.D. Cal. June 5, 2024).

Macroverse pleads none of these elements. Macroverse does not allege that it first adopted and used AUTHENTIC EDITIONS. In fact, its narrative makes Fortier the originator of the concept. It simply asserts that it "acquired" rights in July 2024 through "use" and "assignment" and then recites that its rights extend "throughout the United States" or "worldwide." *See* Dkt. 15 at ¶¶ 138–40. Under Ninth Circuit law, common law trademark rights are territorial. They extend only to the geographic areas where the mark is known and recognized and where the plaintiff has achieved sufficient market penetration. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) (common law rights extend only to territory where mark is known and recognized); *see also Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014) (requiring proof of market penetration in particular geographic areas). Nationwide or worldwide rights are not presumed for an unregistered mark and generally require either a federal registration or a showing that the mark is "famous" for dilution purposes, which Macroverse does not allege here. Bare assertions of "worldwide" or "throughout the United States" rights are therefore not plausible on their face.

Macroverse's allegations of "use" by defendants are the same conclusory group statements discussed above. It attributes "use" to undifferentiated "Counter Defendants" and does not identify a single specific product, platform, listing, time period, or act of use in commerce by any particular defendant. *See* Dkt. 15 at ¶¶ 132, 143. Under *Twombly*, *Iqbal*, and *Swartz*, that kind of formulaic, collective pleading cannot sustain a claim.

Because Macroverse has not plausibly alleged a protectable common-law interest or infringement, the Court should dismiss Count 11.

### G.    *Macroverse's Fraud Claims Do Not Satisfy Rule 9(b)*

Macroverse's fraud and concealment theories do not satisfy Rule 9(b). Macroverse does not identify any specific misrepresentation or omission to a particular defendant, time, place, or medium. They rely on generalized "representations" and "schemes" and then plug in a global $1,800,000 number as the amount of the purported fraud.

Rule 9(b) requires a plaintiff to plead the who, what, when, where, and how of the

alleged misconduct. It is not enough to give "neutral facts" about a transaction. The complaint must explain what was false or misleading about a statement and why. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). In *Kearns v. Ford Motor Co.*, the Ninth Circuit held that Rule 9(b) is not satisfied where a plaintiff does not allege which specific representations he relied on, when he saw them, or what they "specifically stated." 567 F.3d 1120, 1126 (9th Cir. 2009).

Here, Macroverse alleges only that Fortier made "representations" about using funds to secure licenses, fund production, build equipment, hire staff, and acquire comics. *See* Dkt. 15 at ¶¶ 35(a), 35(c), 40–44, 48, 53, 55, 82(b). Macroverse's Opposition does not identify allegations as to when any statement was made, in what form statements were made, which defendant said what, or how any statement was false when made. It does not connect any specific transfer of money to any specific misrepresentation. That is not enough under Ninth Circuit precedent in *Kearns* and *Vess*. Macroverse also pleads fraud by group. It attributes supposed "representations," "concealment," and "schemes" to "Fortier and Richie" or "Counter-Defendants" as a whole. *See* Dkt. 15 at ¶¶ 82, 85, 89, 92–95. Rule 9(b) requires that each defendant be told "what misrepresentations are attributable to them and which are not." *Swartz*, 476 F.3d at 764–65. Macroverse's Counterclaims fail to do so.

Because the Counterclaims fail to recite any well-pleaded misrepresentations, Macroverse's fraud claims necessarily fail. In particular, Macroverse's allegations relating to scienter, intent, and reliance are wholly conclusory. Macroverse asserts that it "reasonably relied" on undefined "representations" and that Fortier and Richie acted with "malice, oppression, and fraud." *See* Dkt. 15 at ¶¶ 82, 85, 89, 92–93. However, Macroverse fails to allege facts showing any defendant knew a specific statement was false when made or that Macroverse justifiably relied on that statement.

Macroverse's harm allegations are defective for the same reasons. Macroverse alleges that it paid approximately $1,800,000, then labels the funds "misused" or "embezzled." *See* Dkt. 15 at ¶¶ 35(a), 35(c), 40–44, 48, 53, 55, 82(b), 83–84, 90–91. But

the same paragraphs relied on for these allegations confirm that the funds were actually used to build equipment, obtain books, and staff production for the Authentic Editions project. *See id.*; *see also* Dkt. 15, Ex. B, at A.1. A failed/incomplete venture is not fraud.

Macroverse also insufficiently pleads its concealment theory. Nondisclosure is actionable only in four limited circumstances, including where there is a fiduciary relationship, exclusive knowledge, active concealment, or partial representations that suppress material facts. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). Macroverse relies primarily on its fiduciary theory and on allegations that Fortier and Richie used different email addresses and formed an LLC. *See* Dkt. 15 at ¶¶ 47, 49–52, 81–82, 86–89, 92–95. As explained in Section B, there was no fiduciary relationship. And Macroverse does not allege any specific act of "active concealment" or any particular partial representation that created a duty to speak, with the detail Rule 9(b) requires.

Because Macroverse does not allege who said what, when, where, or how those statements were false and relied on, its fraud and concealment claims are deficient and should be dismissed.

### H.    *Amendment is Futile*

A court can dismiss claims without granting leave to amend if amending the complaint would be futile. *See Vasquez v. L.A. County*, 487 F.3d 1246, 1258 (9th Cir. 2007); *see* also *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("[A] district court need not grant leave to amend where the amendment . . . is futile."). Here, Macroverse failed to identify any additional facts it would plead if its claims were dismissed without prejudice and did not attach a proposed amended pleading rectifying the deficiencies in its Counterclaims. Thus, leave to amend is not appropriate and the claims should be dismissed with prejudice.

## III.    <u>CONCLUSION</u>

For the reasons stated above, the Court should grant Counter-Defendants' Motion and dismiss Counts 4, 5, 7, 8, and 10 through 14. Dismissal should be with prejudice where the defects are legal and cannot be cured by repleading.

Dated:  November 28. 2025

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

By: _____
/s/ Jesse A. Salen
JESSE A. SALEN

Attorneys for Plaintiff/Counter-Defendant ADAM
FORTIER d/b/a PORTMANTEAU PUBLISHING;
Counter-Defendants ROSS RICHIE, and
ARCHIVAL COMICS LLC