1   BUCHALTER
    A Professional Corporation
2   AARON M. LEVINE (SBN: 299260)
    1000 Wilshire Boulevard, Suite 1500
3   Los Angeles, CA 90017-1730
    Telephone: 213.891.0700
4   Email: alevine@buchalter.com

5   BUCHALTER
    A Professional Corporation
6   MATTHEW L. SEROR (SBN: 235043)
    18400 Von Karman Avenue, Suite 800
7   Irvine, CA 92612-0514
    Telephone: 949.760.1121
8   Email: mseror@buchalter.com

9   Attorneys for Defendant and Counterclaimant,
    MACROVERSE MEDIA, INC.

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  ADAM FORTIER<br>d/b/a PORTMANTEAU PUBLISHING,<br><br>13      Plaintiff,<br><br>14<br><br>15   v.<br><br>16  MACROVERSE MEDIA, INC.,<br><br>17      Defendant, | Case No. 2:25-cv-07573-CV-SK<br><br>**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS FOR:**<br><br>1. **Declaratory Judgment**<br>2. **Breach of Contract**<br>3. **Breach of Implied-in-Fact Contract**<br>4. **Breach of Fiduciary Duty**<br>5. **Aiding and Abetting Breach of Fiduciary Duty**<br>6. **Conversion**<br>7. **Intentional Interference with Prospective Economic Advantage**<br>8. **Negligent Interference with Prospective Economic Advantage** |

18
19  MACROVERSE MEDIA, INC.,

20       Counterclaimants,

21       v.

22  ADAM FORTIER d/b/a
    PORTMANTEAU PUBLISHING,
23  ARCHIVAL COMICS LLC f/k/a
    AUTHENTIC EDITIONS, LLC
24  HARLEY YEE, ROSS RICHIE,
    DANIEL SAEVA and DOES 1-10,
25  inclusive,

26       Counter-defendants.

27

28

9. **Unjust Enrichment**
10. **Trademark Infringement**
11. **Common Law Trademark Infringement**
12. **Intentional Misrepresentation**
13. **Negligent Misrepresentation**
14. **Concealment**
15. **Unfair Competition (Bus. & Prof. Code § 17200)**

**DEMAND FOR JURY TRIAL**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MACROVERSE MEDIA, INC.'S                    Case No. 2:25-cv-07573-CV-SK
COUNTERCLAIMS
BUCHALTER 94067008v9

Defendant and Counterclaimant Macroverse Media, Inc. ("**Macroverse**" or "**Counterclaimant**") by and through its undersigned counsel, complains and alleges against Plaintiff and Counter-Defendant Adam Fortier d/b/a Portmanteau Publishing ("**Fortier**") and Counter-Defendants Archival Comics LLC f/k/a Authentic Editions, LLC ("**Archival**"), Ross Richie ("**Richie**"), Daniel Saeva ("**Saeva**"), and Harley Yee ("**Yee**" and collectively referred to with Fortier, Archival, Richie, and Saeva as "**Counter-Defendants**") as follows:

## THE AUTHENTIC EDITIONS PRODUCT LINE AND OVERVIEW OF THE PARTIES' DISPUTE

1.      The instant dispute centered on a multi-pronged fraud carried out against Macroverse by Fortier, and eventually others.  The premise of the fraud was simple. Fortier enticed Macroverse to invest heavily in what at the time was a new and untested product – the production and sale of classic comic book replicas recreated to original specifications.  After the first hints of success were realized based on Macroverse's significant monetary investments, Fortier cut Macroverse out, secretly formed a new company with the intent of usurping Macroverse's business opportunities, and claimed that the parties' agreement (which granted Macroverse ownership of the product line and pursuant to which Macroverse had made its investment) was unenforceable.  Macroverse brings this Counterclaim to recover the damages it has sustained because of Fortier and the other Counter-Defendants.

2.      Fortier's scheme began in 2023, when Fortier approached Macroverse with a potential business opportunity known as "Authentic Editions."  The opportunity was pitched as a collaboration between Fortier and Macroverse to develop, and then launch, the Authentic Editions product line.

3.      The Authentic Editions concept involved the production and sale of rare and original comic book replicas offered at affordable prices.  What was unique about the concept was that Authentic Editions replicas were created to be virtually indistinguishable from the original published versions, down to the smallest detail.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

Each replica would be printed on paper and cover stock that faithfully mirrored the originals, using period-appropriate materials and techniques. Authentic Editions offered comic book fans the opportunity to own historical comic books that were previously reserved for only high-end collectors.

4.      When Macroverse showed interest in the Authentic Editions concept, Fortier said he believed that Macroverse was the right company to bring Authentic Editions to life.

5.      According to Fortier, the success of the Authentic Editions concept required five interdependent components. First, the acquisition of "Source Books" - that is, original printings of classic comics, often rare and expensive - sufficient in quality and quantity to serve as the basis for faithful reproductions. Second, specialized and, where necessary, custom scanning equipment together with the technical expertise to capture archival-/museum-quality scans suitable for production. Third, a skilled technical and creative restoration team capable of reconstructing and cleaning historical pages into production-ready digital files faithful to the originals. Fourth, specialized materials and calibrated print processes - including appropriate presses, papers, inks, and finishing techniques - required to manufacture physical replicas consistent with period specifications. And fifth, the necessary licenses from the major rights holders, together with coordinated marketing and direct-to-consumer sales through Macroverse's platform to reach the target audience. Fortier further represented that the foregoing required a significant upfront capital investment to acquire Source Books, procure and configure equipment, staff and manage the restoration workflow, and fund pre-press, print production, and initial inventory—an investment he asserted would be justified by strong market demand for authentic, high-fidelity facsimiles and the corresponding revenue opportunity.

6.      While Fortier represented that he had the technical skills and experience to fully produce the Authentic Editions books (later discovered by Macroverse to be

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**                    **Case No. 2:25-cv-07573-CV-SK**

BUCHALTER 94067008v9

a lie), and the industry contacts to obtain the necessary licenses to bring the Authentic Editions line to fruition, what he did not have was the necessary capital to get the concept off the ground. Enter Macroverse.

7.     Macroverse initially retained Fortier as a consultant pursuant to a written consulting agreement dated May 2023. As the engagement progressed, Macroverse executed a licensing agreement with Archie Comics to produce Authentic Editions of classic Archie comics. In July 2024, Macroverse and Fortier entered into a further written agreement specifically addressing the Authentic Editions product line, which confirmed, among other things, that Macroverse would own all right, title, and interest in the Authentic Editions line and that Fortier would document, disclose, and deliver to Macroverse all associated technology and work product.

8.     After executing the July 2024 agreement, Macroverse promptly began fulfilling its obligations to fund the development of the Authentic Editions concept. Among other things, Macroverse paid no less than $1,800,000.00 for licensing fees, production costs, custom equipment, and to acquire rare comic books as source material.  At Fortier's request, Macroverse also retained third parties to assist in the Authentic Editions line, including Counter-Defendants Ross Richie and Danny Saeva.

9.     Initially, Fortier appeared to perform as promised.  He held himself out publicly and privately as Macroverse's "Head of Publishing," participated in fundraising campaigns, and pursued licensing opportunities for the Authentic Editions line.  Notably, at no time did Fortier claim that the July 2024 Agreement was not binding on him.  To the contrary, at all times Fortier treated the July 2024 Agreement for what it was, a fully binding agreement between the parties.

10.    Unfortunately, by late 2024 the cracks began to show in Fortier's facade. He failed to assemble a production team or deliver the custom-built production equipment that he claimed was necessary to advance the Authentic Editions business (despite collecting funds from Macroverse for this purpose).  He also missed every

deadline with respect to his delivery of work product.  In January 2025, Fortier's shortcomings required Macroverse to begin assuming Fortier's production related responsibilities, which included completely re-developing the restoration methodology, as well as hiring and training an internal team to complete the production work needed to produce the Authentic Editions replicas.

11.     More troubling, Fortier undertook an intentional plan to usurp the Authentic Editions business from Macroverse. While continuing to hold himself out as Macroverse's Head of Publishing and serving as Macroverse's point of contact with licensors, Fortier took existing, ongoing Macroverse negotiations with Marvel and DC Comics and attempted to convert those opportunities to his own competing vehicle. Even as he reported to Macroverse that these opportunities were "in limbo," he formed a new rival entity named *Authentic Editions, LLC* (which was later rebranded *Archival Comics LLC*), used undisclosed communications associated with that entity, and diverted the same negotiations and business opportunities away from Macroverse for his personal benefit.

12.     Macroverse brings the instant Counterclaim to protect its substantial investment in Authentic Editions and to recover damages caused by Fortier and those acting in concert with him or under his direction.

## THE PARTIES

13.     Macroverse is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Los Angeles County, California.

14.     Upon information and belief, Fortier is an individual and a citizen of Canada, residing in Pickering, Ontario, Canada.

15.     Upon information and belief, Archival is a limited liability company organized under the laws of the State of California, with its principal place of business in Los Angeles County.  Archival was originally registered as Authentic Editions, LLC but was renamed as Archival Comics LLC in August 2025. Upon

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

further information and belief, Fortier and Richie are the founders of and the Members of Archival.

16.    Upon information and belief, Richie is an individual and resident of the state of California, with his primary residence in Los Angeles County.

17.    Upon information and belief, Saeva is an individual and resident of the state of California, with his primary residence in Los Angeles County.

18.    Upon information and belief, Yee is an individual and resident of the state of Michigan who represents himself as being one of the industry's leading sellers of vintage comic books.   Upon further information and belief, Yee regularly conducts business within California by, among other things, selling and purchasing products within California, and conducting business at industry tradeshows throughout California.

19.    Macroverse is ignorant of the true names and capacities of the Counter-Defendants sued herein as DOES 1-10 and therefore sues these Counter-Defendants by such fictitious names.

20.    Upon information and belief, at all times relevant hereto, each of the Counter-Defendants was the agent, employee, alter ego, affiliate, officer, director, manager, and/or principal of the other Counter-Defendants and was at all times relevant hereto acting within the course and scope of such agency relationship or affiliation.   Upon further information and belief, each of the Counter-Defendants actively participated in, or subsequently ratified each of the acts and conduct alleged herein with full knowledge of all the facts and circumstances attendant thereto, including the rights of Macroverse and the damage to be sustained by Macroverse as a result of the acts and conduct alleged herein.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act); 15 U.S.C. §§ 1051 et seq. (the Lanham Act); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1367 (supplemental jurisdiction).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

Alternatively, this Court has jurisdiction over this matter pursuant to an agreement executed between Macroverse and Fortier.

22.    This Court has personal jurisdiction over Fortier insofar as he filed this action in this Court.  This Court has personal jurisdiction over Counter-Defendants Yee, Richie, and Saeva insofar as each has continuous and systematic ties to the state of California and regularly conducts business within California.  This Court has personal jurisdiction over Counter-Defendant Archival insofar as its principal place of business is in Los Angeles County, California.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § § 1391(b) and (c) in that Counter-Defendants have principal places of business in this district, regularly conduct business in this district, and a substantial part of the acts or omissions giving rise to the claims asserted herein occurred or had effects in this district.

## STATEMENT OF FACTS

### Macroverse Hires Adam Fortier to Secure and Develop Business Opportunities Including "Authentic Editions"

24.    Macroverse is a multi-format entertainment company founded by Adam Martin, Eben Matthews and Ricci Rukavina.  With over 75 years of combined entertainment and media experience, Macroverse's focus is on story-driven content designed to connect with audiences and fans through innovative, platform agnostic delivery.

25.    In or about early 2023, Macroverse's CEO, Eben Matthews ("**Matthews**"), met Fortier, who presented himself as a seasoned publishing consultant with longstanding relationships with major comic-book publishers and a record of securing licenses. Fortier further represented that he had conceived, produced, and published top-tier specialty lines - specifically citing "Cinestories" - for which he claimed to have originated the concept, developed the production methodology, overseen execution end-to-end, and generated millions in revenue. He offered that model as a direct analogue for Macroverse, asserting a proven ability to

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

take a niche product from concept through production to successful monetization. Based on these representations, Macroverse retained Fortier as a paid consultant pursuant to a written Memorandum of Understanding dated May 1, 2023 (the "**2023 Agreement**").

26.    Pursuant to the 2023 Agreement, Macroverse agreed to retain Fortier for a three-month trial engagement at an agreed upon fee of $15,000 per month, plus the opportunity to earn certain performance-based bonuses.  In exchange, Fortier agreed to, among other things, (i) facilitate meetings between Macroverse and large comic book publishers for the publication of Macroverse's IP library and Macroverse licensed products; (ii) facilitate the publication of select Macroverse properties; and (iii) introduce additional projects and existing comics to Macroverse for distribution on the Macroverse app.

27.    After he was retained as a paid consultant, Fortier presented the idea of Authentic Editions – a product line centered on high-fidelity replicas of classic comic books faithful to period finishes and specifications – to Macroverse. Upon information and belief, before engaging with Macroverse, Fortier had not commercially released products under the Authentic Editions name and had not secured licenses for that line. He did, however, present limited pre-production print samples purporting to demonstrate the processes and materials, and represented that he had (or could configure) the necessary technology and equipment to produce such replicas at scale. He pitched Macroverse on the launch of Authentic Editions by targeting top-tier comic intellectual property, preparing business plans and projections to be executed, owned and overseen with Macroverse's funding and platform support. Macroverse saw "Authentic Editions" as a way to advance its existing vision of integrating its digital platform with collectible physical products, creating a differentiated position in the comics and collectibles industry.  Fortier represented that he could deliver a turnkey production and licensing solution

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**

**Case No. 2:25-cv-07573-CV-SK**

BUCHALTER 94067008v9

precisely suited to that goal.  He also represented that Macroverse would own the line and underlying methods to produce Authentic Editions.

28.    As a result of these representations, the samples presented, and Fortier's claimed publishing track record, the focus of Macroverse's relationship with Fortier, and the resources it was applying towards the same, shifted to Authentic Editions.

29.    Initially, the parties' working relationship was productive.  Fortier assisted Macroverse in raising capital from outside investors to produce Authentic Editions products, which earned Fortier additional compensation pursuant to the 2023 Agreement.  Fortier also helped negotiate and secure a licensing deal with Archie Comics for Macroverse to produce "Authentic Editions" reprints of classic Archie titles.  He undertook these efforts referring to himself both publicly and privately as a member of Macroverse, making it clear to all that he was working on the company's behalf.

**Fortier Formally Extends His Relationship with Macroverse and Agrees to Give Macroverse All Rights Associated with Authentic Editions**

30.    In light of their initial success together, Macroverse and Fortier extended their relationship with one another through a binding written Memorandum of Understanding (the "MOU") executed on July 17, 2024.  Attached hereto as **Exhibit 1** is a true and correct copy of the MOU.

31.    The MOU contained the following binding terms:

a.    Fortier agreed to act as a consultant for Macroverse engaged to "(a) create, produce, print, market, and distribute replicas of classic comic books under Macroverse's Authentic Edition product line to include comic books, books, magazines, consumer products, and any other media formats, and (b) develop and create all technologies required for the scanning of original classic comic books and other materials and the production and printing of replicas for the Authentic Edition product line;"

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

Case No. 2:25-cv-07573-CV-SK

b.    Fortier agreed to perform the aforementioned duties, and others, as Macroverse's "Head of Publishing;

c.    Macroverse would be the "exclusive owner and producer of all right, title and interest in the Authentic Edition product line and shall be considered the creator and owner of the technology, processes, and methods used to create the Authentic Edition product line."

d.    Fortier agreed to "document, disclose, and deliver all technology, processes, and methods needed to create Authentic Editions to Macroverse," who he acknowledged would be the sole owner of these elements;

e.    Fortier was obligated to assign all intellectual property rights to Macroverse for any work product created while performing services for Macroverse, with the understanding that Macroverse would be the sole owner of the same and the only party permitted to exploit these assets.

f.    Fortier agreed that he would not "develop, create, produce, print or market any technology, material or content that is in any way competitive with the contemplated Authentic Edition product line or the technologies to be developed by [Fortier]."

32.    In return, Macroverse agreed, among other things, to fund all costs (licensing, rare book acquisition, scanning/imaging the source materials, restoration production, delivery of print-ready files, equipment, and otherwise) associated with the production of Authentic Editions products, and to pay all production fees submitted by Fortier based on his proposed fee structure ($100 per page for all deliverables).

33.    Macroverse also agreed to compensate Fortier for his performance. The agreed upon compensation structure included profit sharing tied to the financial success of the Authentic Editions line and stock compensation contingent on Fortier's performance of services exclusively for Macroverse's benefit.

10

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**

Case No. 2:25-cv-07573-CV-SK

BUCHALTER 94067008v9

**The Parties Adhered to the Terms of the MOU**

34.     At all times following the execution of the MOU, the parties consistently treated it as a fully enforceable and binding agreement.

35.     In conformity with its obligations under the MOU, Macroverse provided significant financial resources to support and finance the development of Authentic Editions.  For example:

a.     Upon execution of the MOU, Macroverse immediately paid Fortier $215,000 to build professional-grade custom equipment and acquire the first batch of rare books via Yee that Fortier claimed was necessary to produce Authentic Editions.  Macroverse also paid production costs requested by Fortier, including costs associated with the art restoration team that Fortier claimed to have assembled.

b.     Macroverse hired personnel at Fortier's request, including Ross Richie ("**Richie**"), the founder of BOOM! Studios, whom Macroverse retained to act as a crowdfunding consultant and help plan Kickstarter campaigns.  Richie and Macroverse entered into a one-year agreement pursuant to which Macroverse paid Richie $10,000 per month in exchange for strategy and advice.  Macroverse also hired Danny Saeva ("**Saeva**"), an experienced licensing agent, to pursue licensing deals with large publishers like Marvel and DC Comics.  Macroverse paid Saeva a monthly consulting fee of $10,000 pursuant to a written agreement that was renewed by Macroverse.

c.     Macroverse paid more than $900,000 to acquire certain rare comics.  These comics were acquired using counter-defendant Yee, who Fortier represented was a longtime trusted associate and an independent, well-regarded dealer who, like an art dealer, regularly procured rare comic books for collectors.  At Fortier's direction, Macroverse provided funds directly to counter-defendant Yee so that he could create a "pool"

11

of source material for Authentic Editions (hereinafter, the "**Comics Pool**"). Per Fortier's representations, Yee would use the money paid by Macroverse to secure rare and valuable comics that would be used as the source material to generate the Authentic Editions replicas. Once the scanning of each book was complete, the comic books would be returned to Yee so that he could sell them and utilize the proceeds from the sale to acquire additional source materials. At Fortier's insistence, all interactions and correspondence between Yee and Macroverse were sent through Fortier and all invoices for Yee's services were prepared by Fortier, or someone acting on his behalf, and delivered to Macroverse by Fortier. Further, Fortier never provided any formal accounting of the books or funds held by Yee. When asked to do so he reassured Macroverse that Yee had the funds and books, and that everything was "under control."

36. In addition to the foregoing expenditures, and at Fortier's request, Macroverse also advanced significant funds to cover certain personal obligations of Fortier. Macroverse provided these funds in an effort to help Fortier focus on his duties and obligations to Macroverse, and Fortier accepted these funds as a sign of his commitment to Macroverse.

37. Macroverse's commitment to and support of Fortier yielded results as Fortier helped raise capital and develop business opportunities for the Authentic Editions concept. For example, Fortier helped with two successful "Authentic Editions" Kickstarter campaigns on Macroverse's behalf. First, in or about October 2024, Macroverse launched its first Authentic Editions Kickstarter campaign entitled the *Pre-Code Horror Collection* (hereinafter, the "**Pre-Code Campaign**"), consisting of popular comic books that were previously banned for their depictions of violence, terror, and moral ambiguity. Fortier, with assistance from Richie in his role as Macroverse's paid consultant, directed and oversaw the execution of the Pre-

12

**BUCHALTER**
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

Code Campaign, which successfully raised more than $450,000 in total from backers. Then, in or around December 2024, Macroverse launched an "Authentic Editions" Kickstarter campaign focused on Golden Age Archie Comics issues (the "**Archie Comics Campaign**"). Fortier, with assistance from Richie, assumed responsibility for planning the campaign strategy executed by Macroverse. The Archie Comics Campaign raised over $125,000 from backers. At all relevant times hereto, Fortier publicly represented himself, through media and otherwise, in connection with his efforts for the Pre-Code Campaign and the Archie Comics Campaign as Macroverse's Head of Publishing.

38.    Both Kickstarter campaigns resulted in Macroverse becoming obligated to deliver certain comic book replicas to the individuals who backed the campaigns in a timely manner. Fortier was fully aware of the obligations imposed by the campaigns and deadlines – which he himself set.

39.    Fortier, with assistance from Richie and Saeva, also pursued licensing deals on Macroverse's behalf with Marvel and DC Comics – the two largest and most successful publishers in the industry. Fortier publicly represented himself during these negotiations as Macroverse's Head of Publishing. Moreover, he ensured that Macroverse's leadership team was involved in key strategy decisions regarding the pursuit of licenses and other business opportunities with these publishers, affirming that the opportunities were being pursued on behalf of Macroverse.

### Fortier's Failures Come to Light

40.    Although the parties initially worked well together, beginning in late 2024, Fortier revealed himself to be far less capable than he had represented. In October 2024, Fortier admitted that he was spread thin because he spent nights working on projects unrelated to Macroverse. This came as a surprise to Macroverse given Fortier's prior representations that he was solely focused on his role as Macroverse's Head of Publishing.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

41.     Fortier also continually failed to meet agreed upon deadlines.   For example, in connection with the Pre-Code Campaign, Fortier expressly agreed to a production schedule wherein he would deliver 3,000 print-ready pages of Pre-Code Horror replicas by the end of December 2024, with completed books ready for shipment beginning in January 2025 (these were the replicas due to individuals who backed the Kickstarter campaign).   Fortier failed to deliver the promised files by the end of December 2024, making it clear that the January 2025 deadline was also at risk.   Even though Fortier had previously represented that he had a production and restoration team working on this deadline, Macroverse was required to step in to assist with production in an effort to salvage this project.

42.     Upon doing so, Macroverse learned that Fortier was nowhere close to delivering the 3,000 pages he promised to have ready by the end of December. Instead, Fortier had only completed partial scans, and many of those scans were of poor or unsatisfactory quality and required reshoots.   Macroverse also discovered that the production team that Fortier claimed to be working with – and for which Macroverse was paying – did not exist.   Instead, Fortier had delegated all production responsibilities to Kim Stahl, who, upon information and belief, lacked previous production experience and had previously served as Fortier's nanny and assistant. Macroverse's team worked tirelessly to troubleshoot and correct production issues with Ms. Stahl, while Fortier contributed little, if anything, to the process.

43.     The Archie Comics Campaign was plagued by similar issues.   In connection with this campaign, Fortier expressly agreed to a production schedule wherein he would deliver 2,000 print-ready files of Archie Comics replicas by the end of January 2025, with completed books prepared for shipment by February 2025 (again, these were for the individuals backing the Kickstarter campaign).   Once again, Fortier missed these deadlines, forcing Macroverse to again step in and assist with production.   Shockingly, rather than assist with completion of the project given the already missed deadlines, Fortier took his family and Ms. Stahl (the only individual

14

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MACROVERSE MEDIA, INC.'S
COUNTERCLAIMS
BUCHALTER 94067008v9

Case No. 2:25-cv-07573-CV-SK

Fortier had delegated production responsibilities to) on a multi-week international vacation in February 2025, the same month that Fortier had promised to deliver books by. While on vacation, Ms. Stahl delivered approximately 10 books to Macroverse, however each book was of subpar quality requiring reshoots and resulting in no usable production files.

44.    While undertaking Fortier's production responsibilities, Macroverse also discovered that the professional-grade custom production equipment that Macroverse gave Fortier more than $100,000 to build was essentially non-existent. Rather than being professional quality, the production equipment built by Fortier consisted of two pieces of Styrofoam held together by tape, and a camera that was completely unsuitable for the Authentic Editions project. The low quality of the equipment made it clear that Fortier had not used the $215,000 that he received from Macroverse for its intended purpose.

45.    As a result, multiple reshoots were required for out of focus pages, and Macroverse had to devise new production methods to correct the quality issues that plagued Fortier's production efforts. In doing so, Macroverse, without assistance from Fortier, created the production and restoration methodology utilized for the Authentic Editions project.

46.    Even with Macroverse's substantial assistance, Fortier continued to miss (and unilaterally extended) agreed-upon production deadlines. By or around April 2025, Fortier had failed to deliver a single print-ready book for either the Pre-Code Campaign or the Archie Comics Campaign, thereby breaching his obligations to Macroverse. When pressed on the issue, Fortier offered only excuses and vague, incomplete information intended to conceal his nonperformance and deflect Macroverse's legitimate concerns.

47.    While production faltered, Fortier also concealed the nature and extent of the licensing discussions with Marvel and DC Comics that he and Saeva were engaged in at Macroverse's direction. Whereas Fortier had initially involved

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**    **Case No. 2:25-cv-07573-CV-SK**

BUCHALTER 94067008v9

Macroverse's management in these discussions, by April 2025, Fortier removed Macroverse from these discussions. Instead, after excluding Macroverse from these discussions, Fortier, Richie and Saeva held undisclosed meetings with Marvel and DC Comics. When Macroverse requested details or updates regarding the status of discussions, Fortier falsely represented that all discussions with Marvel and DC Comics were "in limbo" with no new information to report, or that he was waiting for items from the publishers.

48. Fortier also failed and refused to provide Macroverse with documentation to account for more than $1,500,000 that Macroverse had advanced to Fortier or others, including Yee, at Fortier's direction.

49. Unbeknownst to Macroverse, at this same time, Fortier was conspiring to divert the Authentic Editions concept and business opportunities from Macroverse to himself. In fact, contrary to Fortier's representations to Macroverse that the Marvel and DC Comics licensing deals were "in limbo," licensing discussions with these publishers were progressing towards finalized deals. These details were never shared with Macroverse, who still believed, per Fortier's representations, that there were no developments on these deals.    In fact, Macroverse only learned of these developments when its CEO received what appeared to be misdirected communications.

50. As revealed for the first time when misdirected communications were received by Macroverse, Fortier, Richie and Saeva had been communicating with Marvel and DC Comics for some time about potential licensing deals, and had even received a draft agreement containing deal terms that were never previously shared with or agreed to by Macroverse. Moreover, Macroverse discovered that Fortier had stopped using his "@macroverse.com" email address when communicating with these publishers. Instead, he, Richie and Saeva were communicating with Marvel and DC Comics through previously undisclosed "@authentic-editions.com" email addresses. Macroverse is informed and believes, and on that basis alleges, that the

16

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**

Case No. 2:25-cv-07573-CV-SK

BUCHALTER 94067008v9

use of the undisclosed "@authentic-editions.com" email addresses was done to conceal these communications from Macroverse.

51.     Further investigation by Macroverse revealed that on or around May 28, 2025, Fortier and Richie had secretly formed and then registered *Authentic Editions LLC* with the California Secretary of State without notifying or obtaining approval from Macroverse.  Upon information and belief, *Authentic Editions, LLC* was formed so that Fortier, Richie and Saeva could direct business opportunities with Marvel, DC Comics, and other publishers directly to this new entity, instead of Macroverse, thereby diverting the business opportunities from Macroverse to the newly formed entity.

52.     In June 2025, Macroverse learned that Marvel had transmitted a licensing agreement to *Authentic Editions, LLC* instead of Macroverse.  Upon information and belief, this licensing agreement was transmitted to *Authentic Editions, LLC* at Fortier's direction.  Thereafter, Macroverse initiated a call with Fortier on June 17, 2025 to address Fortier's undisclosed negotiations with Marvel and DC Comics.  During the call, Matthews unequivocally asked Fortier for an update on discussions with Marvel.  Surprised with the question, Fortier became confrontational before ultimately admitting what Macroverse had suspected: Fortier was engaged in direct communications with both Marvel and DC Comics without Macroverse's involvement.  Fortier further confirmed that he had no intention of including Macroverse in these opportunities, expressly disavowed the rights and obligations established under the MOU, and claimed sole ownership of Authentic Editions and its related technology.

53.     This call signaled the end of Fortier's relationship with Macroverse.  In the end, Fortier never completed any of the books he promised to deliver despite the fact that Macroverse paid him, and others at his direction, more than $1,800,000.  Further, what little work product he generated needed extensive reshoots and to be corrected by Macroverse's internal production team.  Fortier also failed to deliver to

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**    **Case No. 2:25-cv-07573-CV-SK**
BUCHALTER 94067008v9

Macroverse any of the books that were acquired for the Comics Pool, including books that are required to fulfill Macroverse's obligations under the Pre-Code Campaign and Archie Comics Campaign, or the funds that remained and/or were earned from selling books.

54.     On or around June 17, 2025, Richie also terminated his engagement with Macroverse effective immediately.  He did so notwithstanding the fact that he had multiple unfinished obligations due under the terms of his written consulting agreement.  Richie failed to provide Macroverse with a status report for these projects, and further failed to transfer his work product despite Macroverse's requests that he do so.  Upon information and belief, Richie terminated his agreement with Macroverse to focus on his and Fortier's plot to divert business opportunities from Macroverse to *Authentic Editions, LLC.*

55.     After their split, Macroverse acted quickly to notify licensors and other business partners that Fortier was no longer affiliated with Macroverse or authorized to represent "Authentic Editions" on Macroverse's behalf.  Nevertheless the damage was already done.  Kickstarter backers became increasingly impatient and frustrated, resulting in thousands of dollars in refunds and widespread negative sentiment towards Macroverse. These failures, directly attributable to Fortier's nonperformance, caused Macroverse both measurable financial losses and substantial injury to its goodwill and reputation in the industry. Licensors also put future "Authentic Editions" opportunities on pause, causing Macroverse to lose significant future profits.  Moreover, the more than $900,000 that Macroverse spent to build the Comics Pool is completely unaccounted for, with Fortier and/or Yee maintaining possession of the funds provided and the books purchased with said funds.

/

/

/

/

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

**COUNT I**

**DECLARATORY RELIEF**

**(Against Counter-Defendant Fortier)**

56.     Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

57.     The MOU was executed by Macroverse and Fortier as a reflection of their understanding of the principal terms of a consulting agreement between the parties.

58.     As set forth therein, the MOU expressly provided, among other things, that Fortier would act as a consultant for Macroverse to "(a) create, produce, print, market, and distribute replicas of classic comic books under Macroverse's Authentic Edition product line to include comic books, books, magazines, consumer products, and any other media formats, and (b) develop and create all technologies required for the scanning of original classic comic books and other materials and the production and printing of replicas for the Authentic Edition product line."

59.     Fortier also agreed (a) that Macroverse would be the "exclusive owner and producer of all right, title and interest in the Authentic Edition product line and shall be considered the creator and owner of the technology, processes, and methods used to create the Authentic Edition product line.;" (b) that he would "document, disclose, and deliver all technology, processes, and methods needed to create Authentic Editions to Macroverse;" (c) that Macroverse would be the sole owner of the Authentic Editions elements; (d) that he would assign all intellectual property rights to Macroverse for any work product created while performing services for Macroverse, with the understanding that Macroverse would be the sole owner of the same and the only party permitted to exploit these assets; and (e) that he would  not "develop, create, produce, print or market any technology, material or content that is in any way competitive with the contemplated Authentic Edition product line or the technologies to be developed by [Fortier]."

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**                    Case No. 2:25-cv-07573-CV-SK

BUCHALTER 94067008v9

60.    In exchange for the above, Macroverse agreed (a) to fund all costs (licensing, rare book acquisition, scanning/imaging the source materials, restoration production, delivery of print-ready files, and otherwise) required to produce Authentic Editions, as well as any agreed-upon production fees submitted by Fortier; (b) to provide Fortier with $215,000 to build the custom equipment and technology necessary to produce Authentic Editions and pay certain invoices associated with the acquisition of source material for the Authentic Editions line; and (c) to compensate Fortier for his services, with said compensation being contingent upon Fortier's delivery of print-ready production files, performance and/or continued service to Macroverse.

61.    An actual and justiciable controversy has arisen and now exists between Macroverse and Fortier as to what rights and obligations, if any, were created under the MOU.

62.    Macroverse contends that the MOU is a binding contract as reflected by the language therein, and the parties' performance thereunder.  Fortier contends that the MOU was only preliminary in nature and created no binding obligations between the parties.

63.    Macroverse seeks a judicial declaration that the MOU is binding and enforceable, and created the rights and obligations set forth herein.

64.    The MOU provides that "[s]hould a lawsuit or arbitration be commenced to interpret or enforce the terms of this MOU, the prevailing party shall be entitled to recover costs and attorneys' fees in addition to any other recovery to which such party may be entitled."  Macroverse has retained the law firm Buchalter, A Professional Corporation for the purpose of interpreting and enforcing its rights under the MOU.  Macroverse is entitled to recover costs and attorneys' fees incurred in connection with this claim in an amount according to proof.

/

/

## COUNT II

## BREACH OF CONTRACT

### (Against Counter-Defendant Fortier)

65.     Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

66.     Macroverse and Fortier entered into the MOU, which constitutes an enforceable contract.

67.     Macroverse did all, or substantially all, of the significant things that the MOU required it to do, except for those things that were excused by Fortier's breach or non-performance.

68.     Fortier breached the MOU by, among other things:

a.     Failing to create, produce, print, market, or distribute classic comic books under Macroverse's Authentic Editions product line;

b.     Failing to develop and create all technologies required for Macroverse's Authentic Editions product line;

c.     Failing to disclose and deliver all technology, processes, and methods needed to create Authentic Editions to Macroverse;

d.     Failing to assign to Macroverse all intellectual property rights for Authentic Editions and other work product created by Fortier;

e.     Developing, producing, and marketing technology, material, and/or content that was competitive with Macroverse's "Authentic Editions" product line; and

f.     Exploiting the intellectual property associated with Authentic Editions in violation of Macroverse's exclusive rights to do the same.

69.     As a result of Fortier's breach of the MOU, Macroverse has been harmed in an amount to be proven at trial, but which it believes to be no less than $1,800,000 plus interest at the legal rate.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**                    **Case No. 2:25-cv-07573-CV-SK**

BUCHALTER 94067008v9

70.    The MOU provides that "[s]hould a lawsuit or arbitration be commenced to interpret or enforce the terms of this MOU, the prevailing party shall be entitled to recover costs and attorneys' fees in addition to any other recovery to which such party may be entitled."  Macroverse has retained the law firm Buchalter, A Professional Corporation for the purpose of interpreting and enforcing its rights under the MOU.  Macroverse is entitled to recover costs and attorneys' fees incurred in connection with this claim in an amount according to proof.

## COUNT III

### BREACH OF IMPLIED-IN-FACT CONTRACT

### (Against Counter-Defendant Fortier)

71.    Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

72.    The conduct of the parties may create a valid and binding contract even without spoken or written words.  Contracts created by conduct are just as valid as contracts formed with spoken or written words.

73.    As described herein, through their words and conduct, including the payments that Fortier received and accepted from Macroverse and the conduct he undertook in his capacity as Macroverse's Head of Publishing, Macroverse and Fortier entered into the MOU, which based on their performance and conduct constitutes an enforceable contract.

74.    Fortier breached the MOU by, among other things:

a.    Failing to create, produce, print, market, or distribute classic comic books under Macroverse's Authentic Editions product line;

b.    Failing to develop and create all technologies required for Macroverse's Authentic Editions product line;

c.    Failing to disclose and deliver all technology, processes, and methods needed to create Authentic Editions to Macroverse;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**                    **Case No. 2:25-cv-07573-CV-SK**

BUCHALTER 94067008v9

d.      Failing to assign to Macroverse all intellectual property rights for Authentic Editions and other work product created by Fortier;

e.      Developing, producing, and marketing technology, material, and/or content that was competitive with Macroverse's "Authentic Editions" product line; and

f.      Exploiting the intellectual property associated with Authentic Editions in violation of Macroverse's exclusive rights to do the same.

75.    Macroverse did all, or substantially all, of the significant things that the MOU required it to do, except for those things that were excused by Fortier's breach or non-performance.

76.    As a result of Fortier's breach of the MOU, Macroverse has been harmed in an amount to be proven at trial, but which it believes to be in excess of $1,800,000 plus interest at the legal rate.

77.    The MOU provides that "[s]hould a lawsuit or arbitration be commenced to interpret or enforce the terms of this MOU, the prevailing party shall be entitled to recover costs and attorneys' fees in addition to any other recovery to which such party may be entitled." Macroverse has retained the law firm Buchalter, A Professional Corporation for the purpose of interpreting and enforcing its rights under the MOU. Macroverse is entitled to recover costs and attorneys' fees incurred in connection with this claim in an amount according to proof.

## COUNT IV

## BREACH OF FIDUCIARY DUTY

## (Against Counter-Defendants Fortier, Richie, Saeva and DOES 1-10, Inclusive)

78.    Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

79.    Fortier, acting within the scope of his duties as a consultant and eventually the Head of Publishing for Macroverse, caused Macroverse to place trust

and confidence in him.  As such, a fiduciary relationship existed between Fortier and Macroverse and/or Fortier voluntarily accepted a fiduciary relationship with respect to Macroverse.  As a result of this fiduciary relationship, Fortier owed Macroverse the fiduciary duties of care, loyalty, and good faith.  These fiduciary duties obligated Fortier to discharge his actions and duties with respect to Macroverse in good faith and to put the interests of Macroverse before his own.  Fortier's duty of loyalty precluded him from undertaking any act against the interests of Macroverse.

80.    Macroverse was entitled to place its trust and confidence in Fortier and expected him to act with the utmost good faith in carrying out his duties as a consultant and the Head of Publishing for Macroverse, and in carrying out the business of Macroverse.

81.    Macroverse relied on Fortier's trustworthiness, loyalty, and his pledges to faithfully carry out these duties.  Macroverse's reliance was reasonable based on Fortier's conduct through the course of the parties' relationship, including the actions he undertook at Macroverse's Head of Publishing.

82.    Fortier breached the duties owed to Macroverse when he engaged in conduct against the interests of Macroverse, by, among other things, taking affirmative acts to compete with Macroverse and performing other acts against Plaintiff's interest, including those set forth herein.  These acts include, but are not limited to:

a.    Fortier's efforts to usurp Authentic Editions' business opportunities, which he promised would be pursued for and on behalf of Macroverse, by setting up a secret limited liability company for the purpose of diverting said opportunities away from Macroverse without its knowledge; and

b.    Fortier's intentional diversion and embezzlement of and/or misuse of funds which were provided to him by Macroverse for the purpose of funding the production of Authentic Editions, securing rare comics books as source material for Authentic Editions, and building professional-grade equipment to

24

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

1    complete the same.

2        83.    Macroverse did not consent at any time to Fortier's wrongful conduct as
3    alleged herein.

4        84.    As a result of Fortier's conduct and breaches of the duties owed to
5    Macroverse, Macroverse has suffered damages in an amount to be proven at trial.
6    Fortier's conduct was a substantial factor in causing this harm.

7        85.    Upon information and belief, Fortier's breaches were committed with
8    malice, oppression, and/or fraud, and were undertaken with the intent to injure and
9    cause damage to Macroverse.  Such conduct justifies an award of punitive damages.

10        86.    Richie and Saeva, acting within the scope of their duties as consultants
11    for Macroverse, caused Macroverse to place trust and confidence in them.  As such,
12    a fiduciary relationship existed between Richie, Saeva and Macroverse and/or Richie
13    and Saeva voluntarily accepted a fiduciary relationship with respect to Macroverse.
14    As a result of these fiduciary relationships, Richie and Saeva each owed Macroverse
15    the fiduciary duties of care, loyalty, and good faith.  These fiduciary duties obligated
16    Richie and Saeva to discharge their actions and duties with respect to Macroverse in
17    good faith and to put the interests of Macroverse before their own.  Richie and
18    Saeva's duties of loyalty precluded them from undertaking any act against the
19    interests of Macroverse.

20        87.    Macroverse was entitled to place its trust and confidence in Richie and
21    Saeva and expected Richie and Saeva to act with the utmost good faith in carrying
22    out their duties for Macroverse, and in carrying out the business of Macroverse.

23        88.    Macroverse relied on Richie and Saeva's trustworthiness, loyalty, and
24    their pledges to faithfully carry out these duties.  Macroverse's reliance was
25    reasonable based on Richie and Saeva's conduct through the course of the parties'
26    relationship, including the fact that both were actively negotiating licensing deals on
27    Macroverse's behalf.

28        89.    Richie and Saeva breached the duties owed to Macroverse when they

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MACROVERSE MEDIA, INC.'S
COUNTERCLAIMS
BUCHALTER 94067008v9

Case No. 2:25-cv-07573-CV-SK

engaged in conduct against the interests of Macroverse, by, among other things, taking affirmative acts to compete with Macroverse and performing other acts against Plaintiff's interest, including those set forth herein. These acts include, but are not limited to:

a.     Richie and Saeva's efforts to usurp Authentic Editions' business opportunities, which they promised to pursue for and on behalf of Macroverse, by diverting opportunities involving Marvel and DC Comics away from Macroverse without its knowledge; and

90.     Macroverse did not consent at any time to Richie or Saeva's wrongful conduct as alleged herein.

91.     As a result of Richie and Saeva's conduct and breaches of the duties they owed to Macroverse, Macroverse has suffered damages in an amount to be proven at trial. Richie and Saeva's conduct was a substantial factor in causing this harm.

92.     Upon information and belief, Richie and Saeva's breaches were committed with malice, oppression, and/or fraud, and were undertaken with the intent to injure and cause damage to Macroverse. Such conduct justifies an award of punitive damages against each of them.

## COUNT V

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (Against Counter-Defendants Richie, Saeva, Yee, Archival and DOES 1-10, Inclusive)

93.     Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

94.     Counter-defendants Richie, Saeva, Archival and Yee were aware that Fortier, in his capacity as a consultant and eventually the Head of Publishing for Macroverse, owed Macroverse fiduciary duties of care, loyalty, and good faith. Fortier breached those fiduciary duties by committing the acts alleged herein,

26

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MACROVERSE MEDIA, INC.'S COUNTERCLAIMS
Case No. 2:25-cv-07573-CV-SK

BUCHALTER 94067008v9

including the acts described in paragraphs 79 – 85.  Richie, Saeva, Archival and Yee had actual knowledge of Fortier's breaches of those fiduciary duties.

95.    Richie, Saeva, Archival and Yee gave substantial assistance to Fortier's breaches of fiduciary duty by committing the acts alleged herein, including but not limited to:

a.    Assisting Fortier in his efforts to usurp Authentic Editions' business opportunities, which he promised would be pursued for and on behalf of Macroverse, by setting up a secret limited liability company for the purpose of diverting said opportunities away from Macroverse without its knowledge; and

b.    Assisting Fortier in his efforts to divert or misuse funds that were provided to him by Macroverse for the purpose of funding the production of Authentic Editions, securing rare comics books as source material for Authentic Editions, and building professional-grade equipment to complete the same.

96.    Upon information and belief, the conduct of Richie, Saeva, Archival and Yee was committed with malice, oppression, and/or fraud, and was undertaken with the intent to injure and cause damage to Macroverse.  Such conduct justifies an award of punitive damages against Richie, Saeva, Archival and Yee.

## COUNT VI

### CONVERSION

### (Against Counter-Defendants Fortier, Yee, Archival and DOES 1-10, Inclusive)

97.    Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

98.    At all relevant times hereto, Macroverse owned and had a right to immediate possession of the comics books and funds that comprised the Comics Pool.

99.    Counter-Defendants Fortier, Archival, and Yee intentionally and substantially interfered with Macroverse's right of possession by knowingly and

27

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

Case No. 2:25-cv-07573-CV-SK

intentionally refusing to return possession of these books and funds after Macroverse demanded that they do so.

100. Macroverse did not consent to this conversion by counter-defendants Fortier and Yee.

101. As a proximate result of counter-defendant Fortier and Yee's conversion, Macroverse has suffered damages in an amount according to proof at trial but believed to be no less than $900,000 plus interest at the legal rate.

102. Counter-Defendants' conversion was committed with malice, oppression, and/or fraud, and was undertaken with the intent to injure and cause damage to Macroverse. Such conduct justifies an award of punitive damages against Richie and Yee.

## COUNT VII

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

### (Against Counter-Defendants Fortier, Richie, Saeva, Archival, and DOES 1-10, Inclusive)

103. Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

104. Macroverse was in an economic relationship with various licensors and publishers, including Marvel and DC Comics, which probably would have resulted in an economic benefit to Macroverse.

105. Counter-Defendants Fortier, Saeva, Archival and Richie knew of these relationships because they helped cultivate and pursue these relationships while acting on Macroverse's behalf.

106. Counter-Defendants intentionally engaged in conduct designed to disrupt these relationships, including but not limited to:

a.    Falsely representing to licensors and publishers that they owned the intellectual property rights associated with Authentic Editions;

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**

**Case No. 2:25-cv-07573-CV-SK**

b.      Falsely representing to licensors and publishers that they had the right to exploit Authentic Editions; and

c.      Redirecting Authentic Editions' business opportunities away from Macroverse and towards Archival, a secret limited liability that Counter-Defendants Fortier and Richie established to divert said opportunities away from Macroverse.

107.    Macroverse's relationship with these licensors and publishers, including Marvel and DC Comics, was disrupted.

108.    Macroverse was harmed as a result of this disruption.

109.    The conduct of counter-defendants Fortier, Archival, Saeva and Richie was a substantial factor in causing Macroverse's harm.

110.    In doing the acts described above, counter-defendants Fortier, Archival, Saeva, and Richie acted with malice, oppression, and/or fraud, and with the intent to injure and cause damage to Macroverse.  Such conduct justifies an award of punitive damages.

111.    Macroverse is entitled to recover damages for the harm caused by counter-defendants Fortier, Archival, Saeva and Richie, including compensatory damages, consequential damages, and punitive damages, as permitted by law.

## COUNT VIII

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

## (Against Counter-Defendants Fortier, Richie, Saeva, Archival, and DOES 1-10, Inclusive)

112.    Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

113.    Macroverse was in an economic relationship with various licensors and publishers, including Marvel and DC Comics, which probably would have resulted in an economic benefit to Macroverse.

114.    Counter-Defendants Fortier, Saeva, Archival and Richie knew or should have known of these relationships because they helped cultivate and pursue these relationships while acting on Macroverse's behalf.    Counter-Defendants Fortier, Saeva, Archival and Richie nonetheless carelessly engaged in acts that foreseeably harmed Macroverse's economic relationships.

115.    Counter-Defendants knew or should have known that these relationships would be disrupted if they failed to act with reasonable care.

116.    Counter-Defendants failed to act with reasonable care.    Specifically, upon information and belief, Counter-Defendants Fortier, Saeva, Archival and Richie attempted to impair and damage Macroverse by:

   a.    Failing to exercise due care in communications with licensors and publishers so as to create confusion over the ownership rights to the intellectual property associated with Authentic Editions;

   b.    Failing to exercise due care in communications with licensors and publishers so as to create confusion regarding their ability to exploit Authentic Editions; and

   c.    Making statements or taking actions that reasonably should have been known to direct business opportunities away from Macroverse and towards Archival, a secret limited liability that Counter-Defendants Fortier and Richie established for the purpose of diverting said opportunities away from Macroverse.

117.    Macroverse's relationship with these licensors and publishers, including Marvel and DC Comics, was disrupted as a direct and proximate result of the acts committed by Counter-Defendants Fortier and Riche,

118.    Macroverse was harmed as a result of this disruption.

119.    The conduct of counter-defendants Fortier, Saeva, Archival and Richie was a substantial factor in causing Macroverse's harm.

120.    Macroverse is entitled to recover damages for the harm caused by counter-defendants Fortier, Archival, Saeva and Richie, including compensatory

30

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MACROVERSE MEDIA, INC.'S COUNTERCLAIMS
BUCHALTER 94067008v9

Case No. 2:25-cv-07573-CV-SK

damages and consequential damages as permitted by law.

## COUNT IX

### UNJUST ENRICHMENT

### (Against Counter-Defendant Fortier and Yee)

121.   Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

122.   As a direct and proximate result of the acts and conduct alleged herein, Fortier and Yee have been unjustly enriched and have each obtained money and benefits from Macroverse to which they otherwise would not have been entitled to, and which they would not have obtained had the true facts been known to Macroverse.

123.   It is patently unfair, unjust, and inequitable for Fortier and Yee to retain any of the money or benefits that they received from Macroverse at the expense of Macroverse.

124.   As a proximate result of this unjust enrichment, Macroverse has been damaged in an amount according to proof at trial, but believed to be no less than $1,800,000 plus interest at the legal rate.

## COUNT X

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

### LANHAM ACT – 15 U.S.C. §§ 1114 & 1125, ET SEQ.

### (Against Counter-Defendants Fortier, Richie, Saeva Archival, and DOES 1-10, Inclusive)

125.   Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

126.   Macroverse owns valid and protectable common law rights in the trademark Authentic Editions (the "AUTHENTIC EDITIONS Mark") in connection with publishing, marketing and selling replicas of original comic books and related goods and services.  Macroverse acquired these rights beginning in July 2024 (if not

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MACROVERSE MEDIA, INC.'S
COUNTERCLAIMS
BUCHALTER 94067008v9

Case No. 2:25-cv-07573-CV-SK

earlier) both from its own use of the AUTHENTIC EDITIONS Mark in commerce, and from an assignment of Fortier's rights in the AUTHENTIC EDITIONS Mark, if any, pursuant to the MOU.

127.  Macroverse has used the AUTHENTIC EDITIONS Mark continuously in commerce since at least July 2024 (if not earlier) in connection with the sale, distribution, and marketing of replicas of original comic books and related goods and services.

128.  Macroverse's use of the AUTHENTIC EDITIONS Mark is worldwide, including throughout the United States, as Macroverse's products are marketed, offered for sale, and sold across the United States.

129.  The AUTHENTIC EDITIONS Mark has come to signify to consumers, licensors, vendors, and publishers that the goods and services bearing the AUTHENTIC EDITIONS Mark originate from Macroverse and are associated with Macroverse.

130.  Counter-Defendants Fortier, Saeva, Archival and Richie were fully aware of, and had actual notice of, Macroverse's rights to and in the AUTHENTIC EDITIONS Mark.

131.  Despite the foregoing knowledge, and without Macroverse's consent, Counter-Defendants Fortier, Saeva, Archival and Richie are using a mark that is identical to Macroverse's AUTHENTIC EDITIONS Mark to promote, market, sell, offer to sell, and advertise facsimiles of original comic books and related goods and services.

132.  Counter-Defendants' unauthorized use of a mark that is identical to Macroverse's AUTHENTIC EDITIONS Mark is likely to create confusion in the marketplace, cause mistake, or deceiver consumers, licensors, vendors, and publishers into believing that a business relationship exists between Macroverse and the Counter-Defendants, or that Macroverse authorizes, approves, or sponsors Counter-Defendants' use of the competing mark.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S
COUNTERCLAIMS**

**Case No. 2:25-cv-07573-CV-SK**

133.    Counter-Defendants' conduct as alleged herein infringes on Macroverse's rights in the AUTHENTIC EDITIONS Mark.

134.    Counter-Defendants' conduct was and is willful, knowing, intentional, and undertaken with full knowledge of Macroverse's rights in the AUTHENTIC EDITIONS Mark and without regard for the harm that such infringement will and is causing Macroverse.  This conduct is further undertaken with the intent to trade upon Macroverse's goodwill and reputation, including its business relationships within the related industry.

135.    Upon information and belief, unless Counter-Defendants are restrained, Counter-Defendants will continue the acts complained of herein, causing Macroverse irreparable harm.   It will be extremely difficult to ascertain the amount of compensation that would afford Macroverse adequate relief therefore, and Macroverse will be irreparably harmed unless Counter-Defendants are permanently enjoined from using the AUTHENTIC EDITIONS Mark, or any mark that is confusingly similar thereto.

136.    Based on the foregoing, Macroverse is entitled to injunctive relief, an accounting of Counter-Defendants' profits, actual damages, statutory damages, treble damages, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 1114, 1116, 1117, and 1118.

## COUNT XI

## COMMON LAW TRADEMARK INFRINGEMENT

### (Against Counter-Defendants Fortier, Richie, Saeva, Archival, and DOES 1-10, Inclusive)

137.    Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

138.    Macroverse owns valid and protectable common law rights in the AUTHENTIC EDITIONS Mark in connection with publishing, marketing and selling replicas of original comic books and related goods and services.  Macroverse

33

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MACROVERSE MEDIA, INC.'S COUNTERCLAIMS
BUCHALTER 94067008v9

Case No. 2:25-cv-07573-CV-SK

acquired these rights beginning in July 2024 (if not earlier) both from its own use of the AUTHENTIC EDITIONS Mark in commerce, and from an assignment of Fortier's rights in the AUTHENTIC EDITIONS Mark, if any, pursuant to the MOU.

139. Macroverse has used the AUTHENTIC EDITIONS Mark continuously in commerce since at least July 2024 (if not earlier) in connection with the sale, distribution, and marketing of facsimiles of original comic books and related goods and services.

140. Macroverse's use of the AUTHENTIC EDITIONS Mark is worldwide, including throughout the United States, as Macroverse's products are marketed, offered for sale, and sold across the United States.

141. The AUTHENTIC EDITIONS Mark has come to signify to consumers, licensors, vendors, and publishers that the goods and services bearing the AUTHENTIC EDITIONS Mark originate from Macroverse and are associated with Macroverse.

142. Counter-Defendants Fortier, Saeva, Archival and Richie were fully aware of, and had actual notice of, Macroverse's rights to and in the AUTHENTIC EDITIONS Mark.

143. Despite the foregoing knowledge, and without Macroverse's consent, Counter-Defendants Fortier, Saeva, Archival and Richie are using a mark that is identical to Macroverse's AUTHENTIC EDITIONS Mark to promote, market, sell, offer to sell, and advertise replicas of original comic books and related goods and services.

144. Counter-Defendants' unauthorized use of a mark that is identical to Macroverse's AUTHENTIC EDITIONS Mark is likely to create confusion in the marketplace, cause mistake, or deceiver consumers, licensors, vendors, and publishers into believing that a business relationship exists between Macroverse and the Counter-Defendants, or that Macroverse authorizes, approves, or sponsors Counter-Defendants' use of the competing mark.

BUCHALTER
A Professional Corporation
Los Angeles

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**

**Case No. 2:25-cv-07573-CV-SK**

BUCHALTER 94067008v9

145.    Counter-Defendants' conduct as alleged herein infringes on Macroverse's rights in the AUTHENTIC EDITIONS Mark.

146.    Counter-Defendants' conduct was and is willful, knowing, intentional, and undertaken with full knowledge of Macroverse's rights in the AUTHENTIC EDITIONS Mark and without regard for the harm that such infringement will and is causing Macroverse.  This conduct is further undertaken with the intent to trade upon Macroverse's goodwill and reputation, including its business relationships within the related industry.

147.    As a direct and proximate result of Counter-Defendants' wrongful conduct, Macroverse has suffered, and will continue to suffer, damages including but not limited to actual damages, lost profits, and damage to its reputation and goodwill.

148.    Macroverse is entitled to recover damages in an amount to be proven at trial, including punitive damages, and injunctive relief to prevent further infringement.

## COUNT XII

### FRAUD (INTENTIONAL MISREPRESENTATION)

### (Against Counter-Defendant Fortier)

149.    Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

150.    As set forth herein, Fortier represented to Macroverse's CEO, Eben Matthews, that he had developed the proprietary technology and equipment necessary to fully produce and deliver multiple "Authentic Editions" lines at scale.

151.    Because of these representations, Macroverse took on significant debt and directed financial resources towards the creation of the Authentic Editions product.

152.    Macroverse also provided Fortier, or persons to whom Fortier directed payments be made, with no less than $1,800,000.  Macroverse paid these monies based on Fortier's representations that the funds would be used to develop the

35

Authentic Editions product line for Macroverse by, among other things, (i) securing licenses, (ii) funding production related costs, including paying for a production restoration team, (iii) building professional quality scanning and production equipment; (iv) hiring additional employees to assist with the project; and (v) acquiring rare comic books for the Comics Pool.  These representations were made at or around the time that MOU was executed and throughout the parties' relationship, and at or around the time that the Pre-Code Campaign and Archie Comics Campaigns were secured.

153.  Further, Macroverse entered into third party agreements and raised funds related to the Authentic Editions line and for the Pre-Code Campaign and Archie Comics Campaign based on Fortier's representations that (i) he could meet agreed upon deadlines and (ii) he and his production restoration team had the capability of producing the products associated with these campaigns.  These representations were made at or around the time that the Pre-Code Campaign and Archie Comics Campaign were secured.

154.  Upon information and belief, the representations identified above were knowingly false at the time they were made, or made with reckless disregard for their truth.

155.  Upon further information and belief, Fortier intended for these false representations to induce Macroverse into hiring Fortier, providing him with the above-referenced funds, and taking actions to fund and develop business opportunities for the production of Authentic Editions, which Fortier would later claim himself.

156.  Macroverse justifiably relied on Fortier's representations and undertook the actions identified herein.

157.  As a result of its reliance on Fortier's false representations, Macroverse has suffered damages in an amount to be proven at trial.

158.  In doing the acts described above, Fortier acted with malice, oppression,

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

and/or fraud, and with the intent to injure and cause damage to Macroverse. Such conduct justifies an award of punitive damages.

## COUNT XIII

### FRAUD (NEGLIGENT MISREPRESENTATION)

### (Against Counter-Defendant Fortier)

159. Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

160. As set forth herein, Fortier represented to Macroverse's CEO, Eben Matthews, that he had developed the proprietary technology and equipment necessary to fully produce and deliver multiple "Authentic Editions" lines at scale.

161. Because of these representations, Macroverse took on significant debt and directed financial resources towards the creation of the Authentic Editions product.

162. Macroverse also provided Fortier, or persons to whom Fortier directed payments be made, with no less than $1,800,000. Macroverse paid these monies based on Fortier's representations that the funds would be used to develop the Authentic Editions product line for Macroverse by, among other things, (i) securing licenses, (ii) funding production related costs, including paying for a production restoration team, (iii) building professional quality scanning and production equipment; (iv) hiring additional employees to assist with the project; and (v) acquiring rare comic books for the Comics Pool. These representations were made at or around the time that MOU was executed and throughout the parties' relationship, and at or around the time that the Pre-Code Campaign and Archie Comics Campaigns were secured.

163. Further, Macroverse entered into third party agreements and raised funds related to the Authentic Editions line and Pre-Code Campaign and Archie Comics Campaign based on Fortier's representations that (i) he could meet agreed upon deadlines and (ii) he and his production team had the capability of producing

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

the products associated with these campaigns. These representations were made at or around the time that the Pre-Code Campaign and Archie Comics Campaigns were secured.

164.   Upon information and belief, the above-referenced representations were false and Fortier had no reasonable grounds for believing that these representations were true at the time they were made.

165.   Upon further information and belief, Fortier intended for these false representations to induce Macroverse into hiring Fortier, providing him with the above-referenced funds, and taking actions to fund and develop business opportunities for the production of Authentic Editions, which Fortier would later claim himself.

166.   Macroverse justifiably relied on Fortier's representations and undertook the actions identified herein and was unaware of the falsity of the representations.

167.   As a result of its reliance on Fortier's false representations, Macroverse has suffered damages in an amount to be proven at trial.

## COUNT XIV

### FRAUD (CONCEALMENT)

### (Against Counter-Defendants Fortier, Richie, and Saeva)

168.   Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

169.   While acting in his capacity as Macroverse's Head of Publishing, Fortier represented to Macroverse that licensing discussions with Marvel and DC Comics were "in limbo" or that he was otherwise waiting for the publishers to move forward.

170.   Upon information and belief, Fortier concealed the true nature of his ongoing discussions with Marvel and DC Comics and specifically the fact that he, Richie and Saeva were involved in ongoing discussions with Marvel and DC Comics throughout 2024, and that those discussions were progressing towards finalized deals.  Richie and Saeva similarly failed to disclose this information to Macroverse

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

MACROVERSE MEDIA, INC.'S
COUNTERCLAIMS
BUCHALTER 94067008v9

Case No. 2:25-cv-07573-CV-SK

1    despite knowing that Macroverse had no knowledge of these discussions.

2    171.   Upon information and belief, Fortier, Richie and Saeva actively and
3    intentionally concealed these facts so that they could continue negotiating with
4    Marvel and DC Comics under the guise of working for Macroverse, a company that
5    had demonstrated an ability to succeed in developing consumer interest for the
6    Authentic Editions line. Upon information and belief, the interest generated by
7    Macroverse's Pre-Code Campaign was attractive to Marvel, DC Comics, and other
8    publishers. This success enabled Counter-Defendants to progress negotiations with
9    Marvel and DC Comics to a point where Counter-Defendants were able to claim for
10   themselves the exact business opportunities that Macroverse had funded and hired
11   them to pursue on its behalf.

12   172.   As a result of Counter-Defendants' concealment, Macroverse did not
13   discover that Fortier, Saeva, and Richie had secured or were in the process of securing
14   deals to exploit Authentic Editions without Macroverse's involvement.

15   173.   Had Macroverse known of Counter-Defendants' concealment, it would
16   have  reasonably behaved different by, among other things, not taking on additional
17   debt for the purpose of funding authentic editions, not directing no less than
18   $1,800,000 to Fortier and others at Fortier's direction, taking steps to terminate its
19   business relationship with Counter-Defendants and/or interfaced directly with
20   Marvel and DC Comics.

21   174.   Counter-Defendants' concealment was a substantial factor in causing
22   Macroverse to endure harm in an amount according to proof at trial.

23   175.   In doing the acts described above, Fortier, Saeva, and Richie acted with
24   malice, oppression, and/or fraud, and with the intent to injure and cause damage to
25   Macroverse.  Such conduct justifies an award of punitive damages.

26   /

27   /

28   /

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**

Case No. 2:25-cv-07573-CV-SK

BUCHALTER 94067008v9

## COUNT XV

### UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200)

### (Against all Counter-Defendants)

176.    Macroverse repeats and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

177.    California Business and Professions Code § 17200, et seq., states that unfair competition shall mean and include any "unlawful, unfair or fraudulent business act of practice."

178.    Counter-Defendants actions described herein, including the actions identified in paragraphs 1 – 55 through, constitute unlawful business acts and/or practices under California Business and Professions Code § 17200, and the common law.

179.    Upon information and belief, Counter-Defendants willfully intended to trade on the strength, reputation, and goodwill of Macroverse and Authentic Editions to cause injury to Macroverse.

180.    Macroverse has suffered injury in fact and has lost money and/or property as a direct and proximate result of Counter-Defendants' violations, including but limited to the diversion of business opportunities, erosion of goodwill, damage to Macroverse's reputation, loss of property including the comic books purchased for the Comics Pool, and loss of funds including the funds advanced to Fortier or at his direction.

181.    Macroverse has no adequate remedy at law.  Unless Counter-Defendants are preliminarily and permanently enjoined from committing the unlawful and fraudulent acts described herein, Macroverse will continue to suffer irreparable harm. Macroverse is entitled to an injunction restraining Counter-Defendants, their officers, agents, employees, and all persons acting in concert with them, from engaging in any such further acts of unfair completion in violation of California Business and Professions Code.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S COUNTERCLAIMS**

**Case No. 2:25-cv-07573-CV-SK**

## **PRAYER FOR RELIEF**

WHEREFORE, Macroverse respectfully prays for judgment against Cross-Defendants as follows:

1.    For a judgment finding that the MOU constitutes a binding and enforceable contract between Macroverse and Fortier;

2.    For a judgment finding that Fortier has breached the contractual obligations owed to Macroverse under the MOU, and for an award of damages in Macroverse's favor in an amount to be determined according to proof at trial;

3.    For a judgment finding that Counter-Defendants are liable for infringement of the AUTHENTIC EDITIONS Mark in violation of the Lanham Act, 15 U.S.C. § 1114 and 1025, *et seq*. California common law, and California Business & Professions Code § 17200 *et seq.,* and for an award of damages thereon in favor of Macroverse;

4.    For a judgment finding that Counter-Defendants are liable for their respective acts of interference, breach of contract, conversion, fraud, breach of fiduciary duty, their aiding and abetting of the breach of fiduciary duty, fraud, concealment and unfair competition;

5.    That an accounting be ordered of all the profits realized by Counter-Defendants, or others acting in concert or participation with them, from Counter-Defendants' unauthorized use of the AUTHENTIC EDITIONS Mark;

6.    For a judgment finding that Counter-Defendants be required to account for and pay to Macroverse all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct as alleged herein;

7.    For a judgment finding that Counter-Defendants be liable to Macroverse for actual damages incurred as a result of Counter-Defendants' acts of infringement, interference, breach of contract, conversion, fraud, breach of fiduciary duty, their aiding and abetting of the breach of fiduciary duty, fraud, concealment and unfair competition and other unlawful conduct alleged herein, and for any additional profits

41

1    attributable to Counter-Defendants wrongful conduct, according to proof;

2        8.    For a judgment awarding monetary damages to Macroverse and against

3    Counter-Defendants as a result of Counter-Defendants' wrongful activities, for,

4    including but not limited, lost profits, harm to reputation, and all other damages

5    flowing from Counter-Defendants' acts in an amount to be proven according to proof

6    at trial;

7        9.    That Counter-Defendants, and their officers, employees, agents,

8    assigns, servants, attorneys, representatives, and all persons acting in concert or

9    participation with them, be preliminarily and thereafter permanently enjoined and

10   restrained, pursuant to the Court's inherent equitable powers and pursuant to 15

11   U.S.C. § 116 from:

12        a.    Promoting, distributing, or selling any products under the

13            AUTHENTIC EDITIONS Mark, or any other phrase, term, or

14            logo that is likely to cause confusion with Macroverse or the

15            AUTHENTIC EDITIONS Mark;

16        b.    Using in commerce the AUTHENTIC EDITIONS Mark, the

17            Authentic Editions name, brand, or any confusingly similar mark,

18            in a manner that is likely to cause confusion, mistake, or

19            deception as to the affiliation, connection, or association of

20            Counter-Defendants with Macroverse;

21        c.    Using, for any purpose, all work product associated with the

22            Authentic Editions brand including, but not limited to, the

23            physical comic books which were acquired as source materials

24            for Authentic Editions using funds provided by Macroverse, all

25            digital scans, or portions of digital scans, created in connection

26            with the Authentic Editions brand, all technology and other

27            equipment created using funds provided by Macroverse to

28            produce the Authentic Editions brand,

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MACROVERSE MEDIA, INC.'S
COUNTERCLAIMS**
BUCHALTER 94067008v9

**Case No. 2:25-cv-07573-CV-SK**

      d.     Representing, directly or indirectly, that Counter-Defendants own or are affiliated with Authentic Editions or its underlying technology;

      e.     Engaging in any other acts that are likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of the goods or services; and

      f.     Participating or assisting in the above activities.

10.    Granting Macroverse an award of punitive damages for the willful and wonton nature of Counter-defendants' infringement and other acts alleged herein;

11.    For a finding that this case is exceptional pursuant to 15 U.S.C. § 1117, thereby entitling Macroverse to an award of reasonable attorneys' fees;

12.    For an award of Macroverse's costs and attorneys' fees;

13.    For an award of Macroverse's pre-judgment interest;

14.    For such other and further relief as the Court deems just and proper.


DATED:  December 12, 2025      BUCHALTER
                      A Professional Corporation


                      By:  */s/ Aaron M. Levine*
                            AARON M. LEVINE
                            MATTHEW L. SEROR
                            Attorneys for Defendant and Counterclaimant
                            MACROVERSE MEDIA INC.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES