1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2      Including Professional Corporations
   JESSE A. SALEN, Cal Bar No. 292043
3  jsalen@sheppardmullin.com
   12275 El Camino Real, Suite 100
4  San Diego, California 92130-4092
   Telephone:   858.720.8900
5  Facsimile:   858.509.3691

6  Attorneys for Plaintiff/Counter-Defendant ADAM
   FORTIER d/b/a PORTMANTEAU PUBLISHING;
7  Counter-Defendants ROSS RICHIE, and ARCHIVAL
   COMICS LLC

8

9                  UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  ADAM FORTIER d/b/a                  Case No. 2:25-cv-07573-CV-SK
    PORTMANTEAU PUBLISHING,
13                                      **ADAM FORTIER d/b/a**
               Plaintiff,              **PORTMANTEAU PUBLISHING,**
14                                      **ROSS RICHIE, and ARCHIVAL**
          v.                            **COMICS LLC'S MOTION TO**
15                                      **DISMISS MACROVERSE MEDIA**
    MACROVERSE MEDIA, INC.,             **INC.'S COUNTERCLAIMS 4-5, 7-8,**
16                                      **AND 10-14; MEMORANDUM OF**
               Defendant.              **POINTS AND AUTHORITIES IN**
17                                      **SUPPORT THEREOF**

18                                      Date:    TBD
                                        Time:    1:30 p.m.
19  _____    Ctrm:    10B, 10th Floor
                                        Judge:   Hon. Cynthia Valenzuela
20  MACROVERSE MEDIA, INC.,

21             Counterclaimant,

22        v.

23  ADAM FORTIER d/b/a
    PORTMANTEAU PUBLISHING,
24  ARCHIVAL COMICS LLC f/k/a
    AUTHENTIC EDITIONS, LLC
25  HARLEY YEE, ROSS RICHIE,
    DANIEL SAEVA and DOES 1-10,
26  inclusive,

27             Counter-Defendants.

28

# <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................... 2

    A.   Fortier's Authentic Editions and Mixprint Brand and Technology ................ 2

    B.   Discussions with Macroverse and the MOU ..................................................... 2

    C.   Consulting Agreements with Counter Defendants ........................................... 3

    D.   Archival Comics ................................................................................................ 3

III.  LEGAL STANDARDS ............................................................................. 4

    A.   Fed. R. Civ. P. 12(b)(6): Failure to State a Claim ........................................... 4

    B.   Fed. R. Civ. P. 9(b): Heightened Pleading for Fraud ..................................... 4

IV.  ARGUMENT ............................................................................................ 5

    A.   The Court Should Dismiss Macroverse's Breach of Fiduciary Claims (Counts 4 and 5) ................................................................................................ 5

         1.   Macroverse Fails To Allege Facts Necessary To Sustain a Breach of Fiduciary Duty Claim ................................................... 5

             a.   Macroverse fails to adequately plead that Fortier and Richie had a fiduciary relationship with Macroverse ............... 5

             b.   Macroverse fails to adequately plead breach of a fiduciary duty. .......................................................................... 6

             c.   Macroverse fails to plead proximate damage. ......................... 7

         2.   Macroverse Fails to State a Plausible Claim That Richie Aided and Abetted Any Breach of Fiduciary Duty ............................... 8

    B.   Macroverse's Interference with Prospective Economic Relations Claims Should Be Dismissed ..................................................................... 10

         1.   Defendant's Intentional Interference with Prospective Relationship Counterclaim Fails to State a Plausible Claim ............. 10

             a.   Macroverse fails to plead specific, protectable "prospective relationships." ................................................ 10

             b.   Knowledge is pled only at a conclusory level. ...................... 11

             c.   Macroverse does not identify an "intentional act designed to disrupt" the identified relationship. ..................... 11

   d. Macroverse fails to plead actual disruption or causation. ........ 12

   e. Macroverse does not plead that Counter-Defendants acts proximately caused Macroverse's purported economic harm. ....................................................................................... 13

   f. No "independently wrongful" conduct is alleged. .................. 13

  2. Macroverse's Negligent Interference with Prospective Relationship Counterclaim Fails to State a Plausible Claim .............. 14

 C. The Court Should Dismiss Trademark Infringement Claims ..................... 15

  1. Macroverse Fails to Plead Facts Supporting a Trademark Infringement Claim Under Lanham Act (Count 10)......................... 15

   a. Macroverse Alleges No Registered Mark................................ 15

   b. Macroverse Fails to Plead Facts Purporting to Show Infringement ............................................................................ 16

  2. Macroverse Fails to Plead Facts Supporting a Common Law Trademark Infringement Claim ............................................................ 16

 D. Macroverse Failed to Allege Facts to State a Claim for its Fraud, Misrepresentation, and Concealment Counterclaims.................................... 18

  1. Macroverse Fails to Plead Its Fraud (Intentional Misrepresentation) Counterclaim with Particularity ......................... 19

   a. No particularized false statement of past or existing fact. ....... 19

   b. Macroverse does not allege any facts relating to Counter-Defendants' scienter.............................................................. 20

   c. Macroverse does not plead facts even suggesting intent to induce reliance. ..................................................................... 21

   d. Macroverse does not allege facts supporting justifiable (and actual) reliance................................................................ 21

   e. Macroverse does not plead proximate, out-of-pocket damages. ................................................................................ 22

  2. Macroverse Fails to Plead Its Fraud (Negligent Misrepresentation) Counterclaim with Particularity .......................... 23

  3. Macroverse Fails to Plead Its Fraud (Concealment) Counterclaim with Particularity........................................................ 24

V. CONCLUSION................................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Addison Navone, LLC v. Travelers Prop. Cas. Co. of Am.*
2019 WL 1746035 (C.D. Cal. Apr. 16, 2019) ....................................................14

*Adray v. Adry-Mart, Inc.*
76 F.3d 984 (9th Cir. 1995) ...............................................................................17

*Alliance Mortg. Co. v. Rothwell*
10 Cal. 4th 1226 (1995) ...............................................................................22, 23

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)........................................................................4, 7, 8, 13

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)........................................................................4, 7, 8, 13

*Belodoff v. Netlist, Inc.*
2008 U.S. Dist. LEXIS 45289 (C.D. Cal. May 30, 2008)................................24

*Bigler-Engler v. Breg, Inc.*
7 Cal.App.5th 276 (2017) ....................................................................................25

*Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*
2017 WL 3485760 (C.D. Cal. Feb. 21, 2017) ...................................................14

*Casey v. U.S. Bank Nat'l Ass'n*
127 Cal.App. 4th 1138 (2005) ........................................................................8, 9

*Cleveland v. Johnson*
209 Cal.App.4th 1315 (2012) ...............................................................................5

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*
911 F.2d 242 (9th Cir. 1990) ...............................................................20, 21, 22

*Credit One Corp. v. Credit One Financial, Inc.*
661 F.Supp.2d 1134 (C.D.Cal.2009) ................................................................17

*Curley v. Gen. Motors LLC*
Case No.: 18-CV-2398 W (RBB), 2019 WL 4316260
(S.D. Cal. Jan. 24, 2019)…………………………………………………………5

*Damabeh v. 7-Eleven, Inc.*
   2013 U.S. Dist. LEXIS 66565 ........................................................15

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*
   11 Cal.4th 376 (1995) ........................................................10, 13

*Destfino v. Reiswig*
   630 F.3d 952 (9th Cir. 2011) ........................................................12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*
   751 F.3d 990 (9th Cir. 2014) ........................................................4

*Enea v. Jones*
   No. 14-cv-01526-JD, 2014 WL 3956559 (N.D. Cal. Aug. 12, 2014)................6

*Engalla v. Permanente Med. Grp., Inc.*
   15 Cal. 4th 951 (1997) ........................................................21

*Genfit S. A. v. Cymabay Therapeutics, Inc.*
   No. 21-cv-00395-MMC, 2022 WL 195650 (N.D. Cal. Jan. 21, 2022) ...............6

*Graham v. Bank of Am., N.A.*
   226 Cal. App. 4th 594 (2014) ........................................................19, 25

*Hanginout, Inc. v. Google, Inc.*
   54 F. Supp. 3d 1109 (S.D. Cal. 2014)........................................................17, 18

*Jones v. ConocoPhillips Co.*
   198 Cal. App. 4th 1187 (2011) ........................................................25

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ........................................................passim

*Knox v. Dean*
   205 Cal.App.4th 417 (2012) ........................................................5

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal. 4th 1134 (2003) ........................................................7, 10, 12, 13

*Lange v. TIG Ins. Co.*
   68 Cal. App. 4th 1179 (1998) ........................................................14, 15

*Lazar v. Superior Court*
   12 Cal. 4th 631 (1996) ........................................................19

*LiMandri v. Judkins*
    52 Cal.App.4th 326 (1997) ................................................................15, 25

*Luxpro Corp. v. Apple Inc.*
    No. 10-CV-03058, 2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) .............11, 12

*Maya v. Centex Corp.*
    658 F.3d 1060 (9th Cir. 2011) ..............................................................4

*Mitchell v. Gonzales*
    54 Cal. 3d 1041 (1991) ........................................................................7

*Moore v. Kayport Package Exp., Inc.*
    885 F.2d 531 (9th Cir. 1989) ...............................................................21

*North American Chemical*
    59 Cal. App. 4th at 786-90 ...................................................................15

*Optimal Pets, Inc. v. HealthyPets, Inc.*
    877 F. Supp. 2d 953 (C.D. Cal. 2012) ....................................................17

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*
    50 Cal. 3d 1118 (1990) ........................................................................7

*PhoneDog v. Kravitz*
    2011 WL 5415612 ................................................................................15

*Rearden LLC v. Rearden Commerce, Inc.*
    683 F.3d 1190 (9th Cir. 2012) ..............................................................16

*Service by Medallion, Inc. v. Clorox Co.*
    44 Cal. App. 4th 1807 (1996) ...............................................................23

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*
    983 F. Supp. 1303 (N.D. Cal. 1997) ......................................................11

*Sky Billiards, Inc. v. WolVol, Inc.*
    2016 U.S. Dist. LEXIS 193629 .............................................................15

*Small v. Fritz Cos., Inc.*
    30 Cal. 4th 167 (2003) .................................................................21, 22, 23

*Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*
    No. 20-CV-02453, 2021 WL 689914 (S.D. Cal. Feb. 23, 2021) ...................11

*Sparling v. Bank of Am., N.A*,
  2018 WL 5099728 .................................................................................15

*Stone Brewing Co., LLC v. Molson Coors Beverage Co.*
  2024 WL 5244556 (9th Cir. 2024) .....................................................17

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*
  875 F.3d 426 (9th Cir. 2017), abrogated on other grounds by
  *Stone Brewing Co., LLC v. Molson Coors Beverage Co.*,
  2024 WL 5244556 (9th Cir. 2024) …………………………..……..……..16, 18

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007) .....................................................passim

*Sybersound Recs., Inc. v. UAV Corp.*
  517 F.3d 1137 (9th Cir. 2008) ......................................................10, 11

*Tarmann v. v. State Farm Mut. Auto. Ins. Co.*
  2 Cal. App. 4th 153 (1991) ...........................................................23, 24

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*
  2015 WL 12746208 (C.D. Cal. Oct. 30, 2015) ...................................24

*Vasili v. ART Corporate Solutions, Inc.*
  2015 U.S. Dist. LEXIS 90086 .........................................................15

*Vess v. Ciba-Geigy Corp. U.S.A.*
  317 F.3d 1097 (9th Cir. 2003) .....................................................passim

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*
  42 Cal. App. 4th 507 (1996) ..............................................................7

*Wolf v. Superior Court*
  107 Cal.App.4th 25 (2003) ................................................................5

Statutes

Lanham Act § 32, 15 U.S.C. § 1114(1) ...................................................16

Other Authorities

Fed. R. Civ. P.

Rule 9 ................................................................................................26
Rule 9(b) ......................................................................................passim
Rule 12 ..............................................................................................16
Rule 12(b)(6).................................................................................passim

Plaintiff and Counter-Defendant Adam Fortier and Counter-Defendants Archival Comics LLC and Ross Richie move to dismiss Counterclaimant Macroverse Media, Inc.'s counterclaims 4-5, 7-8, and 10-14 pursuant to Fed. R. Civ. P. 12(b)(6).

# I.   **INTRODUCTION**

Macroverse's counterclaims attempt to characterize business disappointment as fraudulent conduct. But stripped of conclusory statements, Macroverse fails to state many claims as a matter of law and fails to comply with Rule 9(b)'s particularity requirement.

First, Macroverse's breach of fiduciary duty claims (Counts 4 and 5) necessarily rest on the premise that an outside, independent contractor owes fiduciary duties to Macroverse. California law does not impose such duties in an arm's-length contractor relationship, and the counterclaims allege no facts creating a special or agency relationship between Fortier and Macroverse. The derivative "aiding and abetting" claim consequently falls with the primary breach of fiduciary duty claim.

Second, in its interference claims (Counts 7 and 8), Macroverse alleges it had "economic relationships" with "various licensors, including Marvel and DC," that "were disrupted," but identify no concrete prospective deal, no dates, no decision-maker, no probability facts, and no "independently wrongful" act. That is not enough under controlling California and Ninth Circuit precedent to sustain its claims.

Third, Macroverse's Lanham Act (Count 10) and common law (Count 11) trademark infringement claims also fail to state a claim. Macroverse's allegations fail to allege infringing use and the applicable law to support its common law claims.

Finally, in its fraud-based counts (Counts 12–14), Macroverse does not come close to meeting the particularity requirement of Rule 9(b). Macroverse fails to plead the who, what, when, where, and how of any alleged misrepresentation. Instead, Macroverse's claims rely on vague, forward-looking statements about "capability" and "scale," as opposed to false, presently-known facts. Further, Macroverse impermissibly aggregates all "Counter-Defendants" into its bald claims without alleging any specific attribution from any of them. As such, these claims fail as a matter of law.

For these reasons, the Court should dismiss Counts 4-5, 7-8, and 10-14 under Fed. R. Civ. P 12(b)(6).

## II. STATEMENT OF FACTS

### A. *Fortier's Authentic Editions and Mixprint Brand and Technology*

Mr. Fortier is a leader in the comic book industry with decades of experience in publishing, licensing, and high-quality reproduction of collectible comic books. Dkt. 1 at ¶ 14. Prior to any dealings with Macroverse, Mr. Fortier independently developed the *Authentic Editions* product line and the *Mixprint* technology and methodology. *Id.*

Fortier's *Authentic Editions* system encompasses proprietary technology, workflows, and sourcing methodology for printing collectible comic books to exacting specifications. Dkt. 1 at ¶ 15. The *Mixprint* technology is a related proprietary system developed by Fortier for enhanced workflows and output customization. *Id.* Fortier also secured and maintains exclusive manufacturing arrangements with a specialty printer, as well as established relationships with licensors and rights holders. *Id.*

### B. *Discussions with Macroverse and the MOU*

In July 2024, Fortier and Macroverse executed a short MOU outlining general business concepts for a potential collaboration. Dkt. 1 at ¶ 16. The MOU expressly contemplated that the parties would negotiate and execute a subsequent long-form agreement to govern the relationship in detail. *Id.* It was intended as a framework for finalizing a later agreement, not as a binding contract, except for certain discrete provisions—such as confidentiality—that were expressly agreed to be binding.

The MOU repeatedly refers to the need for the parties to sign a later agreement:

- **"Execution:** This MOU will serve as the basis for drafting a long-form agreement by Macroverse's attorney. Both parties agree to the terms outlined above and will work together in good faith to finalize and sign the formal long-form consulting agreement;"

- "Macroverse and Adam hereby agree that this Memorandum of Understanding ("MOU") sets forth the principal terms of a long form consulting agreement ***to be signed by the parties***;"

- "The parties hereto have signed this MOU as a reflection of their understanding of the principal terms ***of the long-form agreement contemplated hereby***.";

- "Adam will perform all consulting services as an independent contractor, **pursuant to a long form consulting agreement** to be prepared by Macroverse's attorneys."

Dkt. 15, Ex. B (excerpts and emphasis added). Most of the terms in the MOU are written in future tense as to what the parties would later seek to finalize:

- "Macroverse **will engage** Adam as a consultant to (a) create, produce, print, market, and distribute replicas…;"

- "Adam **will be awarded** a number of Macroverse stock shares equivalent to 3% of all of Macroverse's outstanding shares…;"

- "Adam **will document**, disclose, and deliver all technology, processes, and methods needed to create Authentic Editions to Macroverse…"

*Id.* (excerpts and emphasis added). As explained in Fortier's Complaint, Macroverse never issued Mr. Fortier any equity or finalized an employment relationship, and it never executed any long-form agreement identifying the specific intellectual property it sought to acquire under the MOU. Dkt. 1, at ¶ 19.

### C.    *Consulting Agreements with Counter Defendants*

Per the MOU, Macroverse engaged Fortier as "an independent contractor for Macroverse." *Id.* at §B.1; *see also id.* at §A.1. Macroverse's counterclaims do not allege that Fortier was ever an officer, director, or employee of Macroverse, or that Fortier ever had actual control of Macroverse is some other manner. *See* Dkt. 15. Similarly, Macroverse alleges that it also only retained Richie as a consultant to assist with the "Authentic Editions" line. *See* Dkt. 15, Exhibit. A ("Counterclaims") at ¶¶ 8, 35(b). Macroverse pleads that Richie was engaged as a to provide "strategy and advice." *Id*. But, as with Fortier, Macroverse's counterclaims do not allege that Richie was in a *recognized* fiduciary role at Macroverse. Dkt. 15. Nor does Macroverse plead that its relationship with Richie was exclusive or prohibited competition in any way. *Id*.

### D.    *Archival Comics*

Macroverse alleges Authentic Editions, LLC (now Archival Comics LLC) formed on or about May 28, 2025, by Fortier and Richie, to divert opportunities with Marvel, DC, and others from Macroverse. Dkt. 15, Ex. A at ¶¶ 15, 51–52. But, Macroverse does

not allege anything about Archival Comics' governance, ownership percentages, assets, contracts, or any specific transaction or act tied to the entity. *See* Dkt. 15, Ex. A at ¶¶ 15, 51, 94–96, 104–111, 113–120, 137–148.

## III.    LEGAL STANDARDS

### A.    *Fed. R. Civ. P. 12(b)(6): Failure to State a Claim*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts accept well-pleaded facts as true but "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 555). The inquiry is context-specific: the well-pleaded facts must "plausibly give rise to an entitlement to relief," not merely a "sheer possibility" of unlawful conduct. *Iqbal*, 556 U.S. at 678–79; *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011) (court credits factual allegations, not legal conclusions); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–97 (9th Cir. 2014) (plausibility requires more than a conclusory narrative).

### B.    *Fed. R. Civ. P. 9(b): Heightened Pleading for Fraud*

Fraud claims must be pleaded with particularity pursuant to Fed. R. Civ. P 9(b). A court should dismiss a claim of fraud when the allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1107 (9th Cir. 2003). As confirmed by the Ninth Circuit:

> Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged ... [A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.

*Id.* at 1106 (emphasis in original, internal citations, and quotation marks omitted); *see also Curley v. Gen. Motors LLC*, Case No.: 18-CV-2398 W (RBB), 2019 WL 4316260 (S.D. Cal. Jan. 24, 2019) (granting motion to dismiss fraud claims for misrepresentation because the complaint lacked particularity and because the complaint failed to allege the existence of a fiduciary relationship or transaction giving rise to the duty to disclose).

## IV.   ARGUMENT

### A.   *The Court Should Dismiss Macroverse's Breach of Fiduciary Claims (Counts 4 and 5)*

#### 1.   Macroverse Fails To Allege Facts Necessary To Sustain a Breach of Fiduciary Duty Claim

In Count 5, Macroverse alleges that Fortier and Richie breached a fiduciary duty to Macroverse.[1] For as breach of fiduciary duty claim to survive, Macroverse must plausibly plead: (i) the existence of a fiduciary relationship; (ii) its breach; and (iii) damage proximately caused by that breach. *Knox v. Dean*, 205 Cal.App.4th 417, 432–433 (2012). Macroverse's breach of fiduciary duty claim (claim 4) necessarily fails because Macroverse has not, and cannot, plausibly plead, at least, the first element—that Fortier owed a fiduciary duty to Macroverse—because he did not.

Whether a fiduciary duty exists is generally a question of law. "Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another or must enter into a relationship which imposes that undertaking as a matter of law." *Cleveland v. Johnson*, 209 Cal.App.4th 1315, 1338 (2012). "A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." *Wolf v. Superior Court* 107 Cal.App.4th 25, 29 (2003).

##### a.   *Macroverse fails to adequately plead that Fortier and Richie had a fiduciary relationship with Macroverse*

---

[1] Macroverse does not allege that Archival Comics breached a fiduciary duty.

Macroverse's allegations wholly fail to establish a fiduciary relationship between Macroverse and either Fortier nor Richie. Instead, Macroverse pleads that it engaged both individuals as independent contractors or consultants. Dkt. 15, Ex. A at ¶¶ 31(a), 35(b), 37, 54. Under California law, independent contractors do not owe fiduciary duties. *See Enea v. Jones*, No. 14-cv-01526-JD, 2014 WL 3956559, at *3 (N.D. Cal. Aug. 12, 2014) (finding no fiduciary duty created by agreement that "specifically refer[red] to [party] as a 'contractor'" and dismissing cause of action breach of fiduciary duty); *Genfit S. A. v. Cymabay Therapeutics, Inc.*, No. 21-cv-00395-MMC, 2022 WL 195650, at *7-8 (N.D. Cal. Jan. 21, 2022) (noting that no fiduciary relationship existed where the agreement referred to the party as an "independent contractor", despite the fact that plaintiff claimed to place "its full trust and confidence" in the party and dismissing cause of action for aiding and abetting breach of fiduciary duty). Macroverse's breach of fiduciary duty claims necessarily fail for this reason alone.

> b.    *Macroverse fails to adequately plead breach of a fiduciary duty.*

Even if, *arguendo*, Macroverse sufficiently pled the existence of a fiduciary relationship (it did not), Macroverse's counterclaims still fail to sufficiently plead that Fortier or Richie breached those duties. Macroverse baldly avers that: (1) Fortier made "efforts to usurp Authentic Editions' business opportunities, which he promised would be pursued for and on behalf of Macroverse, by setting up a secret limited liability company for the purpose of diverting said opportunities away from Macroverse without its knowledge;" and (2) intentional diversion and embezzlement of and/or misuse of funds which were provided to him by Macroverse for the purpose of funding the production of Authentic Editions. Dkt. 15, Ex. A at ¶¶ 82, 89.  Neither allegation has merit.

First, with respect to Fortier's purported efforts to usurp business opportunities, Macroverse fails to plead *any specific* business opportunity that Fortier or Richie allegedly attempted to usurp. Nor does Macroverse provide anything beyond conclusory statements about Fortier's purported "intentional diversion/misuse of funds," or identify any particular amount, transaction, recipient, or mechanism corresponding to such

"usurped" business opportunities. Moreover, since these claims sound in fraud in that they invoke "malice, oppression, and/or fraud," they trigger Rule 9(b)'s heightened standard, which requires pleading "the who, what, when, where, and how" of the misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04, 1106 (9th Cir. 2003); *see also* Dkt. 15, Ex. A at ¶ 85. Macroverse pleads none of that. As such, Macroverse's claims fail as a matter of law.

c.    *Macroverse fails to plead proximate damage.*

Macroverse's counterclaims also fail to plausibly allege that any purported breach by Fortier or Richie proximately caused a cognizable injury. For example, allegations that Fortier missed deadlines (Dkt. 15, Ex. A at ¶¶ 41, 43, 46) or did not return books (Dkt. 15, Ex. A at ¶ 55) are not linked to claimed losses. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (conclusory allegations and "naked assertions" devoid of factual enhancement do not state a claim); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007) (plausibility requires factual content connecting conduct to injury).

For any tort-based theory (e.g., breach of fiduciary duty, interference, aiding and abetting), California requires a substantial factor causal link between the challenged conduct and the alleged harm—not mere temporal association or speculation. *See Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052 (1991) (substantial-factor standard). However, fatal to its counterclaims, Macroverse pleads no facts identifying a lost customer, contract, deal term, or opportunity that was actually disrupted and lost because of defendants' acts. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–54 (2003) (interference requires disruption and resulting economic harm; speculative or attenuated theories are insufficient); *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 523–27 (1996) (plaintiff must identify specific economic relationships; lost "market share" or vague expectancy is not enough); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (element of interference includes disruption and resulting damage).

Macroverse's counterclaims also fail because they do not allege any facts tying any

alleged breaches to a specific, quantifiable injury (e.g., a usurped deal). Allegations that are "consistent with" harm but do not plausibly connect defendants' conduct to particularized loss are insufficient. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 557.

For at least the foregoing reasons, the Court should dismiss Count 4 with prejudice.

### 2.    Macroverse Fails to State a Plausible Claim That Richie Aided and Abetted Any Breach of Fiduciary Duty[2]

To support an aiding and abetting claim, California law requires pleading that the alleged aider and abettor (i) had actual knowledge of the specific primary breach and (ii) gave substantial assistance to that breach. *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App. 4th 1138, 1144–45 (2005) (setting forth "*Casey* elements"). Macroverse does neither.

As an initial matter, Macroverse cannot show any person breached a fiduciary duty for the reasons stated in Section IV.A.1. Because Count 4 fails to plead any fiduciary relationship in the first place, there is no primary breach of a fiduciary duty that anyone else could knowingly "aid and abet."

Macroverse also pleads no facts that show Richie (or Archival Comics[3]) was actually aware that Fortier (or anyone else) had a fiduciary relationship with Macroverse. The default rule in California is that independent contractors do not have fiduciary duties. *Supra*, Section IV.A.1.a. Thus, pleading that Richie purportedly knew of Fortier's independent contracting relationship with Macroverse is insufficient to plead that Richie had reason to know of a purported fiduciary relationship between Macroverse and Fortier, much less that Fortier's actions were potential breaches of that relationship.

Macroverse's "substantial assistance" allegations are likewise defective. *See* Dkt. 15, Ex. A at ¶ 95. Macroverse impermissibly lumps four different defendants together,

---

[2] Notably, Macroverse does not allege that Fortier aided and abetted any breach of a fiduciary claim. Presumably, Macroverse recognizes it has no allegations that any other person had a fiduciary duty to Macroverse that Fortier could possibly aid and abet.

[3] Macroverse pleads that Fortier is a founder of Archival Comics, but never explains how Fortier/Archival could aid and abet his Fortier's own purported breaches of a fiduciary duty.

failing to differentiate "who did what, when, and how"—a pleading flaw that independently warrants dismissal. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). While Macroverse alleges that Fortier and Richie formed "Authentic Editions, LLC [now, Archival Comics]" around May 28, 2025, in California, merely "setting up a … limited liability company" does not constitute substantial assistance to a fiduciary breach absent facts tying that entity to a specific, protectable opportunity belonging to Macroverse and explaining how the formation substantially advanced a breach (or how Fortier's own company could possibly "aid and abet" Fortier's actions). *See* Dkt. 15, Ex. A at ¶ 51 82(a); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144–53 (2005) (aiding-and-abetting breach of fiduciary duty requires actual knowledge of the specific primary wrong and substantial assistance; conclusory allegations are insufficient). Likewise, the bare assertion that defendants "divert[ed] or misus[ed] funds" identifies no amounts, transactions, recipients, or mechanisms.

Moreover, Macroverse's aiding and abetting allegations (such as setting up secret organizations and diverting/misusing funds) are "grounded in fraud," and as such, must satisfy Rule 9(b)'s particularity requirement. *See supra,* Section IV.A.1; *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106–08 (9th Cir. 2003). But Macroverse's counterclaims do not. Instead, Macroverse lumps multiple parties together and pleads no particularized facts showing any defendant's fraudulent act or substantial assistance to a specific breach. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

In short, even setting aside the dispositive failure of Count 4 (no fiduciary duty), Count 5 does not allege the *Casey* elements with the requisite specificity. Macroverse, fails to plead actual knowledge of a fiduciary duty, knowledge of a particular breach, and concrete acts of substantial assistance by Richie. Count 5 should therefore be dismissed with prejudice as derivative and, independently, for failure to state a claim.

**B.** ***Macroverse's Interference with Prospective Economic Relations Claims Should Be Dismissed***

1. <u>Defendant's Intentional Interference with Prospective Relationship Counterclaim Fails to State a Plausible Claim</u>

To state a claim for intentional interference with prospective economic relations, Macroverse must allege: (a) an existing economic relationship with a third party containing a probable future economic benefit; (b) the defendant's knowledge of that relationship; (c) intentional [wrongful] (or negligent) acts designed to disrupt the relationship; (d) actual disruption; (e) economic harm; and, for intentional interference, (f) conduct that is "independently wrongful"—i.e., wrongful by some legal measure other than the interference itself. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392–93 (1995); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153–54 (2003); *see also Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008). "Intentional" means the actor had the purpose to disrupt the specific relationship or knew interference was certain or substantially certain to occur as a result of the act. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–54 (2003)

a. ***Macroverse fails to plead specific, protectable "prospective relationships."***

Macroverse counterclaims are based on generic references to "publishers," "licensors," and "Marvel and DC." *See* Dkt. 15, Ex. A at ¶¶ 104–105, 113. None of the allegations identify any concrete relationships (*e.g.*, no decision-maker, proposal, term sheet, timeline, or probability facts), and therefore, cannot plausibly allege a relationship "containing the probability of future economic benefit." *Korea Supply*, 29 Cal. 4th at 1153–54 (plaintiff must allege a specific economic relationship with a third party "containing the probability of future economic benefit," plus actual disruption and resulting harm). Even the lone allegation of "ongoing … negotiations with Marvel and DC" (Dkt. 15, Ex. A at ¶ 11) is insufficient—especially given the absence of any allegation that Macroverse had an exclusive right or commitment with Marvel or DC—

because there are no facts identifying a decision-maker, timeline, terms, or the probability of consummation. *See, e.g.*, *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1312 (N.D. Cal. 1997) (plaintiff failed to plead existence of economic relationship given absence of allegations it was in the midst of negotiations with third parties or that third parties ended negotiations based on alleged interference); *accord Soil Retention Prod., Inc. v. Brentwood Indus., Inc*., No. 20-CV-02453, 2021 WL 689914, at *19 (S.D. Cal. Feb. 23, 2021) (dismissal warranted because plaintiff "never alleges which entities, if any, it was negotiating with, what the terms were, when the contracts were being negotiated . . . and how much money, if any, Plaintiff lost as a result").

### b.    *Knowledge is pled only at a conclusory level.*

As part of its counterclaims, Macroverse alleges that Counter-Defendants "helped cultivate and pursue" relationships with various licensors and publishers. Dkt. 15, Ex. A at ¶¶ 105-106, 113-114. But these allegations only reflect generalized participation and Macroverse does not plead actual disruption or a specific relationship with a probability of future economic benefit (e.g., a decision-maker, timeline, terms, or a failed negotiation). *See Luxpro Corp. v. Apple Inc*., No. 10-CV-03058, 2011 WL 1086027, at *9-10 (N.D. Cal. Mar. 24, 2011) (dismissing claim for intentional interference with prospective economic advantage where plaintiff alleged defendants "knew of" and "wrongfully interfered," but pled no facts showing knowledge of specific relationships or how any relationship ended—"a bare legal conclusion"); *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151–52 (9th Cir. 2008) (affirming dismissal of intentional interference with prospective economic relations because plaintiff's allegation that "ongoing business and economic relationships" were disrupted was conclusory and failed to allege "actual disruption" such as a lost contract or a failed negotiation).

### c.    *Macroverse does not identify an "intentional act designed to disrupt" the identified relationship.*

The "[i]ntentional" element means that Macroverse must allege that Fortier, Richie, and Archival acted for the purpose of disrupting the specific relationship or knew

1    disruption was certain or substantially certain to result. *See Korea Supply*, 29 Cal. 4th at

2    1154–55. Macroverse alleges only that "Counter Defendants" communicated with

3    Marvel/DC and "redirected" opportunities (Dkt. 15, Ex. A ¶ 106(a)–(c)). This vague

4    allegation does not show a purpose to disrupt any identified pending deal (with a named

5    counterpart, terms, and timeline) or substantial certainty of disruption.

6       By contrast, in *Korea Supply*, the defendant allegedly secured a single, identified

7    defense contract by bribing officials—conduct aimed at derailing the plaintiff's specific

8    bid and thus satisfying the "purpose or substantial certainty" requirement. 29 Cal. 4th at

9    1141–45, 1154–55. Macroverse's fact-free allegations stand in stark contrast; they plead

10   no facts showing defendants acted to disrupt a particular deal or knew disruption was

11   substantially certain. Likewise, in *Luxpro Corp.,* the court dismissed claim for intentional

12   interference with prospective economic advantage where the complaint asserted

13   defendants "knew of" and "wrongfully interfered," but alleged no facts about which

14   relationships, how they ended, or what intentional acts were taken to disrupt them.

15   Macroverse's allegations mirror *Luxpro*: saying defendants "communicated with

16   Marvel/DC" and "redirected" opportunities—without who/what/when/where/how—is the

17   same bare legal conclusion.

18       Finally, Macroverse impermissibly lumps "Counter-Defendants" together in its

19   allegations. In *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007), and *Destfino*

20   *v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011), the Ninth Circuit rejected "everyone did

21   everything" allegations and required the who/what/when/where/how as to each

22   defendant. Here, the pleading never attributes a defendant-specific intentional act

23   designed to disrupt a particular relationship.

24            d.     *Macroverse fails to plead actual disruption or causation.*

25       Macroverse's counterclaims also never identifies a deal lost, a meeting canceled, or

26   any change in position by Marvel, DC, or any other third party attributable to Counter-

27   Defendants' acts. *See* Dkt. 15, Ex. A at ¶¶ 105–111, 114–120. Merely asserting that

28   Macroverse's relationships were "disrupted" (Dkt. 15, Ex. A at ¶¶ 107, 117) and that it

"was harmed as a result of this disruption" (Dkt. 15, Ex. A at ¶¶ 108, 118) is precisely the sort of conclusory allegation *Twombly/Iqbal* reject absent facts identifying a specific lost deal, canceled meeting, or third-party change in position traceable to defendants' conduct. Absent facts showing that a specific prospective relationship was actually disrupted because of the defendants' identified conduct, the intentional interference theory fails.

   e.  *Macroverse does not plead that Counter-Defendants acts proximately caused Macroverse's purported economic harm.*

  Macroverse must allege that its economic harm was proximately caused by defendants' acts, not merely that it was "harmed." *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1165–66 (2003) (upholding proximate cause where plaintiff alleged its principal would have been awarded the contract but for defendant's conduct—e.g., lower bid, superior product—and the plaintiff thus lost a specific commission). Here, unlike *Korea Supply*, Macroverse identifies no lost award, no specific deal, and no revenue stream traceable to any defendant; it pleads only that relationships were "disrupted" and that it "was harmed," without facts tying a concrete loss to the alleged acts. *See* Dkt. 15, Ex. A at ¶¶ 107–109, 117–119. Beyond pleading that it was "harmed," Macroverse pleads no facts linking any lost revenue, margin, or opportunity to any specific disrupted relationship.

   f.  *No "independently wrongful" conduct is alleged.*

  To establish intentional interference with prospective relationship, Macroverse must also allege conduct that is "wrongful by some legal measure other than the interference itself." *Della Penna*, 11 Cal. 4th at 392–93; *Korea Supply*, 29 Cal. 4th at 1159. Here, Macroverse's pleads Counter-Defendants claimed ownership/rights in "Authentic Editions" and "diverted" opportunities (Dkt. 15, Ex. A at ¶¶ 106(a)–(c)). Labels aside, Macroverse pleads no underlying unlawful act. To the extent it gestures at trademark predicates, those depend on conclusory ownership assertions (that Macroverse owns the Authentic Editions mark/technology) that are not plausibly pled for the reasons explained in Section IV.C below. A defective predicate unlawful act cannot supply the

required "independent wrong." *See Carroll Shelby Wheel Co., Inc. v. Carroll Shelby Tr.*,
2017 WL 3485760, at *8 (C.D. Cal. Feb. 21, 2017) (predicate must be legally wrongful
beyond interference itself). Nor can breach-of-contract theories fill the gap. *See id.;
Addison Navone, LLC v. Travelers Prop. Cas. Co. of Am.*, 2019 WL 1746035, at *3 (C.D.
Cal. Apr. 16, 2019) (independently wrongful means proscribed by a determinable legal
standard). And insofar as Macroverse's currently unidentified "wrong act" sounds in
fraud/deception (e.g., "false" ownership claims, "concealment," etc.), its pleading also
lacks the particularity Rule 9(b) demands. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d
1097, 1106–08 (9th Cir. 2003).

2.    <u>Macroverse's Negligent Interference with Prospective Relationship
Counterclaim Fails to State a Plausible Claim</u>

California also recognizes a negligent variant of interference with a prospective
economic relationship. This cause of action which requires the same first five elements of
intentional interference (specific relationship with probability of economic benefit,
knowledge, wrongful/negligent conduct, actual disruption, and economic harm)
(described above with respect to Count 7), but also adds a cognizable duty of care owed
by defendant to plaintiff. *See Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187 (1998)
(recognizing that negligent interference "arises only when the defendant owes the
plaintiff a duty[.]"). Macroverse fails to plead each of those elements.

For the same reasons intentional claim fails (*see supra*, Section IV.B.1),
Macroverse pleads no specific protectable relationship with a probable future benefit, no
identified negligent act (it merely re-labels the same intentional 'ownership/diversion'
accusations as "negligence"), no allegation of actual disruption by a named third party,
and no proximate economic harm tied to any defendant's conduct. *See Lange v. TIG Ins.
Co.*, 68 Cal. App. 4th 1179, 1187 (1998). Additionally, Macroverse fails to plead facts
establishing the cognizable duty of care for the negligence tort. California courts are
reluctant to impose negligence duties to avoid purely economic loss in arm's-length
commercial settings. *See North American Chemical*, 59 Cal. App. 4th at 786–90. In this

-14-

1    case, Macroverse pleads no facts establishing any duty of care owed by Fortier, Richie, or

2    Archival Comics in this arm's-length business context. *See PhoneDog v. Kravitz*, 2011

3    WL 5415612, at *9–10 (dismissing for lack of duty); *Sparling v. Bank of Am., N.A.,* No.

4    2018 WL 5099728, at *5 (same). Macroverse pleads an arm's-length consulting

5    relationship, not a special relationship giving rise to a tort duty. California imposes a

6    negligence duty only where the defendant undertakes a relationship or activity making

7    harm to the plaintiff reasonably foreseeable; otherwise, courts decline to create duties for

8    purely economic loss in commercial settings. *LiMandri*, 52 Cal. App. 4th at 351; *North*

9    *Am. Chem.*, 59 Cal. App. 4th at 786–90; *Lange*, 68 Cal. App. 4th at 1187. Here,

10    Macroverse alleges no facts showing Fortier, Richie, or Archival Comics owed a duty to

11    "safeguard" Macroverse's marks or licensing prospects. Courts routinely dismiss

12    negligent-interference claims on this basis. *See Sky Billiards, Inc. v. WolVol, Inc*., 2016

13    U.S. Dist. LEXIS 193629, at 18–20 (no duty beyond competition); *Vasili v. ART*

14    *Corporate Solutions, Inc.*, 2015 U.S. Dist. LEXIS 90086, at 18–19 (failure to allege how

15    defendants owed a duty); *Damabeh v. 7-Eleven, Inc.*, 2013 U.S. Dist. LEXIS 66565, at

16    27–30 (bare duty allegation tied to business relationship insufficient; also no specific

17    relationship alleged).

18        For the reasons discussed above, the Court should dismiss Macroverse's

19    counterclaims for intentional and negligent interference under Rule 12(b)(6).

20    **C.**     ***The Court Should Dismiss Trademark Infringement Claims***

21        1.    <u>Macroverse Fails to Plead Facts Supporting a Trademark Infringement</u>

22           <u>Claim Under Lanham Act (Count 10)</u>

23        a.    *Macroverse Alleges No Registered Mark.*

24        Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), protects registered marks

25    owned by the plaintiff. Macroverse pleads no federal registration (no registration number,

26    ownership, or incontestability). A pending application is insufficient. *See* 15 U.S.C.

27    § 1114(1); *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1202–03 (9th Cir.

28    2012) (reciting Lanham Act elements and explaining that ownership hinges on priority of

1  use; registering first is not enough). Any § 1114 theory therefore fails as a matter of law

2  and should be dismissed.

3           b.      *Macroverse Fails to Plead Facts Purporting to Show
                    Infringement*

4

5           Macroverse also pleads no facts purporting to show infringement. Macroverse's

6  entire allegation relating to purportedly infringing use reads:

7           Despite the foregoing knowledge, and without Macroverse's consent,
            Counter-Defendants Fortier, Saeva, Archival and Richie are using a mark
8           that is identical to Macroverse's AUTHENTIC EDITIONS Mark to promote,
            market, sell, offer to sell, and advertise facsimiles of original comic books
9           and related goods and services.

10         Dkt. 15, Ex. A, at ¶ 131. But Macroverse does not identify a single example of

11  Counter-Defendants purported use of the AUTHENTIC EDITIONS Mark in commerce

12  to sell goods or services anywhere in its counterclaims. Macroverse's conclusory

13  allegation of "use" fails to meet Rule 12 pleading requirements.

14         Finally, Macroverse pleads its Lanham Act claim against undifferentiated

15  "Counter-Defendants," without alleging who used the mark, where, when, or how each

16  defendant supposedly infringed. Trademark liability is specific to individual defendants.

17  Lumping parties together with collective verbs does not suffice. *See, e.g., Swartz v.*

18  *KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

19         2.      <u>Macroverse Fails to Plead Facts Supporting a Common Law
                    Trademark Infringement Claim</u>

20

21         Common-law rights are also inherently territorial: "A plaintiff must plead and

22  prove that it is the senior user of the mark with sufficient market penetration to preclude

23  the defendant from using the mark in a specific geographic market." *Hanginout, Inc. v.*

24  *Google, Inc*., 54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014). Consistent with that

25  framework, common-law rights are inherently territorial: they extend only to areas where

26  the mark is known and recognized. *Stone Creek, Inc. v. Omnia Italian Design, Inc*., 875

27  F.3d 426, 436 (9th Cir. 2017) ("[C]ommon-law trademark rights extend only to the

28  territory where a mark is known and recognized, so a later user may sometimes acquire

rights in pockets geographically remote from the first user's territory."), abrogated on other grounds by *Stone Brewing Co., LLC v. Molson Coors Beverage Co.*, 2024 WL 5244556 (9th Cir. 2024).

Thus, to plead enforceable common-law rights in a geographic area, Macroverse must allege (1) senior user in that area, and (2) it has established legally sufficient market penetration. *See, e.g., Credit One Corp. v. Credit One Financial, Inc.*, 661 F.Supp.2d 1134, 1138 (C.D.Cal.2009) ("A party asserting common law rights must not only establish that it is the senior user, it must also show that it has 'legally sufficient market penetration' in a certain geographic market to establish those trademark rights." (quoting *Glow Indus. Inc. v. Lopez*, 252 F.Supp.2d 962, 983 (C.D.Cal.2002))). Courts evaluate market penetration using factors such as: "(1) the volume of sales; (2) growth trends; (3) the number of actual purchasers relative to potential customers; and (4) the amount of advertising*." Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995); *see also Optimal Pets, Inc. v. HealthyPets, Inc.*, 877 F. Supp. 2d 953, 958 (C.D. Cal. 2012).

Macroverse pleads none of this. Instead, it relies on bare assertions that it "owns" common-law rights in AUTHENTIC EDITIONS used "in commerce" for publishing/marketing collectible comics, that the phrase signifies Macroverse as the source, and that Counter-Defendants "used" the phrase in a manner likely to cause confusion. *See* Dkt. 15, Ex. A at ¶¶ 138–139, 141, 146–148. Macroverse also claims rights "throughout the United States" or "worldwide." *See* Dkt. 15, Ex. A at ¶ 140. Macroverse then asserts that its rights extend "worldwide" or "throughout the United States." *See* Dkt. 15, Ex. A at ¶ 140.

But Macroverse does not even identify which state's common law governs, nor does it allege which state or locality in which it claims prior use of AUTHENTIC EDITIONS, the date(s) of first use in any territory, the specific goods/services actually offered under the mark in that territory, or facts showing market penetration under the *Adray* factors. Vaguely asserting the territory as "worldwide" or "throughout the United States" is precisely the kind of non-territorial pleading common-law claims do not

permit. *See Stone Creek v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (common-law rights are territorial—limited to areas where the mark is known/recognized; remote-use defense requires good-faith use in a geographically remote are); *Hanginout*, 54 F. Supp. 3d at 1118 (denying PI on an unregistered mark where plaintiff failed to show market penetration in any particular geographic area; a website/iTunes presence and generalized "nationwide" reach were insufficient without evidence locating users/sales by area and other penetration factors).

Finally, Macroverse pleads its common law trademark claim against undifferentiated "Counter-Defendants," without alleging who used the mark, where, when, or how each defendant supposedly infringed. Trademark liability is specific to individual defendants. Lumping parties together with collective verbs does not suffice. *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

### D.   *Macroverse Failed to Allege Facts to State a Claim for its Fraud, Misrepresentation, and Concealment Counterclaims*

All three tort counts—fraud (Count 12), negligent misrepresentation (Count 13), and concealment (Count 14)—are grounded in fraud, and therefore, must meet Rule 9(b)'s heightened particularity requirement. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106–08 (9th Cir. 2003); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125–26 (9th Cir. 2009). Claims sounding in fraud may not rely on impermissible group pleading. Rather, the counterclaims must attribute each misrepresentation or omission to a specific defendant and specify that defendant's role. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

Here, Macroverse only offers purports fraud based on vague, forward-looking assertions and generalized "concealment," impermissibly lumps "Counter-Defendants" together, and fails to plead with particularity essential elements—an actionable misstatement of present/past fact (or a specific promise plus contemporaneous intent not to perform), a duty to disclose for concealment, and justifiable reliance and causation. *See*

*Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). The Court should dismiss these counterclaims under Rules 9(b) and 12(b)(6).

      1.    <u>Macroverse Fails to Plead Its Fraud (Intentional Misrepresentation) Counterclaim with Particularity</u>

To plead intentional misrepresentation, Macroverse had to allege with Rule 9(b) particularity: (a) a misrepresentation of past or existing fact (or a specific promise made without present intent to perform); (b) knowledge of falsity (or "scienter"); (c) intent to defraud (i.e., to induce reliance); (d) justifiable, actual reliance; and (e) resulting damage. *See Lazar v. Superior Cour*, 12 Cal. 4th 631, 638 (1996); *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605–06 (2014) (reiterates elements and confirms plaintiff must plead and prove actual, justifiable reliance and resulting damage); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (Rule 9(b) applies to fraud-based claims; plaintiff must allege the who, what, when, where, and how of the misrepresentation); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106–08 (9th Cir. 2003) (holding that Rule 9(b)'s particularity standard applies to all claims "grounded in fraud," not just those labeled as fraud). Rule 9(b) also forbids undifferentiated group pleading. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (rejecting "everyone did everything" allegations and requiring defendant-specific particulars).

      a.    *No particularized false statement of past or existing fact.*

A misrepresentation is a false statement of past or existing fact; forward-looking praise or general statements about quality/capacity are non-actionable puffery. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990). Here, Macroverse alleges no particular misrepresentation, but relies instead on forward-looking puffery, without any showing of reliance. Macroverse pleads that Fortier said he "could "produce and deliver…at scale," and that funds would be used to build "professional quality" equipment and a team, made "at or around" MOU execution and "throughout" the relationship. *See* Dkt. 15, Ex. A at ¶¶ 150, 152–53, 160, 162–63. These statements are vague, forward-looking capacity claims and quality opinions—not falsifiable statements

of present fact. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990) (puffery). Macroverse's counterclaims identify no dates (other than "at or around"), no quotations, no medium (email, meeting, slide deck), and no particulars of "how" the representations were conveyed. Rule 9(b) requires the "who, what, when, where, and how" for each alleged misrepresentation; Macroverse provides none in Count 12. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

Additionally, Macroverse alleges it paid "no less than $1.8 million" based on Fortier's "representations that the funds would be used to" (i) secure licenses, (ii) fund production costs (including a restoration team), (iii) build "professional-quality" equipment, (iv) hire staff, and (v) acquire rare comics for a "Comics Pool," supposedly made "at or around" MOU execution and "throughout" the relationship. *See* Counterclaims ¶ 152. Those are promises about future use of funds and generalized statements of capability/quality, not false statements of past or existing fact. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990) (nonactionable puffery). The pleading also fails Rule 9(b): it offers no "who, what, when, where, and how"—no quoted statements, dates (beyond "at or around"), medium (email/meeting), or identification of the specific decisionmaker to whom any statement was made. *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125–26 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Those are promises about future use of funds and generalized statements of capability/quality (e.g., 'professional-quality'), which are nonactionable puffery rather than false statements of past or existing fact. *Cook*, 911 F.2d at 246.

        b.    *Macroverse does not allege any facts relating to Counter-Defendants' scienter.*

Macroverse alleges, "upon information and belief," that statements were "knowingly false" or made with "reckless disregard." *See* Dkt. 15, Ex. A at ¶¶154–55. These conclusory allegations, without identifying contemporaneous facts showing why the statements were false when made (e.g., what technology was missing then, or what

Case No. 2:25-cv-07573-CV-SK
MOTION TO DISMISS COUNTERCLAIMS

known incapacity existed), do not meet Rule 9(b)'s particularity requirement. *See Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989)* (conclusory allegations made on information and belief are insufficient absent the factual basis for the belief).

### c. *Macroverse does not plead facts even suggesting intent to induce reliance.*

Macroverse only pleads that Fortier "intended" to induce Macroverse to hire him and fund the project. *See* Dkt. 15, Ex. A at ¶ 155. But Macroverse points to no document, meeting, or statement evidencing a purpose to induce reliance beyond the alleged statements themselves. Conclusory inducement allegations do not satisfy Rule 9(b). *See Vess*, 317 F.3d at 1106–08 (holding Rule 9(b) demands the who, what, when, where, and how of the alleged misconduct and rejects conclusory fraud averments—including intent—absent particularized facts, stated as to each defendant).

### d. *Macroverse does not allege facts supporting justifiable (and actual) reliance.*

Under California law, a fraud claim requires actual and justifiable reliance—i.e., "the plaintiff's action or inaction was induced by the misrepresentation," and the reliance was reasonable under the circumstances. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976 (1997); *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173–74 (2003). Under Rule 9(b), a plaintiff must link "the who, what, when, where, and how" of a particular misrepresentation to a particular decision it made in reliance (what was decided, by whom, when, and because of which statement). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009). Reliance is not just a conclusory result ("we spent money"), the pleading must allege the specifics of the reliance. *Small*, 30 Cal. 4th at 184-85. Reliance must also be justifiable—vague opinions or forward-looking praise do not reasonably induce reliance. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990) (holding that "consumer reliance will be induced by specific rather than general assertions").

Macroverse alleges it "took on significant debt," "directed financial resources,"

entered third-party agreements, and paid "no less than $1.8 million." *See* Dkt. 15, Ex. A at ¶¶ 151–53). But Macroverse never identifies a specific payment authorization or contract it executed, who at Macroverse approved it, when, and in response to which concrete statement by Fortier. Such allegations are insufficient to plead actual, justifiable reliance with the particularity Rule 9(b) requires. *See Kearns*, 567 F.3d at 1126; *Small v. Fritz Cos., Inc*., 30 Cal. 4th 167, 184 (2003) (reversing where the complaint failed to plead specific facts of reliance; requiring allegations that, if told the truth, plaintiff would have acted differently at identified times—general assertions of reliance are insufficient). Nor does Macroverse plead facts showing Fortier's intent to induce reliance at the time of any specific statement. The only allegations reciting statements were made "to induce" reliance (Dkt. 15, Ex. A at ¶¶ 155, 165) are formulaic conclusions that do not satisfy Rule 9(b) absent transaction-tied facts. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

        e.     *Macroverse does not plead proximate, out-of-pocket damages.*

Macroverse's counterclaims offer only generalized spend and downstream business choices, not a concrete out-of-pocket loss proximately caused by a particular false statement. Fraud damages in California require a pecuniary loss proximately caused by the misrepresentation, typically measured by the out-of-pocket rule—the difference between what the plaintiff gave and what it received—plus any consequential losses caused by the reliance. *See Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240–41 (1995) (fraud damages follow the out-of-pocket measure—"the difference between what the plaintiff gave and what he received"—and include only those consequential losses proximately caused by the misrepresentation; benefit-of-the-bargain recovery is generally unavailable in deceit actions).

Macroverse pleads only that it "took on significant debt," "directed financial resources," and paid "no less than $1.8 million," but it does not identify any transaction-level shortfall (what payment, for what item or service, when, and the difference between price paid and value received) or any consequential loss traceable to a particular false

statement. *See* Dkt. 15, Ex. A at ¶¶ 151–53, 161–63, 166–67. Nor does it allege what it received (equipment, books, production work) and why that consideration was worth less than the amounts paid. Conclusory spending and business decisions are not damages. *Service by Medallion, Inc. v. Clorox Co*., 44 Cal. App. 4th 1807, 1818–19 (1996) (finding purported reliance expenditures—investment in materials, hiring counsel, and lost business—were not damages proximately caused by the misrepresentation. Absent well-pleaded facts showing a proximate, out-of-pocket loss tied to a specific misrepresentation, the damages element fails. *See Alliance Mortg*., 10 Cal. 4th at 1240–41; *Small*, 30 Cal. 4th at 184.

The Court should dismiss Count 12 because Macroverse's counterclaims fail to plead the "who, what, when, where, and how" of the purported fraud and cannot satisfy the elements of misrepresentation, scienter, inducement, reliance, and damages.

### 2. Macroverse Fails to Plead Its Fraud (Negligent Misrepresentation) Counterclaim with Particularity

Macroverse's negligent misrepresentation claim fails for two reasons: (a) it fails to satisfy Rule 9(b) (*Kearns*, 567 F.3d at 1125), and (b) California bars negligent misrepresentation based on a promise or prediction—only past/existing facts qualify. *Tarmann v. State Farm Mut. Auto. Ins. Co*., 2 Cal. App. 4th 153, at 158–59 (1991); *UMG Recordings, Inc. v. Global Eagle Entm't, Inc*., 2015 WL 12746208, at *18 (C.D. Cal. Oct. 30, 2015).

Here, Count 13 pleads only forward-looking assurances and predictions, not false statements of past or existing fact. For example, Macroverse alleges that Fortier claimed he had the "technology and equipment necessary to fully produce and deliver multiple 'Authentic Editions' lines at scale," that funds "would be used" to build "professional quality scanning and production equipment," to hire staff, and to produce "the products associated with these campaigns," and that he "could meet agreed-upon deadlines." *See* Dkt. 15, Ex. A at ¶¶ 160–163. Those are classic promises and projections about future performance and intended use of funds, not falsifiable present facts. Courts treat

allegations framed as "nondisclosure of known facts" but actually targeting "future trend projection[s]" as insufficient. *See Belodoff v. Netlist, Inc.*, 2008 U.S. Dist. LEXIS 45289, at *23–24 (C.D. Cal. May 30, 2008) (finding the alleged omission was "nothing more than the nondisclosure of a future trend projection" and that there was no duty to disclose internal projections). Macroverse fails to identify contemporaneous, concrete misstatement of existing fact (e.g., that a specific machine already existed, that a particular license had already been secured, or that a certain deliverable had already been achieved) that was untrue when made. Nor does Macroverse plead with particularity "why" Fortier had "no reasonable grounds" for any statement at the time it was made (who knew what, when, and based on what data). *See Kearns*, 567 F.3d at 1125; *Tarmann*, 2 Cal. App. 4th at 158–59; *UMG Recordings*, 2015 WL 12746208, at *18.

> 3.   Macroverse Fails to Plead Its Fraud (Concealment) Counterclaim with Particularity

Macroverse's concealment counterclaim (Count 14) also fails to allege facts demonstrating any person had a duty to disclose facts and made a particularized omission. To establish fraudulent concealment, a plaintiff must show: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known or the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Graham v. Bank of America, N.A.*, 226 Cal.App.4th 594, 606 (2014). "Although, typically, a duty to disclose arises when a defendant owes a fiduciary duty to a plaintiff, a duty to disclose may also arise when a defendant possesses or exerts control over material facts not readily available to the plaintiff." *Jones v. ConocoPhillips Co.,* 198 Cal. App. 4th 1187, 1199 (2011) (internal citations omitted).

The duty to disclose only arises in a limited number of circumstances. *See Bigler-Engler v. Breg, Inc.*, 7 Cal.App.5th 276, 311 (2017). "There are 'four circumstances in

which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.'" *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997).

Macroverse alleges no specific duties with particularity. As explained above, neither Fortier nor Richie had a fiduciary relationship with Macroverse. Moreover, Macroverse only pleads "concealment" in generalized terms—without Rule 9(b) particulars of who asked what, when, where any omission occurred, what material fact was withheld in response to what inquiry, what duty to disclose applied (there is no fiduciary duty here), or how any partial statement was rendered misleading. *See Vess*, 317 F.3d at 1106. As such, Macroverse's concealment counterclaim fails to allege a cognizable duty to disclose and the specific "who/what/when/where/how" of any purported omission. The Court should dismiss Count 14.

## V.    **CONCLUSION**

For the foregoing reasons, Counter-Defendants Fortier, Richie, and Archival Comics respectfully request that the Court grant their Motion to Dismiss in full by dismissing Counts 4-5, 7-8, and 10-14 with prejudice. Macroverse fails to state these counterclaims as a matter of law and/or without the particularity required by Rule 9.

Dated:  December 15. 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:    _____/s/ Jesse A. Salen_____
JESSE A. SALEN

Attorneys for Plaintiff/Counter-Defendant ADAM FORTIER d/b/a PORTMANTEAU PUBLISHING; Counter-Defendants ROSS RICHIE, and ARCHIVAL COMICS LLC